# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI

| | | | |
|---|---|---|---|
| TINA MOORE, Individually and as Personal Representative of the ESTATE OF JASON MOORE, | ) ) ) ) | | |
| and | ) ) | | |
| DELORES MOORE, | ) ) | | |
| and | ) ) | | |
| RENEE RODGERS, as Next Friend for A.D.R., a Minor, | ) ) ) | | |
| Plaintiffs, | ) ) | | |
| vs. | ) ) ) | Case Nos. | 4:14-CV1443 SNLJ 4:14-CV1447 SNLJ (consolidated) |
| BRIAN KAMINSKI, | ) ) | | |
| and | ) ) | | |
| MICHAEL WHITE, | ) ) | | |
| and | ) ) | | |
| WILLIAM BALLARD, | ) ) | | |
| and | ) ) | | |
| MATTHEW BEBE, | ) ) | | |
| and | ) ) | | |
| THOMAS JACKSON, | ) ) | | |
| and | ) ) | | |
| CITY OF FERGUSON, MISSOURI, | ) ) | | |
| and | ) ) | | |

JAMES KNOWLES, III,                    )
                                        )
and                                     )
                                        )
MARK J. BYRNE,                          )
                                        )
and                                     )
                                        )
KIM TIHEN,                              )
                                        )
and                                     )
                                        )
DWAYNE T. JAMES,                        )
                                        )
and                                     )
                                        )
TIM LARSON,                             )
                                        )
and                                     )
                                        )
DAVID CONWAY,                           )
                                        )
and                                     )
                                        )
KEITH KALLSTROM,                        )
                                        )
                      Defendants.       )

## FIRST AMENDED CONSOLIDATED COMPLAINT

COME NOW plaintiffs and, for their First Amended Consolidated Complaint, state as follows:

1.     This is an action for damages for the wrongful death of Jason Moore resulting from a violation of his constitutional rights by on-duty Ferguson police officers Brian Kaminski ("Kaminski"), Michael White ("White"), William Ballard ("Ballard") and Matthew Bebe ("Bebe").  The defendants violated Moore's well-settled federal civil rights while acting under color of state law.

2

## JURISDICTION

2.      Plaintiffs' action arises under 42 U.S.C. §§1983, 1985 and 1988 and the United

States Constitution.  This Court has jurisdiction under 28 U.S.C. §§1331 and 1343.  Plaintiffs

invoke the supplemental jurisdiction of the Court pursuant to 28 U.S.C. §1367 to hear and decide

their claims under Missouri law.  This Court also has jurisdiction pursuant to 42 U.S.C. §1988 to

award and allocate attorneys' fees which are specifically requested in the Complaint.

3.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) and (e) because the

events and/or acts and/or omissions giving rise to this Complaint occurred in St. Louis County,

Missouri, which lies within the Eastern District of Missouri and because defendants were

performing their duties and responsibilities within the Eastern District of Missouri.

## PARTIES

4.      Plaintiff Tina Moore is a citizen and resident of the State of Missouri and the

United States of America.  Plaintiff Tina Moore is the wife of decedent Jason Moore and brings

this action on behalf of herself and all others as defined in §537.080 RSMo.

5.      Plaintiff Tina Moore has been appointed as Personal Representative of the Estate

of Jason Moore and brings this action pursuant to §537.021 RSMo.

6.      Plaintiff Delores Moore is a citizen and resident of the State of Missouri and the

United States of America.  Plaintiff Moore is the mother of decedent Jason Moore and brings this

action on behalf of herself and all others as defined in §537.080 RSMo.

7.      Plaintiff Renee Rodgers is a citizen and resident of the State of Missouri and the

United States of America.  Plaintiff Rodgers has been appointed as next friend for A.D.R., a

minor, to pursue damages on behalf of A.D.R.  A.D.R. is the son of decedent Jason Moore and,

through his Next Friend, brings this action on behalf of himself and all others as defined in §537.080 RSMo.

8.      At all times herein, police officer Kaminski was a law enforcement officer employed by Defendant City of Ferguson as a member of the Ferguson Police Department and was acting under color of law.  Plaintiffs sue police officer Kaminski in his individual capacity.

9.      At all times herein, police officer White was a law enforcement officer employed by Defendant City of Ferguson as a member of the Ferguson Police Department and was acting under color of law.  Plaintiffs sue police officer White in his individual capacity.

10.     At all times herein, police officer Ballard was a law enforcement officer employed by Defendant City of Ferguson as a member of the Ferguson Police Department and was acting under color of law.  Plaintiff sues police officer Ballard in his individual capacity.

11.     At all times herein, police officer Bebe was a law enforcement officer employed by Defendant City of Ferguson as a member of the Ferguson Police Department and was acting under color of law.  Plaintiff sues police officer Bebe in his individual capacity.

12.     At all relevant times herein, police officer Thomas Jackson was a law enforcement officer employed by Defendant City of Ferguson as a member of the Ferguson Police Department and was acting under color of law.  Jackson had custody, rule, keeping and charge of the officers and deputies who were within the employ of Ferguson and formulated policy for the City of Ferguson and Ferguson Police Department. Jackson controlled all relevant activities, policies, rules, customs and training of the Ferguson Police Department.  Jackson has since resigned his post after a federal investigation into the Ferguson Police Department's customs, practices and policies.  Plaintiff sues Jackson in his individual capacity.

4

13.     The City of Ferguson, Missouri ("Ferguson") is a municipal corporation, organized and existing pursuant to Missouri law.  At all relevant times, Ferguson had the ability to control and direct the conduct of the aforementioned officers as they performed their duties in furtherance of Ferguson's goals.  Ferguson was also charged with the direction and supervision of officers who were within its employ.  Each of the acts alleged herein against defendants were committed by them individually, or their agents, servants and/or employees, while acting under color of state law with approval and knowledge of their superiors.

14.     At all times herein, The Honorable James Knowles, III, was the Mayor of Ferguson, Missouri and was acting under color of law.  Knowles had custody, rule, keeping and charge of the officers and deputies who were within the employ of Ferguson and formulated policy for the City of Ferguson and the Ferguson Police Department.  Knowles controlled all relevant activities, policies, rules, customs and training of the Ferguson Police Department. Plaintiff sues Knowles in his individual capacity.

15.     At all times herein, Mark J. Byrne, was a Council Member of Ferguson,Missouri and was acting under color of law.  Byrne had custody, rule, keeping and charge of the officers and deputies who were within the employ of Ferguson and formulated policy for the City of Ferguson and Ferguson Police Department.  Byrne controlled all relevant activities, policies, rules, customs and training of the Ferguson Police Department.  Plaintiff sues Byrne in his individual capacity.

16.     At all times herein, Kim Tihen, was a Council Member of Ferguson and was acting under color of law.  Tihen had custody, rule, keeping and charge of the officers and deputies who were within the employ of Ferguson and formulated policy for the City of

5

Ferguson and Ferguson Police Department. Tihen controlled all relevant activities, policies, rules, customs and training of the Ferguson Police Department. Plaintiff sues Tihen in her individual capacity.

17.    At all times herein, Dwayne T. James, was a Council Member of Ferguson and was acting under color of law. James had custody, rule, keeping and charge of the officers and deputies who were within the employ of Ferguson and formulated policy for the City of Ferguson and Ferguson Police Department. James controlled all relevant activities, policies, rules, customs and training of the Ferguson Police Department. Plaintiff sues James in his individual capacity.

18.    At all times herein, Tim Larson, was a Council Member of Ferguson and was acting under color of law. Larson had custody, rule, keeping and charge of the officers and deputies who were within the employ of Ferguson and formulated policy for the City of Ferguson and Ferguson Police Department. Larson controlled all relevant activities, policies, rules, customs and training of the Ferguson Police Department. Plaintiff sues Larson in his individual capacity.

19.    At all times herein, David Conway, was a Council Member of Ferguson and was acting under color of law. Conway had custody, rule, keeping and charge of the officers and deputies who were within the employ of Ferguson and formulated policy for the City of Ferguson and Ferguson Police Department. Conway controlled all relevant activities, policies, rules, customs and training of the Ferguson Police Department. Plaintiff sues Conway in his individual capacity.

20.     At all times herein, Keith Kallstrom, was a Council Member of Ferguson and was acting under color of law.  Kallstrom had custody, rule, keeping and charge of the officers and deputies who were within the employ of Ferguson and formulated policy for the City of Ferguson and Ferguson Police Department.  Kallstrom controlled all relevant activities, policies, rules, customs and training of the Ferguson Police Department.  Plaintiff sues Kallstrom in his individual capacity.

**FACTS**

21.     Jason Moore ("Jason") was, at all relevant times, a 31-year old man who weighed approximately 135 pounds.

22.     Just prior to 6:46 am on September 17, 2011, Jason was near his residence in Ferguson, Missouri when he took his clothes off, ran completely naked down the street, yelling at passing vehicles and yelling "God is good", "glory to God" and "I am Jesus."

23.     Local residents and other individuals informed the Ferguson Police Department of Jason's conduct and officers were dispatched to the area of Airport Road and N. Marguerite in Ferguson, Missouri.

24.     Defendant Kaminski first arrived at the intersection of Airport Road and Henquin Drive at 6:49 am on September 17, 2011.

25.     When defendant Kaminski arrived to the scene, Jason did not pose a threat to himself or others as he was standing and staring out at Airport Road.  He was observably unarmed, suffering from a psychological disorder and demonstrated clear signs of mental illness.

26.     Without warning and without announcing himself as a police officer, defendant Kaminski yelled at Jason to place his hands over his head and walk toward him.

27. Jason moved toward defendant Kaminski. Defendant Kaminski then, without warning of its use, shot a TASER device into Jason's body from a distance. Both probes made secure contact with Jason, with one prong striking him in the left side of his chest near his heart and one probe striking him in the right thigh.

28. Jason violently and forcefully fell face down to the ground in a prone manner with his arms trapped underneath him and with the TASER probes in his chest and pelvic areas.

29. While Jason was in a prone position on the ground, without posing a threat of safety to himself or others and with one of the TASER probes still in his chest, Defendant Kaminski used the TASER device additional times. The majority of the TASER cycles employed on Jason were for the express purpose of inflicting pain and punishment and without any legitimate police purpose.

30. Defendant Kaminski used the TASER device while Jason was face down on the pavement and when defendants Kaminski and White were present and available to maneuver Jason out of his prone position and otherwise secure Jason's cooperation.

31. Defendant Kaminski did not use the TASER cycle as an opportunity to secure Jason's arms and handcuff him.

32. The pretext for the multiple uses of the TASER was that Jason "tried" or "attempted" to rise.

33. Ultimately, defendant White did go to where Jason was positioned, pulled his arms behind his back and handcuffed Jason.

34. Defendants Kaminski and White left Jason in a prone position on the pavement without turning him from a prone position and without monitoring his breathing or medical

condition.

35.     Defendants Ballard and Bebe then arrived to the scene and also left Jason in a prone position on the pavement without turning him from that position and without monitoring his breathing or medical condition.

36.     At some point in time it was discovered that Jason had stopped breathing.  CPR was administered, with paramedics ultimately arriving on the scene and continuing resuscitation techniques.

37.     Jason was transported to a local hospital, where he was later pronounced dead.

## COUNT I

### VIOLATION OF FOURTH, EIGHTH AND FOURTEENTH AMENDMENTS TO UNITED STATES CONSTITUTION UNDER 42 U.S.C. §1983

38.     Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 37 of this First Amended Consolidated Complaint as though fully set forth herein.

39.     Defendants Kaminski, White, Ballard and Bebe, acting alone and together and in concert, did assault and otherwise brutalize Jason as aforementioned, and unreasonably seized Jason in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

40.     Defendants Kaminski, White, Ballard and Bebe failed to intervene to prevent the acts and use of excessive force by each other, when they had the opportunity to do so, in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

41.     Jason had a right to have his serious medical needs addressed, but defendants Kaminski, White, Ballard and Bebe failed to respond to these known risks and needs in violation of the Eighth and Fourteenth Amendments.

42.     Specifically, these defendants were deliberately indifferent in one or more of the following respects:

a.     defendants knew of and disregarded the substantial risk of harm to Jason in failing to exercise proper crisis management, in using a TASER on Jason, in using a TASER multiple times on Jason, in using a TASER on Jason's chest, in using a TASER on Jason after he had been restrained by White and/or others, in using a TASER to obtain "pain compliance", in keeping him in a prone position before, during and after using a TASER device and before, during and after handcuffing Jason;

b.     defendants failed to provide medical treatment and/or therapy to Jason's medical conditions;

c.     defendants failed to investigate Jason's medical conditions (check his breathing and pulse) to make an informed judgment about his serious medical needs and condition and by failing to perform treatments (first aid or CPR) when Jason's condition was so obvious that even a lay person would easily recognize the necessity for medical attention;

d.     defendants made medical decisions about plaintiff's treatment and/or therapy for his conditions based on non-medical factors;

e.     defendants delayed and/or interfered with Jason's access to treatment and/or therapy for his conditions; and

f.     defendants failed to take reasonable measures to abate the aforementioned risks and the conditions Jason suffered from.

43.     As a direct and proximate result of the aforementioned unlawful acts and malicious physical abuse of Jason by defendants, all committed under color of law and under the officers' authority as Ferguson police officers, Jason died and was deprived of his right to be free from unreasonable seizures of his person, from the use of excessive force and to have his serious medical needs addressed, in violation of the Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

10

44.     As a direct and proximate result of the conduct and acts of the Defendants as aforementioned, plaintiffs have been deprived of the reasonable value of the services, consortium, companionship, comfort, instruction, guidance, counsel, training and support of Jason by reason of such death, further including past and future lost income, household services and the value of benefits which would have been provided by Jason.

45.     The acts of defendants Kaminski, White, Ballard and Bebe were intentional, wanton, malicious, oppressive, reckless and callously indifferent to the rights of Jason, thus entitling plaintiffs to an award of punitive damages against the defendants Kaminski, White, Ballard and Bebe.

46.     If plaintiffs prevail, they are entitled to attorneys' fees pursuant to 42 U.S.C. §1988.

WHEREFORE, plaintiffs pray for judgment against Defendants Kaminski, White, Ballard and Bebe, jointly and severally, for compensatory damages and/or nominal damages in an amount that is fair and reasonable, for punitive damages, for attorneys' fees and the costs of the litigation and for such other and further relief as is just and proper.

### COUNT II
### MUNICIPAL LIABILITY FOR FOURTH
### AND FOURTEENTH AMENDMENT VIOLATIONS UNDER 42 U.S.C. §1983

47.     Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 46 of this First Amended Consolidated Complaint as though fully set forth herein.

48.     There exists within Ferguson policies or customs, practices and usages that are so pervasive that they constitute the policies of the entities that caused the constitutional deprivations of Jason and plaintiffs as have been more fully set forth herein above.

11

49.     Defendants Ferguson, Knowles, Byrne, Tihen, James, Larson, Conway, Kallstrom and Jackson maintained unconstitutional policies, customs, practices and usages and were deliberately indifferent in:

a.     That officers of Ferguson use excessive force, including deadly force, without regard for the need for the use of force, or without regard for the legality of its use.  Officers of Ferguson expect and demand compliance even when they lack legal authority and are quick to escalate encounters with subjects they perceive to be disobeying their orders, resisting arrest, who are committing minor crimes and who were not actively or only minimally resisting, attempting to flee or posing any imminent danger to others;

b.     That officers of Ferguson conspire with one another to cover for and protect one another from criminal and/or civil sanctions that might arise from the violation of constitutional rights of a citizen through weak oversight of officer use of force;

c.     That officers of Ferguson can use excessive force when it is not necessary and warranted where the police department fails to take action, investigate or adequately punish officers that violate the constitutional rights of its citizens as more fully described above;

d.     That officers of Ferguson engage in conduct that is violative of the constitutional rights of its citizens of the United States, with whom they come into contact, including, but not limited to: unjustifiably using excessive force, using a TASER device in an unauthorized and excessive manner, overly relying on the use of a TASER device where less force or no force would suffice, failing to use proper Crisis Intervention techniques, interpreting indications of mental or physical illness as belligerence, failing to take an individual's mental health condition or intellectual disability in consideration when determining the use of force and improper restraint of individuals in violation of the Constitution of the United States;

e.     That Ferguson, PD and Jackson wilfully and deliberately failed to instruct, control, supervise discipline and train their officers on the authorized and acceptable use of a TASER device, when reasonable force can and should be used, on Crisis Intervention techniques and properly restraining individuals.

f.     That Ferguson, PD and Jackson wilfully and deliberately failed to implement or require the implementation of a policy on the authorized and

acceptable use of a TASER device, when reasonable force can and should be used, on Crisis Intervention techniques and properly restraining individuals.

g.    That Ferguson, PD and Jackson wilfully and deliberately failed to enforce or require enforcement on the authorized and acceptable use of a TASER device, when reasonable force can and should be used, on Crisis Intervention techniques and properly restraining individuals.

50.    In August 2010, a Ferguson officer responded to a call about a man walking onto the highway and lying down on the pavement.  Seeing that the man was sweating, acting jittery, and had dilated pupils, the officer believed he was on drugs.  The man was cooperative at first but balked, pushing the officer back when the officer tried to handcuff him for safety reasons.  The officer struck the man several times with his baton - including once in the head causing significant bleeding.  Two other officers deployed their TASER devices against the man a total of five times.

51.    In July 2011, a Ferguson officer used a TASER to drive-stun an individual three times after he tried to hang himself with material torn from medical dressing and banged his head on a wall.

52.    In July 2011, a Ferguson officer used a TASER against an individual with bipolar disorder who broke an overhead glass light fixture and tried to use it to cut his wrists.  According to the officer, the glass was "safety glass" and could not be used to cut the skin.

53.    In August 2011, Ferguson officers used a TASER against a man with diabetes who bit an EMT's hand without breaking the skin.  The man had been having seizures at the time that he failed to comply with officer commands.

54.    Defendants Ferguson, Knowles, Byrne, Tihen, James, Larson, Conway, Kallstrom and Jackson (policymakers for Ferguson) had the duty to effectively supervise, monitor and

control the peace officers in their employ.  In addition, defendants Ferguson, Knowles, Byrne, Tihen, James, Larson, Conway, Kallstrom and Jackson had the duty to effectively train the peace officers in its employ, including supervisors and those who were charged with supervising, monitoring and controlling the deputies of the Ferguson Police Department.

55.    An integral part of the discharge of the duties of Ferguson is the establishment of an effective internal affairs function by which complaints about officer conduct, acts and failures to act would be received, recorded, investigated and accurately determined.  Defendants Ferguson, Knowles, Byrne, Tihen, James, Larson, Conway, Kallstrom and Jackson failed to thoroughly investigate or review claims of excessive force or even use of force.  They failed to thoroughly investigate or review unauthorized and excessive use of TASER devices, restraint of persons and crisis interaction, failed to monitor officers against whom excessive force and unauthorized and excessive use of TASER device and other restraint and crisis intervention complaints had been made and failed to remove officers from active duty who were found to have engaged in excessive force and unauthorized and excessive use of TASER devices and other restraint maneuvers.  Defendant Jackson has stated he could not remember ever imposing discipline for an improper use of force or ordering further training based on force problems.  The failure to train, discipline or supervise the officers of the Ferguson Police Department has resulted in members of the Ferguson Police Department using excessive force as a matter of custom in violation of clearly established law. Defendants' failure to train, supervise or discipline its officers is not objectively reasonable.

56.    Ferguson officers frequently do not report the force they use at all.  Ferguson's internal affairs files contain instances of force that were not included in force files, offense

reports containing use of force do not have a corresponding use of force report, force documented in officer workers' compensation claims do not have a corresponding use of force report and there is an over representation of TASER uses as opposed to use of force forms where a physical blow or baton strike was used.

57.     Upon information and belief, defendants Kaminski, White, Ballard and Bebe and one or more Ferguson Police Department officers have engaged in the same or similar conduct as that experienced by Jason, including being subjected to improper Crisis Intervention care, subjecting others to excessive force, improper restraint and using a TASER device in an unauthorized and excessive manner.  Defendant Ferguson had received complaints regarding these similar incidents prior to the date of the incident involving the plaintiff and at least two lawsuits and/or claims have been filed against one or more of the defendants relating to the use of a TASER device on an individual and/or other excessive force.

58.     Defendants Ferguson, Knowles, Byrne, Tihen, James, Larson, Conway, Kallstrom and Jackson's policies, customs, practices or usages authorized and permitted the actions of defendants Kaminski, White, Ballard and Bebe as defendants Ferguson, Knowles, Byrne, Tihen, James, Larson, Conway, Kallstrom and Jackson  did nothing to address the complaints (such as training or disciplining their officers).  Instead, defendants Ferguson, Knowles, Byrne, Tihen, James, Larson, Conway, Kallstrom and Jackson ignored or rejected the complaints.

59.     Further, by their actions, defendants Ferguson, Knowles, Byrne, Tihen, James, Larson, Conway, Kallstrom and Jackson have ratified the unlawful conduct of Defendants Kaminski, White, Ballard and Bebe.

60.     As a direct and proximate result of the policies, customs, practices and usages of defendants Ferguson, Knowles, Byrne, Tihen, James, Larson, Conway, Kallstrom and Jackson, Jason died, as described herein above, and plaintiffs are entitled to compensatory damages under 42 U.S.C. §1983.

61.     The acts of defendants Knowles, Byrne, Tihen, James, Larson, Conway, Kallstrom and Jackson, as set forth above, were reckless and callously indifferent to the rights of Jason, thus entitling plaintiffs to an award of punitive damages against these defendants. Furthermore, if plaintiffs prevail, they are entitled to attorneys' fees pursuant to 42 U.S.C. §1988.

WHEREFORE, plaintiffs pray for judgment against defendants Ferguson, Knowles, Byrne, Tihen, James, Larson, Conway, Kallstrom and Jackson, jointly and severally, for compensatory damages and/or nominal damages in an amount that are fair and reasonable, for punitive damages against defendants Knowles, Byrne, Tihen, James, Larson, Conway, Kallstrom and Jackson, for attorneys' fees and the costs of the litigation and for such other and further relief as is just and proper.

## COUNT III
## WRONGFUL DEATH

62.     Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 61 of this First Amended Consolidated Complaint as though fully set forth herein.

63.     Defendants Kaminski and White owed Jason, as police officers, a duty of reasonable care for his safety.

64.     Defendants Kaminski and White violated this duty of care in their use of the TASER device, including continuing to deploy the TASER device while Jason was being restrained by White.

16

65.    In the alternative, defendant Kaminski as a law enforcement officer armed with a deadly weapon owed Jason the duty to exercise the highest degree of care for his safety under the same or similar circumstances by law enforcement officers.  In particular, Kaminski owed Jason the duty to determine that there was an imminent danger or serious physical injury or death to Kaminski or others before using deadly force by firing his TASER device into Jason's chest and thigh and repeatedly using the TASER device on him.

66.    Kaminski breached his duty of care by failing to remove himself from any possible zone of danger, call for and await backup assistance, or determine that imminent danger of serious physical injury or death existed before opening fire with the TASER device on Jason.

67.    In the alternative, the acts of Defendants Kaminski and White as described herein above, of assaulting and brutalizing Jason were committed without just cause or provocation, and with intent to cause Jason offensive contact, bodily harm, apprehension of offensive contact and apprehension of bodily harm.

68.    As a direct and proximate result of the malicious, brutal and outrageous conduct of Defendants Kaminski and White, Jason died and plaintiffs have been deprived of the reasonable value of the services, consortium, companionship, comfort, instruction, guidance, counsel, training and support of Jason by reason of such death, further including past and future lost income, household services and the value of benefits which would have been provided by Jason.  As a further direct and proximate result of the acts or omissions or Kaminski and White, plaintiffs have incurred pecuniary damages, including medical and funeral expenses related to the treatment, death and burial of Jason.

69.    The acts of Defendants Kaminski and White were wanton, malicious and

17

oppressive and done with a high probability of injury and with reckless indifference to the rights of Jason and plaintiffs, thus entitling plaintiffs to an award of aggravating circumstances.

WHEREFORE, plaintiffs pray for judgment against Defendants Kaminski and White, jointly and severally, for compensatory damages in an amount that is fair and reasonable, for damages for aggravating circumstances and the costs of the litigation and for such other and further relief as is just and proper.

**JURY TRIAL DEMANDED AS TO ALL COUNTS**


DOWD & DOWD, P.C.                      BATY, HOLM, NUMRICH & OTTO P.C.


By:    /s/ William T. Dowd             /s/ Todd M. Johnson
       WILLIAM T. DOWD (#56569MO)      TODD M. JOHNSON (48824)
       ALEX R. LUMAGHI (#56569MO)      4600 Madison Avenue, Suite 210
       Attorneys for Plaintiff         Kansas City, MO 64112-3012
       211 North Broadway, Suite 4050  tjohnson@batyholm.com
       St. Louis, Missouri   63102     Telephone: 816-531-7200
       314/621-2500                    Telecopy: 816-531-7201
       Fax, 314/621-2503
       bill@dowdlaw.net                and

       and                             MICHAEL D. CERULO (57536)
                                       BATY, HOLM, NUMRICH & OTTO P.C.
       /s/ Mark L. Floyd               231 S Bemiston Ave., Ste. 230
       MARK L. FLOYD (# 43643MO)       St. Louis, MO 63105
       THE FLOYD LAW FIRM, P.C.        mcerulo@batyholm.com
       Attorneys for Plaintiff         Telephone: 314-863-6274
       8151 Clayton Rd., Suite 202     Telecopy: 314-863-6407
       St. Louis, Missouri   63117
       314/863-4114                    *Attorneys for Plaintiffs Delores Moore and*
       Fax, 314/863-4150               *Renee Rodgers, as Next Friend for A.D.R., a*
       mark@thefloydlawfirm.com        *Minor*

       *Attorneys for Plaintiffs Tina Moore*
       *and Estate of Jason Moore*