UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| TINA MOORE, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No.:    4:14-CV-1443 SNLJ |
| | ) | 4:14-CV-1447 SNLJ |
| BRIAN KAMINSKI, et al., | ) | (Consolidated) |
| | ) | |
| Defendants. | ) | |

# DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

COME NOW Defendants, Police Officers Brian Kaminski, Officer Michael White, Lieutenant William Ballard, Detective Matthew Bebe, Former Police Chief Thomas Jackson, Mayor James Knowles, III, Councilman Mark J. Byrne, Councilwoman Kim Tihen, Councilman Dwayne T. James, Councilmen Tim Larson, David Conway, and Keith Hallstrom ("Defendants") and for their Memorandum in Support of their Motion for Summary Judgment, state:

## I.    INTRODUCTION

Plaintiffs Tina Moore, Delores Moore, and Renee Rodgers as Next Friend of A.D.R. assert three counts against the Defendants in this sequence: 1) 42 U.S.C. § 1983 against Defendant Officers Kaminski, White, Ballard, and Bebe; 2) 42 U.S.C. § 1983 against the City of Ferguson, the Defendant Councilpersons, the Mayor, and Defendant Chief Jackson; and 3) R.S. Mo. § 537.080(1) Wrongful Death against Officers Kaminski and White.[1] Defendants will

---

[1] On July 27, 2015, this Court granted Defendants' Motion to Dismiss with respect to the Eighth Amendment Claim in Count I against Officers Kaminski, White, Ballard, and Bebe.  Doc. No. 36.

demonstrate why they are entitled to summary judgment on all the remaining claims in the following manner:

**A. Count I: 42 U.S.C. § 1983 v. Defendants Kaminski, White, Bebe, and Ballard in their individual capacities.**

    **1. Defendant Officers responded with appropriate force under all the circumstances, and are entitled to qualified immunity.**

        **a. Defendant Officers did not use excessive force under all the circumstances;**

            **i. The severity of the situation escalated from the original reason for the call for police service;**

            **The Decedent resisted the Defendant Officers' lawful commands and took actions that explain his own alleged injuries;**

            **ii. Decedent posed a threat to the safety to himself, officers, and others; and**

            **iii. Actions taken and any force used by the Defendant Officers were reasonable.**

        **b. The Defendant Officers are entitled to qualified immunity because there was no clearly established law that an aggressive suspect had a right to be free from multiple Tasings at the time of the subject encounter;**

        **c. Officer Kaminski is entitled to qualified immunity regarding allegations of failure to intervene against the application of excessive force because the law was not clearly established that a cause of action lies where an officer fails to intervene with respect to his own actions;**

        **d. Officers White, Bebe, and Ballard are entitled to qualified immunity regarding allegations of failure to intervene excessive force because there is no evidence either Bebe or Ballard were present during any use of force and Officer White did not know of or observe any unconstitutional use of force by Officer Kaminski; and**

        **e. Defendant Officers are entitled to qualified immunity as there was no constitutional violation of a right to medical care.**

**B. Count II: 42 U.S.C. § 1983 v. City of Ferguson, Former Chief Thomas Jackson, Mayor, and Councilpersons.**

{01634521.DOCX;1}

2

1. **Plaintiffs' claims fail because there is no underlying constitutional deprivation.**

2. **Plaintiffs cannot prevail because the violation of rights of which Plaintiffs complain were not clearly established at the time of the subject arrest.**

3. **Plaintiffs have no evidence the City, Former Chief Thomas Jackson, Mayor, and Council had any policy, custom, or training that was the moving force behind or the cause of constitutional deprivations to Decedent.**

   a. **Plaintiffs have failed to establish that any policy or regulation of the City, Former Chief Thomas Jackson, Mayor, and Council was unconstitutional on its face or by its implementation;**

   b. **Plaintiffs have not presented the necessary "detailed evidence" about a "continuing, widespread, persistent pattern of unconstitutional conduct or custom" by officers in the City, Former Chief Thomas Jackson, Mayor, and Council; and**

   c. **Plaintiffs have not established the City, Former Chief Thomas Jackson, the Mayor or the Council were responsible for training the Defendant Officers, or that such officers received inadequate training, which was the moving force behind any violation of constitutional rights of the Decedent.**

4. **Plaintiffs' claim for punitive damages against the City fails as a matter of law.**

C. **Count III: R.S. Mo. § 537.080(1) Wrongful Death v. Individual Defendants in their individual capacities.**

   1. **Missouri law regarding wrongful death.**

   2. **Missouri law regarding official immunity.**

   3. **Defendant Officers are entitled to summary judgment as Plaintiffs cannot establish the officers breached any duty owed to the Decedent, and because they are entitled to official immunity as to their discretionary determinations with respect to whether to use force and what force to use against Decedent.**

## II.      STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) requires "the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the proof at trial." *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 322 (1986).   In *Celotex*, the Court noted, "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'"   *Id.* at 327 (quoting Fed. R. Civ. P. 1).   The burden on the party moving for summary judgment "is only to demonstrate . . . that the record does not disclose a genuine dispute of a material fact."   *City of Mt. Pleasant, Iowa v. Assoc. Elec. Co-op.*, 838 F.2d 268, 273 (8th Cir. 1988).   A movant is not required to establish a right to summary judgment as a matter of law by "unassailable proof."   *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Co. (ITT)*, 854 S.W.2d 371, 378 (Mo. banc 1993).

Once the moving party demonstrates that the record does not disclose a genuine issue of material fact, the burden shifts to the non-moving party to go beyond his pleadings and present, by affidavit or by "deposition, answers to interrogatories, and admissions on file," specific facts that show there is a genuine issue to be resolved at trial. Fed. R. Civ. R. 56(e) (emphasis added); *Celotex*, 477 U.S. at 323; *City of Mt. Pleasant*, 838 F.2d at 273.   The non-movant "may not rely on mere denials or allegations," but must designate specific facts showing that there is a genuine issue of fact for trial.   *Hernandez v. Jarman*, 340 F.3d 617, 622 (8th Cir. 2003).

All matters set forth in a movant's statement of facts shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.   E.D. Mo. L.R. 4.01(E).   It is not sufficient merely to state that a fact is disputed and then cite to the record. See*, e.g., Crossley v. Georgia-Pacific Corp.*, 355 F.3d 1112, 1114 (8th Cir. 2004) ("Judges are not like pigs, hunting for truffles buried in briefs.").

Nor does "the mere existence of *some* alleged factual dispute between the parties . . . defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).  Evidence of a disputed factual issue that is merely colorable or not significantly probative will not prevent entry of summary judgment.  *Id.* at 248.  "[I]t is not the 'truth' of the facts upon which the court focuses, but whether those facts are disputed.  Where they are not [disputed], the facts are admitted for purposes of analyzing a summary judgment motion."  Fed. R. Civ. P. 56(e); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *ITT*, 854 S.W.2d at 382.

A properly supported Motion for Summary Judgment will not be defeated by self-serving testimony.  *Bacon v. Hennepin Cty. Med. Ctr.*, 550 F.3d 711, 716 (8th Cir. 2008) (citation omitted); *Gander Mountain Co. v. Cabela's Inc.*, 540 F.3d 827, 831 (8th Cir. 2008) (citation omitted).  A plaintiff "must substantiate allegations with sufficient probative evidence that would permit a finding in his favor."  *Bacon*, 550 F.3d at 716; *Gander*, 540 F.3d at 831.  The plaintiff's opinions, coupled with unsubstantiated allegations, are not sufficient to raise a genuine issue of fact.  *Assam Drug Co. v. Miller Brewing Co.*, 798 F.2d 311, 319 (8th Cir. 1986).

### III.      ARGUMENT

**A.  COUNT I: 42 U.S.C. § 1983 v. Individual Defendants in Their Individual Capacities.**

Plaintiffs have alleged constitutional violations against Defendant Officers Kaminski, White, Bebe, and Ballard under the Fourth Amendment (excessive force and failure to intervene) and the Fourteenth Amendment (deliberate indifference to medical care). The Defendant Officers are entitled to summary judgment on these claims because the admitted and undisputed facts

prove there were no constitutional violations, and, alternatively, they are entitled to qualified immunity from any liability to plaintiffs.

**1. Defendant Officers responded with appropriate force under all the circumstances, and are entitled to qualified immunity.**

Section 1983 is a remedial statute allowing for a person acting under "color of any statute, ordinance, regulation, custom, or usage of a State or Territory or the District of Columbia" to be held liable for the "deprivation of any rights, privileges, or immunities secured by the Constitution and its laws." 42 U.S.C. § 1983. The statute is "merely a vehicle for seeking a federal remedy for violations of federally protected rights." *Foster v. Wyrick,* 823 F.2d 218, 221 (8th Cir. 1987). In a § 1983 action, two essential elements must be present: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct complained of deprived a plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *DuBose v. Kelly,* 187 F.3d 999, 1002 (8th Cir. 1999). Therefore, in evaluating a § 1983 claim, the precise constitutional violation which is alleged must be identified. *Rogers v. City of Little Rock, Ark.,* 152 F.3d 790, 796 (8th Cir. 1998) (emphasis added). And, if no constitutional right would have been violated under the established allegations, there is no need for further inquiry concerning qualified immunity. *McCoy v. City of Monticello (McCoy I),* 342 F.3d 842, 846 (8th Cir. 2003) (citing *Saucier v. Katz,* 533 U.S. 194, 201 (2001)).

Plaintiffs maintain that Defendant Officers used excessive force in attempting to "seize" the Decedent, thereby violating his Fourth Amendment Rights. (*See* Doc. No. 26, ¶ 39). To establish a Fourth Amendment violation pursuant to § 1983, a claimant must show that a seizure occurred, and the seizure was unreasonable. *Brower v. County of Inyo*, 489 U.S. 593, 599

{01634521.DOCX;1}

6

(1989); *McCoy I*, 342 F.3d at 847.  The Fourth Amendment prohibits the use of excessive force during the seizure of a free citizen.  *Graham v. Connor,* 490 U.S. 386, 388 (1989); *Guite v. Wright*, 147 F.3d 747, 750 (8th Cir. 1998).  "The force employed by an officer is not excessive and thus not violative of the Fourth Amendment if it was 'objectively reasonable under the particular circumstances.'"  *Greiner v. City of Champlin,* 27 F.3d 1346, 1354 (8th Cir. 1994).

"**When an arrestee . . . resists, some use of force by the police is reasonable**." *Greiner*, 27 F.3d at 1355 (emphasis added).  "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."  *Graham*, 490 U.S. at 396–97.  Therefore, "[n]ot every push or shove, even if it may later seem unnecessary . . ." is considered excessive.  *Id.* at 396 (citation and internal quotation marks omitted).

A court should not judge an officer's conduct in hindsight; rather, a court examining an excessive force claim should place itself in the shoes of a reasonable officer under the circumstances.  *Foster v. Metro. Airports Comm'n*, 914 F.2d 1076, 1082 (8th Cir. 1990).  The reasonableness evaluation, like that of other Fourth Amendment analyses, focuses on an objective inquiry: "whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397 (citation and internal quotation marks omitted).  Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."  *Id.* at 396.  A

{01634521.DOCX;1}

court may also evaluate the extent of the suspect's injuries.  *Rohrbough v. Hall*, 586 F.3d 582, 586 (8th Cir. 2009).  However, a court must examine the nature of the force, rather than the extent of the injury, when evaluating an excessive force claim.  *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) ("Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts.").

"Fourth Amendment jurisprudence has long recognized that the right to make an arrest or an investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat to effect it."  *Graham*, 490 U.S. at 397. "Circumstances such as the severity of the crime, whether the suspect posed a threat to the safety of the officers or others, and whether the suspect was resisting arrest are all relevant to the reasonableness of the officer's conduct." *Moore v. Novak*, 146 F.3d 531, 535 (8th Cir. 1998) (citation and internal quotation marks omitted); *Loch v. City of Litchfield*, 689 F.3d 961, 966 (8th Cir. 2012) ("[A]n act taken based upon a mistaken perception or belief, if objectively reasonable, does not violate the Fourth Amendment.").  Federal circuit courts have interpreted this list of factors to be non-exhaustive. *See, e.g., Retz v. Seaton*, 741 F.3d 913, 918 (8th Cir. 2014).  Additionally, if the complaining party's injuries are likely explained by the arrestee's own actions, the allegations cannot create a material fact issue as to whether the arresting officer used excessive force.  *Greiner*, 27 F.3d at 1355.  Whether the force used was constitutionally excessive under the Fourth Amendment is a question of law.  *Davis v. White*, 794 F.3d 1008, 1013 (8th Cir. 2015).

### a.  Defendant Officers did not use excessive force under the circumstances.

Under the undisputed facts presented here, the use of force by the Defendant Officers was appropriate under the circumstances that existed on July 16, 2011, at the time of the Decedent's

arrest.  The following recount of the undisputed facts will allow the Court to apply the *Graham* factors.

Prior to his encounter with police, the Decedent had been observed outside in the early morning hours in the street, naked, yelling "God is good," "Glory to God," and "I am Jesus" and running into traffic and beating on cars with his hands. Ex. A, Ferguson Police Report 11-18027; Ex. C, Shurn Dep. 9:9–9:15; 13:5–13:25; 14:1–14:23; Ex. D, Schilling Dep. 9:7–10:18.[2]  Several 911 calls were made in reference to the Decedent's actions. Ex. A; Ex. E, Rhone Dep. 13:7–13:13; Ex. D, Schilling Dep. 13:1–14:11. One eye witness, Alan Schilling, observed the Decedent to be agitated and angry. Ex. D, Schilling Dep. 29:22–30:9. That same witness assumed the Decedent was under the influence of drugs. Ex. D, Schilling Dep. 32:3–32:20. Officer Kaminski and other officers were dispatched to the call, initially to the area of Airport Road and North Marguerite. Ex. A.

Upon his arrival, Officer Kaminski searched the area, and was flagged by an African-American female in a vehicle. *Id.*. She advised the Decedent, whom she had observed to be naked, was at the nearby intersection of Airport Road and Henquin. *Id.*

Officer Kaminski proceeded to that location and observed the Decedent walk from behind a building and stand near the curb of Airport Road. *Id.*. At this time, there was automobile traffic on the roadway and it was just becoming daylight. Ex. B, Kaminski Dep. 48:2–48:6; 93:7– 93:10; Ex. D, Schilling Dep. 15:10–16:14; 34:3–34:13; Ex. F, Ballard Dep.

---

[2] Officer Kaminski testified he was the author of the original report, and that he did not consult with any other officer when preparing the report. Ex. B, Kaminski Dep. 33:4–34:6.

{01634521.DOCX;1}

47:25–50:6[3]. Officer Kaminski knew other officers had been dispatched but did not know where they would be coming from, how close they were, or when they would arrive. Ex. ,B Kaminski Dep. 173:25–174:8.

Officer Kaminski perceived the Decedent to be a potential harm to himself, based on his position next to the roadway. Ex. B Kaminski Dep. 104:3–105:5; 108:8–108:14.   Officer Kaminski exited his patrol vehicle and gave his first command to the Decedent to put his hands in the air and walk towards him. Ex. A.,

The Decedent began to yell and walk toward Officer Kaminski in an aggressive manner. Ex. A. Officer Kaminski began to walk backwards. *Id*. At the same time, Office Kaminski gave his second command and advised the Decedent to stop and get on the ground. *Id*. The Decedent continued toward Officer Kaminski and began to run aggressively while swinging his arm in a pinwheel motion with fists clenched. Ex. A; Ex. B, Kaminski Dep. 151:12–151:15.

At this time, Officer Kaminski continued to step back and advised the Decedent again to get on the ground. Ex. A. The Decedent continued to advance aggressively, at which point Officer Kaminski un-holstered his Taser and gave his third command to the Decedent to stop or he would be Tased. Ex. A; Ex. B, Kaminski Dep. 49:24–50:1. Officer Kaminski then deployed his Taser because the Decedent continued to aggressively charge towards him. Ex. A. The Decedent was approximately eight to ten feet away from Officer Kaminski at this time. Ex. B Kaminski Dep. 51:22–52:1.

The laser pointer on Officer Kaminski's Taser was originally aimed at the right side of the Decedent's body, near the mid hip area. Ex. B, Kaminski Dep. 52:6–52:13.   Officer

---

[3] Out of all of the available testimony, only Officer White recalled traffic being light near Airport road.  Ex. G White Dep. 73:22–74:20.

{01634521.DOCX;1}

Kaminski believed it was possible his aim was affected by flinching when pulling the trigger or because the Decedent was in motion.  Ex. B Kaminski Dep. 189:22–190:6. Officer Kaminski knew the Taser probes made contact with the Decedent's body but did not see where the darts entered. Ex. B Kaminski Dep. 52:2–53:5; 53:10–53:11; 54:15–54:23.

After the initial Taser activation, the Decedent went to the ground. Ex. A. Once the first cycle was completed, the Decedent attempted to get back on his feet. *Id*. The Decedent got up to the level of his knees. Ex. B Kaminski Dep. 116:34–117:2.  Officer Kaminski shouted for the Decedent to get on the ground but the Decedent refused. Ex. A. Fearful for his safety and the safety of the Decedent, Officer Kaminski applied another Taser cycle.  *Id.*

At the same time, Officer White was also responding to the area of Airport and North Marguerite. Ex. A. Upon arrival, he observed clothing in the middle of the intersection and was approached by an individual who stated, "The naked man ran down Margo." *Id*. Officer White then received notice Officer Kaminski was with the Decedent at Airport Road and Henquin. *Id.*

Officer White responded to the area and observed what appeared to be Officer Kaminski attempting to call out on his radio. Ex. A. Once he exited the vehicle, Officer White observed the Decedent attempt to get up off the ground.[4] *Id.* He heard Officer Kaminski yelling loudly for the Decedent to stay on the ground. *Id.* He also heard the Decedent yelling at the same time. *Id.*

Shortly thereafter, Officer Kaminski noticed Officer White exit his vehicle. Ex. A. During this time, the Decedent attempted to get off the ground again, and Officer Kaminski gave additional commands to him to stay on the ground. *Id.* The Decedent continued to attempt to get

---

[4] Officer White recalled the Decedent being on his back when he arrived (as opposed to all fours) when trying to get up. Ex. G White Dep. 51:5–51:19; 53:9 –53:13.  Defendants do not believe Decedent's position is a material fact, only that he continually attempted to get up off the ground after being told to stay on the ground.

off the ground, and a final Taser cycle was applied. *Id.* During the last Taser application,[5] Officer White was able to control the Decedent and place him into handcuffs. *Id*

   After the Decedent was handcuffed, EMS was called to respond to the location. Ex. A. The Decedent continued to attempt to move his arms while he was on the ground. Ex. I, Ferguson Use of Force Report. Shortly thereafter, Officer White attempted to speak with the Decedent but noticed the Decedent appeared to be unresponsive and not breathing. Ex. A. Officer White turned the Decedent over from his stomach to his back, removed the handcuffs and began to apply chest compressions. *Id..* At this point, Officer White was able to see where the Taser probes had entered Mr. Moore's body. Ex. G White Dep. 56:1–56:14. EMS was further advised that the Decedent had stopped breathing and to expedite their arrival. Ex. A; Ex. B Kaminski Dep. 149:25–150:5.

   During this time, Detective Bebe and Lieutenant Ballard arrived on scene. Ex. H. Detective Bebe assisted Officer White with the chest compressions on the Decedent. Ex. A. During this time, the Decedent would breathe on his own and then stop. *Id.* The Officers also checked the Decedent's pulse but received negative results. *Id.* The chest compressions continued until EMS arrived and transported the Decedent to Christian Northwest. *Id.*

   After the Decedent was transported by EMS, Officer White spoke with a witness named Alan Schilling. Ex. A. Mr. Schilling stated he heard the male shouting, "Glory to God," "I'm Jesus." *Id.* Mr. Schilling observed the Decedent on Airport Road disrobe and become fully nude. *Id.* Mr. Schilling stated he called 911. *Id.*

---

[5] While Officer Kaminski recalls only three applications, a subsequent Taser Report prepared after the incident shows four applications. Officer Kaminski does not dispute the information on the Taser Report.  Ex. B Kaminski Dep. 136:23–136:25.

{01634521.DOCX;1}

A computer check of the Decedent revealed he had at least one active warrant.  Ex. J, Criminal History. Decedent had an extensive criminal history with charges including, but not limited to, Possession of Controlled Substance, Distribution of Controlled Substance, Driving While Intoxicated, Trespassing, Stealing, Burglary in the Second Degree, and numerous traffic charges.  *Id.*

The Assistant Medical Examiner, Kamal Sabharwal, M.D., ruled the manner of death of Decedent as natural.  Ex. K 2011-5866 Exam Case, p. 12.  Dr. Sabharwal ruled the immediate cause of death to Agitated Delirium secondary to Psychosis.  *Id.* at p. 12.

Taking all reasonable inferences in a light most favorable to Plaintiffs, the Plaintiffs cannot establish that any Defendant engaged in the use of excessive force.  Accordingly, Defendants are entitled to summary judgment as a matter of law.

### i. The severity of the situation escalated from the original reason for the police contact.

It is undisputed that Officer Kaminski had probable cause to believe Decedent had committed the crimes of peace disturbance and was subject to lawful arrest. Ex. L, Martinelli Dep. 85:6–85:10; 64:21–65:11. Further, it is undisputed that the Decedent was naked in public, running in traffic in the roadway, and had been observed beating on automobiles on the roadway with his hands. Ex. A; Ex. C Shurn Dep. 9:9–9:15; 13:5–13:25; 14:1–14:23; Ex. D Schilling Dep. 9:7–10:18. It is also undisputed that the Decedent's actions in rushing at Office Kaminski, with his arms moving in a pinwheel motion, was assaultive behavior, gives rise to probable cause for assault. Ex. L, Martinelli Dep. 80:21–81:4; 88:1–88:10.

Several of the eyewitnesses believed the Decedent may have been under the influence of drugs, based on his behavior and actions. Ex. C, Shurn Dep. 29:3–29:16; Ex.  D Schilling Dep.

{01634521.DOCX;1}

32:3–32:20. Plaintiffs' expert Ron Martinelli noted that it would be "objectively reasonable for Officer Kaminski" to believe the Decedent was under the influence of drugs. Ex. L, Martinelli Dep. 74:17–74:24; 78:6–78:12. Officer Kaminski stated his belief that the actions of the Decedent were consistent with someone under the influence of PCP or methamphetamines or another controlled substance. Ex. B Kaminski Dep. 90:6–90:15; 131:16–131:18.

No force was used until the Decedent charged at Officer Kaminski with clenched fists and moving his arms in a pinwheel motion. Plaintiffs' own expert agrees the use of the Taser in this situation was objectively reasonable. Ex. L Martinelli Dep. 100:5–100:13. As "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it" (*Graham*, 490 U.S. at 396), and some use of force by the police is reasonable when an arrestee resists (*Greiner*, 27 F.3d at 1355). Therefore, Officer Kaminski's action of Tasing a resisting subject is reasonable under the Fourth Amendment, in light of the fact that the Decedent appeared to be under the influence of drugs or otherwise acting erratically.  The Decedent was next to a roadway where vehicles were traveling, and the Decedent had, only seconds earlier, aggressively charged at the officer, and there were no other officers present on the scene.

 Accordingly, under the spirit and intent of *Graham* with respect to the first factor, a non-compliant individual who appeared to be impaired or experiencing a psychotic episode, presents a dangerous scenario to law enforcement and weighs in favor of Defendant Kaminski and his determination to use force to detain the Decedent. There is no evidence to show Officer White ever applied any force, much less excessive force. There is also no evidence to show that Detective Bebe or Lieutenant Ballard were on scene for any of the Tasings. Ex. H Bebe Dep.

28:3–29:2; Ex. F Ballard Dep. 38:7–38:1. The evidence shows both these Officers arrived after the Decedent was already handcuffed. *Id.*

> ## ii.  The Decedent resisted Defendant Officers' commands and took actions that explained his own alleged injuries.

The Decedent ignored or refused the lawful commands of Officer Kaminski multiple times, both before and during the Tasings.  The Decedent did not obey Officer Kaminski's initial commands to stop and get on the ground, charged the officer in an aggressive manner, and actively tried to get off the ground when being Tased. Although not large in size, both Officers Kaminski and White noted the Decedent was muscular. Ex. B Kaminski Dep. 131:23–132:1; Ex. G White Dep. 116:8–116:13.

In conclusion, Decedent's own actions explain his own injuries. This is evidenced in the police report, the testimony of those who personally observed the Decedent prior to the encounter with the officers, and the erratic, aggressive and assaultive behavior, resistance, and non-compliance exhibited by the Decedent.

> ## iii.  Decedent posed a threat of safety to officers and others.

As explained above, and given the totality of the circumstances, it was reasonable for the officers to believe the Decedent's erratic behavior  (including beating on cars in the middle of traffic while naked, his aggressive and assaultive charge toward Officer Kaminski with his fists clenched, and his swinging his arms in a pinwheel motion, the Decedent's failure to comply with lawful directives, both before and during the Taser application, and his continued attempts to get off the ground)  posed a threat of safety to the officers, others, and to the Decedent.  *See Foster v. Metro. Airports Comm'n*, 914 F.2d 1076, 1082 (8th Cir. 1990) (A court should not judge an

officer's conduct in hindsight; rather, a court examining an excessive force claim should place itself in the shoes of a reasonable officer under the circumstances).

### iv. Actions taken and any force used by the Defendant Officers were reasonable.

As explained above, the force used against Decedent was necessary under the circumstances (violent attempt threat from Decedent to Officer Kaminski, attempting to get off the ground, noncompliance, and active resistance).  There is no evidence any officer used any force against the Decedent once the Decedent ceased resisting and complied with the orders by laying still on the ground.  Further, there is no evidence that Detective Bebe or Lieutenant Ballard were present during any of the Tasings or handcuffing of the Decedent.

For this reason and the reasons previously stated, *supra*, the use of force against Decedent was not excessive and Defendants are entitled to summary judgment.

### b. The Defendant Officers are entitled to qualified immunity because there was no clearly established law an aggressive suspect had a right to be free from multiple Tasings at the time of the subject encounter.

Although Defendants maintain there was no constitutional violation under § 1983, Defendant Officers are also immune from Plaintiffs' suit under the Doctrine of Qualified Immunity.  Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Saucier v. Katz*, 533 U.S. 194, 200 (2001).  It shields public officials and reduces "the risk that fear of personal monetary liability and harassing litigation will unduly inhibit [public] officials in the discharge of their duties." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).

Defendant Officers are entitled to qualified immunity unless their alleged conduct violated "clearly established [federal] statutory or constitutional rights of which a reasonable

person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The law is "clearly established" if it gives the defendant official "fair warning" that his conduct violated an individual's rights when the official acted.  *Hope v. Pelzer*, 536 U.S. 730, 739-40 (2002). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines."  *Moore v. City of Desloge, Mo.*, 647 F.3d 841, 846 (8th Cir. 2011) (internal quotations and citations omitted).  The Supreme Court formulated the analysis for qualified immunity in *Saucier*.

> Taken in the light most favorable to the party asserting the injury, do the facts alleged show the [defendant's] conduct violated a constitutional right? . . .  If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.  On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established. . . .  The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. . . .  An officer does not lose his qualified immunity because of a mistaken, yet reasonable belief, nor does an officer lose his immunity because of a reasonable mistake as to the legality of his actions.

533 U.S. at 201 (internal citations omitted) (receded from by *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (giving discretion to courts as to the order of addressing the two prongs).  Although the defendant bears the burden of proof for the affirmative defense of qualified immunity, the plaintiff must demonstrate that the law allegedly violated by defendant was clearly established. *Monroe v. Arkansas State University*, 495 F.3d 591, 594 (8th Cir. 2007).  Qualified immunity protects "all but plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The Eighth Circuit recently affirmed the district court's grant of summary judgment to individual officers and St. Louis County where a father and children of an arrestee raised a

{01634521.DOCX;1}

17

wrongful death action against officers. *De Boise v. Taser Int'l, Inc.*, 760 F.3d 892, 892, 899 (8th Cir. July 28, 2014). Specifically, the matter involved a suspect, reportedly schizophrenic, who exited his home in the nude and "referred to himself as God." *Id.* at 895. Though the suspect initially complied with an officer's command "to walk out on the grass and lie face down on the ground[,]" the suspect "jumped to his feet, clench[ed] his fist, and glar[ed] in [the officer's] direction" as soon as the officer holstered his Taser. *Id.* A second officer continued to instruct the suspect to lie on the grass, but the suspect did not comply. *Id.* The first officer stated, "Taser, Taser, Taser" and deployed his Taser. *Id.*

"After the first Taser discharge, [the suspect] continued to struggle and ignore the officers' demands to remain on the ground, and [the first officer] followed with a second five-second cycle." *Id.* The suspect stood up despite further demands, and the officer administered a third Taser cycle. *Id.* The suspect "rose to his knees and swung his arms around." *Id.* The first officer administered a fourth Taser. *Id.* The suspect attempted to rise again, and the first officer delivered two more Taser cycles (the second of which appeared to be ineffective). *Id.* The suspect arose to his feet and walked toward the officers, and a third officer fired his Taser and delivered another five-second cycle. *Id.* The suspect rose to his feet again and assumed a charging/running stance. *Id.*

The third officer delivered another Taser cycle while the first and second officers attempted to handcuff the suspect. *Id.* The suspect kicked at the officers, then the third officer administered two Taser cycles in drive stun mode (where the cartridge is removed and the Taser is applied directly to the suspect) to the suspect's leg. *Id.* Finally, after a total of approximately nine cycles (one of which appeared to be ineffective), paramedics administered a sedative. *Id.* at

{01634521.DOCX;1}

896.  While being transferred to the gurney, the suspect went into cardiac arrest, and was pronounced dead on arrival to the hospital.  *Id.*

The Eight Circuit found qualified immunity protected the defendant officers from plaintiffs' Fourth Amendment claim regarding excessive force, it found the officers observed the suspect "aggressively approaching one of the officers, his continued noncompliance with the officers' instructions to lie on the ground, and his violent and aggressive behavior, which included kicking and swinging his arms at the officers once they approached to subdue him."  *De Boise*, 760 F.3d at 897.  The Court stated, "[W]e have yet to determine whether a violent subject, acting aggressively toward officers, has a clearly established right to be free from multiple Tasings." *Id*.

This case is extraordinarily similar to the facts presented in *De Boise*, and *De Boise* is controlling case law regarding the question of qualified immunity before this Court.  *See Hood v. U.S.*, 342 F.3d 861, 864 (8th Cir. 2003) (Eighth Circuit holdings binding on district court). There is no genuine dispute of material fact that the officers did not use excessive force against the Decedent.  Officer Kaminski, possessed of information the Decedent had been running naked in the middle of traffic, shouting and banging on cars. When he encountered the Decedent, Officer Kaminski did not know whether he was psychotic or under the influence of drugs. Despite several lawful commands, the Decedent was non-compliant and eventually aggressive and assaultive towards Kaminski. Once on the ground, Officer Kaminski experienced active resistance from Decedent and multiple attempts by the Decedent to get off the ground.

Once the Decedent ceased resisting and complied with orders to lay still on the ground, no further force was used against him.  Decedent's actions created a potential threat to himself,

and potentially other officers had the Decedent been able to flee, or go back into the street, where he had been prior to the Officers' arrival.  On July 16, 2011, the law was not clearly established that the Decedent (who was violent, resisting, and non-compliant) had a clearly established right to be free from multiple Tasings (the second prong).  Further, for reasons fully stated above, the Defendant Officers did not engage in excessive force,[6] and therefore, did not violate Decedent's constitutional rights (the first prong).  Accordingly, the Defendant Officers are entitled to qualified immunity and summary judgment.

> c. **Officer Kaminski is entitled to qualified immunity regarding allegations of failure to intervene excessive force because the law was not clearly established that a cause of action lies where an officer fails to intervene with respect to his own actions.**

Office Kaminski is entitled to qualified immunity regarding Plaintiffs' claim regarding failure to intervene, as the law was not clearly established an officer could violate an individual's rights for failing to intervene *against himself*.  *Cf. Grider v. Bowling*, 785 F.3d 1248, 1253 (8th Cir. 2015) ("It is clearly established that an officer who fails to intervene to prevent the unconstitutional use of excessive force *by another officer* may be held liable for violating the Fourth Amendment.") (internal quotations and citations omitted, emphasis added); *see also Bass v. Hansen,* 2010 WL 5069690, at *15 n. 12 (N.D. Ill. 2010) ("logic dictates that [the officers] cannot be liable for failure to intervene in their own actions.").[7]  Plaintiffs have not adduced any evidence establishing the use of any force after the Decedent complied with orders and was lying

---

[6] Plaintiffs have not established that Detective Bebe, Officer White, or Lieutenant Ballard ever applied any force to the Decedent. Further, the evidence establishes Detective Bebe or Lieutenant Ballard did not arrive on the scene until after the Tasings.

[7] In the alternative, a claim for failure to intervene against one's own actions would be duplicative of those actions, and thus redundant.

{01634521.DOCX;1}

still on the ground. Accordingly, Officer Kaminski is entitled to qualified immunity regarding Plaintiffs' claim for failure to intervene.

### d. Officers White, Bebe, and Ballard are entitled to qualified immunity regarding allegations of failure to intervene excessive force because there is no evidence Bebe or Ballard were present during any use of force, and Officer White did not know of or observe any unconstitutional use of force by Officer Kaminski.

It is "clearly established that an officer who fails to intervene to prevent the unconstitutional use of excessive force by another officer may be held liable for violating the Fourth Amendment." *Nance v. Sammis*, 586 F.3d 604, 612 (8th Cir.2009). The plaintiff must show the "officer observed or had reason to know that excessive force would be or was being used." *Id*. An officer can be liable for nonfeasance, "where the officer is aware of the abuse and the duration of the episode is sufficient to permit an inference of tacit collaboration." *Krout v. Goemmer*, 583 F.3d 557, 565 (8th Cir.2009); see also *Jennings v. Davis*, 476 F.2d 1271, 1275 (8th Cir.1973) (requiring an officer to "have had the duty, opportunity, or the ability to intervene"); see *Farrington v. Smith*, 707 F.3d 963, 972 (8th Cir.2013) (plaintiff must show the "officer observed or had reason to know that excessive force would be or was being used").

The Eighth Circuit has recently reaffirmed the requirement that an officer has the opportunity to prevent application of the use of excessive force in order to attach liability to an officer for failure to intervene.  *Grider v. Bowling*, 785 F.3d 1248 (8th Cir. 2015).  Specifically, the *Grider* Court affirmed summary judgment in favor of an officer where plaintiff failed to submit any evidence showing that officer was aware of another officer's kick before it occurred or had the opportunity "to take action to deescalate the situation."  *Id.* at 1253; *see Nance*, 586 F.3d at 612. The *Grider* Court found it relevant the other officer said nothing before he kicked the plaintiff.  *Grider*, 785 F.3d at 1253.  The Court determined "as a matter of law Officer

{01634521.DOCX;1}

21

Bowling cannot be liable for nonfeasance under the circumstances of this case." *Id.*

Based on the arguments *supra*, Plaintiffs have not established a constitutional violation in regard to excessive force in that the law was not clearly established that an aggressive subject, such as the Decedent, had a right to be free from multiple Tasings.  Assuming *arguendo* that a constitutional violation regarding excessive force exists, the evidence shows Detective Bebe and Lieutenant Ballard arrived after the Decedent was handcuffed. Ex. H Bebe Dep. 28:3–29:2; Ex. F Ballard Dep. 38:7–38:17. There has been no evidence that any force was used on the Decedent after the Decedent complied with commands and was lying still on the ground. There has been no evidence Detective Bebe or Lieutenant Ballard delayed responding to the scene or knew that Tasings were occurring. Accordingly, they are entitled to qualified immunity.

The evidence shows Officer White observed the Decedent being Tased once as he approached the scene in his vehicle, Ex. G White Dep. 50:3–50:9. After the application, Officer White observed the Decedent attempt to get off the ground. Ex. G White Dep. 51:1–51:4; 53:9–53:13; 54:16–54:19; 58:24–59:6.  As he drew closer to the Decedent, he was unable to see where the Taser probes had entered the Decedent's body and did not see the location until the Decedent had been turned over after handcuffing. Ex. G White Dep. 55:1–56:9.  After the Decedent tried to get back up, he observed the next and final Taser application. Ex. G White Dep. 59:5–59:21. During this final application, Officer White applied handcuffs to the Decedent.  *Id.*  There is no evidence that at the time he approached the scene, Officer White discussed with Officer Kaminski what had transpired or what force had or had not been used. Ex. G White Dep. 53:9–53:20.

22

Based on the arguments *supra*, Plaintiffs have not established a constitutional violation in regard to excessive force in that the law was not clearly established that an aggressive subject, such as the Decedent, had a right to be free from multiple Tasings. Assuming *arguendo* that a constitutional violation regarding excessive force exists, Officer White was unable to intervene during his first observance of a Tasing, as he was still inside his vehicle and not yet on the scene. With regard to observing a second Tasing, the evidence is that Officer White immediately exited his vehicle and handcuffed the Decedent, while the Decedent was already under the power of the Taser, after he had observed the Decedent attempting to get off the ground. There is no evidence that Officer White was aware of any prior use of force by Officer Kaminski against the Decedent.  Accordingly, Officer White had no reason to believe excessive force was being used, under the circumstances of which he was aware. Therefore, he is entitled to qualified immunity on this claim.

   **e. Defendant Officers are entitled to qualified immunity as there was no constitutional violation of a right to medical care.**

Plaintiffs purport to raise a cause of action against the Defendant Officers regarding their deliberate indifference to a serious medical need. Doc. No. 26 ¶¶ 41–42. For the following reasons, the Defendant Officers are entitled to summary judgment.

This Court analyzes a pretrial detainee's § 1983 claim under the Due Process Clause of the Fourteenth Amendment, not under the Eighth Amendment. *McRaven v. Sanders*, 577 F.3d 974, 979-80 (8th Cir. 2009). "This makes little difference as a practical matter, though: Pretrial detainees are entitled to the same protection under the Fourteenth Amendment as imprisoned convicts receive under the Eighth Amendment." *Id.*   "Deliberate indifference has both an objective and a subjective component." *Id.* "The objective component requires a plaintiff to

{01634521.DOCX;1}

demonstrate an objectively serious medical need." *Id.* "The subjective component requires a plaintiff to show that the defendant actually knew of, but deliberately disregarded, such need." *Id.*; *see Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011)).  To state a claim based on "inadequate medical treatment ... [t]he plaintiff 'must show more than negligence, more even than gross negligence….' " *Alberson v. Norris,* 458 F.3d 762, 765 (8th Cir. 2006) (quoting *Estate of Rosenberg v. Crandell,* 56 F.3d 35, 37 (8th Cir. 1995)).

The Due Process Clause of the Fourteenth Amendment requires that the police must provide medical care to "persons ... who have been injured while being apprehended by the police." *Teasley v. Forler*, 548 F. Supp. 2d 694, 709 (E.D. Mo. 2008) (quoting *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983). This duty is fulfilled, however, by promptly "summoning the necessary medical help or by taking the injured detainee to the hospital." *Maddox v. City of Los Angeles*, 792 F.2d 1408, 1415 (9th Cir. 1986). Absent unusual circumstances, a police officer cannot be held liable under § 1983 for failing to provide first aid or CPR so long as he has summoned the necessary medical help. *See Tagstrom v. Enockson*, 857 F.2d 502, 504 (8th Cir.1988) (holding officer who called ambulance, but failed to administer CPR to injured motorcyclist did not violate Due Process Clause when ambulance arrived in approximately six minutes); *Tatum v. City & County of San Francisco*, 441 F.3d 1090, 1099 (9th Cir. 2006) (holding that police officers who called an ambulance for a handcuffed suspect due to his difficulty breathing did not violate Due Process Clause by failing to administer CPR); *Wilson v. Meeks*, 52 F.3d 1547, 1556 (10th Cir.1995) (refusing to find that police officers never have a duty to render first aid, but finding that police officer who promptly summoned medical help and left a detainee laying on the ground face down with labored breathing and a gunshot wound did

not give rise to a duty to render first aid); *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1097 (6th Cir.1992) (holding that aside from summoning medical help, police have no duty to cut down an inmate discovered hanging in his jail cell).

Here, the officers called for emergency medical assistance once, immediately after the Taser had been deployed, and again after they noticed the Decedent was not breathing.  Ex. B Kaminski Dep. 149:15–150:12. The Decedent's handcuffs were removed and he was rolled over onto his back, once the officers observed the Decedent was not breathing. Ex. G White Dep. 67:6–67:8. The officers checked the Decedent's pulse and began chest compressions which continued until the ambulance arrived. Ex. G White Dep. 67:6–67:19. Plaintiffs' purported liability expert has no criticism of the officers' resuscitation efforts or of their calling an ambulance. Ex. L Martinelli Dep. 55:1–55:4. Plaintiffs' purported medical expert has no criticism of the officers' efforts to render medical care on the scene or call for an ambulance. Ex. N Cuclich Dep. 34:11–35:7.  There is no evidence in the record that any failure to render aid or delay in providing aid to the Decedent had any effect on the outcome.

Accordingly, there was no constitutional violation and the Defendant Officers are entitled to qualified immunity.

## B. COUNT II: 42 U.S.C. § 1983 v. City of Ferguson, Former Chief Thomas Jackson, Mayor, and Council

Plaintiffs allege constitutional violations against Defendant City of Ferguson ("City") Former Chief Thomas Jackson, Mayor James Knowles III, and Councilmen and Councilwoman ("Council"). They accuse these Defendants of failing to train the Defendant Officers and failing to supervise and investigate the Defendant Officers in a manner which deprived the Decedent of his Fourth Amendment Constitutional Rights. Doc. No. 26, ¶¶ 48–59.  Plaintiffs state the

{01634521.DOCX;1}

constitutional rights of Decedent were violated as a result of the policies and customs of the City. *Id.* at ¶ 48.  Plaintiffs also request relief in the form of punitive damages, *inter alia*.  *Id.* at ¶ 61. The City, Former Chief Jackson, Mayor Knowles, and the Council are entitled to summary judgment because: 1) There was no underlying constitutional violation; 2) the law of which Plaintiffs complain was not clearly established at the time of the subject incident; 3) there is no evidence from which it is possible to conclude that the City, Former Chief Thomas Jackson, the Mayor, or Council improperly trained Defendants, that such training caused any subject constitutional violation, or that any policy or custom caused harm to Decedent, and 4) in the alternative, punitive damages are not recoverable against a municipal entity in an action based on 42 U.S.C. § 1983.

**1. Plaintiffs' claim fails because there is no underlying constitutional deprivation.**

A municipal entity cannot be held vicariously liable under § 1983 on a *respondeat superior* theory.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *McGautha v. Jackson County*, 36 F.3d 53, 56 (8th Cir. 1994) ("*Respondeat superior* does not apply under section 1983 because municipal liability is limited to conduct for which the municipality is itself actually responsible.").  In order to ensure that *Monell* liability does not collapse into respondeat superior liability, the Supreme Court has instructed courts to employ strict standards of causation and culpability.  *See Board of the County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 405 (1997).  A municipality may be held liable <u>only</u> if the municipal employee is found liable on the underlying substantive constitutional claim.  *McCoy v. City of Monticello*, 411 F.3d 920, 922 (8th Cir. 2005) (*McCoy II*).

{01634521.DOCX;1}

26

For reasons stated above, Plaintiffs' underlying claims regarding alleged constitutional deprivations fail and these Defendants are entitled to summary judgment. *See supra*, Section I.A

**2. Plaintiffs cannot prevail because the violation of rights of which Plaintiffs complains were not clearly established at the time of the subject arrest.**

A municipality may be liable under § 1983 for the unconstitutional acts of its employees if some custom or policy of the municipality was the moving force behind the constitutional violation. *Wilson v. Spain*, 209 F.3d 713, 717 (8th Cir. 2000) (citing *Board of County Comm'rs v. Brown*, 520 U.S. 397, 403–04 (1997)). If plaintiff can establish a municipality's officer violated his federal right, plaintiff must establish the requisite degree of fault on the part of the municipality and a causal link between municipal policy and the alleged violation. *See Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010) (internal citation omitted). Such a showing requires either the existence of a municipal policy that violates federal law on its face or evidence that the municipality has acted with "deliberate indifference" to an individual's federal rights. *Id.*; *see Ware v. Jackson County, Mo.*, 150 F.3d 873, 880 (8th Cir. 1998) ("Alternatively, 'custom or usage' is demonstrated by: (1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) Th[e] plaintiff['s] injur[y] by acts pursuant to the governmental entities custom, i.e., [proof] that the custom was the moving force behind the constitutional violation").

"[A] municipality cannot exhibit fault rising to the level of *deliberate* indifference to a constitutional right when that right has not yet been clearly established." *Veatch v. Bartels*

*Lutheran Home*, 627 F.3d 1254, 1259 (8th Cir. 2010) (original emphasis).  The Eighth Circuit has stated:

> Where the municipality has not directly inflicted an injury, however, rigorous standards of culpability and causation must be applied, and a showing of deliberate indifference is required. The absence of clearly established constitutional rights-what Justice O'Connor called clear constitutional guideposts, undermines the assertion that a municipality deliberately ignored an obvious need for additional safeguards to augment its facially constitutional policy. This is not an application of qualified immunity for liability flowing from an unconstitutional policy. Rather, the lack of clarity in the law precludes a finding that the municipality had an unconstitutional policy at all, because its policymakers cannot properly be said to have exhibited a policy of deliberate indifference to constitutional rights that were not clearly established.

*Szabla v. City of Brooklyn Park, Minnesota*, 486 F.3d 385, 394 (8th Cir. 2007) (internal quotations and citations omitted).

For the reasons stated below pertaining to the qualified immunity afforded to Defendant Officers from any liability to Plaintiffs, the rights of which Plaintiffs complain were not clearly established at the time of the subject encounter.  *See supra*, Section I.A.  The City, Former Chief Jackson, the Mayor, and the Council are therefore, entitled to summary judgment with respect to Count II.

### 3. Plaintiffs have no evidence the City had any policy, custom, or training causing constitutional deprivations to Decedent.

The Eighth Circuit has carved out an exception to a municipality's lack of liability based on an officer's underlying unconstitutional tort, finding that "even if the arresting officers are not held responsible because of some good faith belief, meriting qualified immunity," the municipality is still liable for the unconstitutional deprivation suffered by the injured party. *Tilson v. Forrest City Police Dept.*, 28 F.3d 802, 813 (8th Cir. 1994).  Should this Court determine that Plaintiffs sufficiently showed a constitutional violation and Defendant Officers

{01634521.DOCX;1}

28

were protected by qualified immunity, Defendants maintain that Plaintiffs failed to show that the City violated Plaintiffs' constitutional rights under § 1983.

A municipality can be held directly liable under § 1983 "only where the municipality *itself* causes the constitutional violation at issue." *Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell*, 436 U.S. at 690) (emphasis in original). A municipality may be sued directly under § 1983 where "the action that is alleged to be unconstitutional implements or executes a 'policy' statement, ordinance, regulation, or decision officially adopted and promulgated by [the city's] officers." *Id.,* at 690. Liability under *Monell* also applies "for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels." *Monell, 436 U.S.,* at 690–91.

As stated above and constituent with Plaintiffs' allegations, Plaintiffs must therefore prove that the City either (a) implemented, executed, and promulgated unconstitutional "policy," (b) that there existed informal approval of a "custom" so widespread as to have the force of law that caused a constitutional deprivation under *Monell*, 436 U.S. at 690–91, 694, or (c) that the City exhibited a deliberate and conscious choice by failing to adequately train Defendant Officers causing harm to Decedent.

### a. Plaintiffs have failed to establish that any policy or regulation of the City was unconstitutional on its face or by implementation.

A plaintiff may establish municipal liability under § 1983 by proving that his constitutional rights were violated by an action pursuant to official municipal policy. *Monell* 436 U.S. at 691. The terms "policy" and "custom" are not used interchangeably in a *Monell* analysis. *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1998).

In order to establish an unconstitutional policy under *Monell*, a plaintiff must prove there was "an official policy," a deliberate choice of a governmental policy made by a municipal official who has final authority regarding such matters, which was the moving force behind the constitutional violation. *Mettler,* 165 F.3d at 1204; *Wilson v. Spain*, 209 F.3d 713, 717 (8th Cir. 2000). Municipal liability is imposed when some official policy "causes" an employee to violate another's constitutional rights. *Monell*, 436 U.S. at 692; *see also Davis v. White*, 794 F.3d 1008, 1014 (8th Cir. 2015). Where a plaintiff fails to identify any official policy that arguably played a role in the plaintiff's injuries, the plaintiff must fail on an unconstitutional policy claim. *Mettler*, 165 F.3d at 1204. "Official policy involves a deliberate choice to follow a course of action made from among various alternatives by an official who [is determined by state law to have] the final authority to establish governmental policy." *Ware v. Jackson County, Mo.*, 150 F.3d 873, 880 (8th Cir. 1998).

Plaintiffs have failed to establish that any policy or regulation of the City was unconstitutional on its face or by implementation. Ex. M, Ron Martinelli Report (Plaintiffs' purported liability expert's report, containing no opinions regarding the unconstitutionality of any City custom, policy, or usage); Ex. L Ron Martinelli Dep. 19:13–21:7. The undisputed evidence is that the City policies and procedures prove that its policies were consistent with constitutional requirements in the context of the subject incident. *Id.* The City is therefore entitled to summary judgment on Count II.

      **b. Plaintiffs have not presented "detailed evidence," about a "continuing, widespread, persistent pattern of unconstitutional conduct" or custom by officers in the City, as none exists.**

Plaintiffs alleged that the City, Former Chief Jackson, Mayor, and Council have "unnamed customs" which resulted in the violation of Decedent's rights.  Doc. No. 26, ¶ 48.

The Eighth Circuit has reviewed claims of constitutional violations involving excessive force against a municipality.  *Mettler*, 165 F.3d at 1201.  In *Mettler*, the plaintiffs alleged that there was deliberate indifference to the officers' custom, pattern, or practice of using excessive force, that the municipality conducted an inadequate investigation, and that it concealed evidence of wrongdoing.  *Id.*

Although a municipality may not be held vicariously liable for the unconstitutional acts of its employees, it may be held liable if a plaintiff can prove the municipality's policy or custom was the "moving force [behind] the constitutional violation."  *Monell*, 436 U.S. at 694.  It is not sufficient for a plaintiff to merely identify conduct attributed to the municipality, but he must demonstrate that, through the municipality's deliberate conduct, the municipality was the "moving force" behind the alleged injury.  *Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown (Bryan County)*, 520 U.S. 397, 404 (1997).  Where a plaintiff alleges a municipality has not "directly" inflicted an injury, but has caused an employee to do so, "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee."  *Id.* at 405 (citing *Canton*, 489 U.S. at 391–92).  Such claims, that do not involve allegations that the municipality itself violated federal law, or that it directed or authorized the deprivation, "present much more difficult problems of proof."  *Id.* at 406.  "That a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation; the plaintiff will simply have shown the employee acted culpably."  *Id.* at 406–07.  The plaintiff <u>must</u> demonstrate

the municipal action was taken with "deliberate indifference" to its known or obvious consequences. *Id.* at 407. "'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of County Comm'rs of Bryan County, Oklahoma, 520 U.S.* at 410.

In order to determine if a plaintiff has presented sufficient evidence of a municipal custom, the plaintiff must demonstrate:

(1)    The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

(2)    Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

(3)   The plaintiff['s] injury by acts pursuant to the governmental entity's custom, *i.e.*, [proof] that the custom was the moving force behind the constitutional violation.

*Mettler*, 165 F.3d at 1204 (citations omitted).  Plaintiff must satisfy <u>all</u> three requirements and present sufficient evidence "from which a jury could reasonably find the existence of a relevant municipal custom" in the City.  *See id.* (emphasis added) Plaintiffs have failed to do so.

The Eighth Circuit held that evidence of prior complaints may be sufficient evidence to demonstrate that a municipality and its officers ignored police misconduct.  *Mettler*, 165 F.3d at 1205; *See Parrish v. Luckie*, 963 F.2d 210, 204-05 (8th Cir. 1992) (reviewing the "<u>detailed</u> and compelling" evidence plaintiff presented that defendant police department avoided, ignored, and covered up complaints of physical and sexual misconduct by officer) (emphasis added); *Harris v. City of Pagedale*, 821 F.2d 499, 501-06 (8th Cir. 1987) (finding plaintiff had proven municipal "custom" through presentation of <u>detailed evidence</u> regarding a particular police officer's previous misconduct and the city's failure to investigate or punish that conduct) (emphasis

{01634521.DOCX;1}

32

added).  "[T]he mere existence of previous citizen complaints does not suffice to show a municipal custom of permitting or encouraging excessive force."  *Mettler*, 165 F.3d at 1205 (holding that evidence of fifteen citizen complaints against deputies, seven of which involved the use of excessive force and were not sustained after departmental investigation, with an eighth being sustained in part, without factual background and similarity to plaintiff's injury, insufficient to show "custom").  Plaintiffs must show that the City "failed to investigate previous incidents before a court could conclude the deputies at the time of the shooting believed a municipal custom allowed them to violate [plaintiffs'] rights with impunity."  *See id.*

Plaintiffs have not presented "detailed evidence" about a "continuing, widespread, persistent pattern of unconstitutional conduct" by officers in the City, as none exists.  The City sufficiently and adequately investigated prior complaints regarding Officer White. Ex. G, White Dep. 169:14–172:8, (discussing complaints, investigative process, and disciplinary actions taken). There has been no evidence of <u>any</u> other complaints against the Defendant Officers. Plaintiffs have presented <u>no</u> evidence there were any previous complaints ignored, any investigations that were inadequate, or that such complaints or investigations were a moving force in Defendant Officers' actions toward Decedent.  *See Mettler*, 165 F.3d at 1205.  The evidence fails to establish that the City had a custom of allowing the use of excessive force in subduing and restraining a non-compliant suspect.  *See McCoy II*, 411 at 923.

Accordingly, this Court should grant summary judgment in favor of the City regarding Plaintiffs' unconstitutional "custom" claim.

    **c.  Plaintiffs have not established the City was responsible for training Defendant Officers or that such officers received inadequate training which was the moving force behind a constitutional violation of Decedent.**

Plaintiffs have alleged that the City has inadequately trained the Defendant Officers, which resulted in the violation of Decedent's rights.  Doc. No. 26, ¶¶ 49(e), 54.

In order to prevail on their claim regarding inadequate training, Plaintiffs must show that (1) the police department's training was inadequate, (2) this failure to train "reflects a deliberate and conscious choice" by the department, and (3) the alleged deficiency in the training procedures actually caused harm. *Teasley v. Forler*, 548 F. Supp. 2d 694, 706 (E.D. Mo. 2008); *see also City of Canton, Ohio v. Harris*, 489 U.S. 378, 380 (1989); *Ambrose v. Young*, 474 F.3d 1070, 1079 (8th Cir.2007); *see Jane Doe A. ex rel. Jane Doe B. v. Special Sch. Dist. of St. Louis County*, 901 F.2d 642, 645 (8th Cir. 1990) (setting out standard for individual liability, which mirrors standard for municipal liability); *Herrera v. Valentine*, 653 F.2d 1220, 1224 (8th Cir. 1981) (stating failure to train or doing so in a grossly negligent manner exhibits a deliberate indifference to the resulting violations of a citizen's constitutional rights).

The Eighth Circuit found the City of Cape Girardeau was not deliberately indifferent to an arrestee's constitutional rights for failure to train the officer who made an arrest for violating Missouri's flag desecration statute, as required to support § 1983 liability against city, even though flag desecration statute violated the First Amendment; the city was not responsible for training the officer, instead, state law required that all officers be trained by Missouri Department of Public Safety. *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1160–61 (8th Cir. 2014). The officer had participated in the required and state-approved 600–hour initial training program and received continuing education training from approved providers, and city was not responsible for the training program's curriculum.  *Id.*; R.S. Mo. §§ 590.030 and 590.050; *see also Teasley v. Forler*, 548 F. Supp.2d 694 (E.D. Mo. 2008); ex. M, Martinelli Dep. 28:18–29:7. (explaining

accreditation through P.O.S.T and no knowledge of Defendant Officers having a lapse in their training.)

As noted by Plaintiffs' own purported liability expert, there has been no evidence of a failure to train by the City, Former Chief Jackson, the Mayor, and Council. Accordingly, the City is entitled to summary judgment regarding Count II.

**4. Plaintiffs' claim for punitive damages against the City cannot prevail as a matter of law.**

Plaintiffs attempt to request punitive damages against the City under 42 U.S.C. § 1983. Doc. No. 26, ¶ 61.  Punitive damages, as a matter of law, are not recoverable against a municipality under 42 U.S.C. § 1983.  *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1982); *Robinson v. City of St. Charles, Mo.*, 972 F.2d 974, 978 n.1 (8th Cir. 1992) (S.J. Wellford, concurring).  Accordingly, the City is entitled to summary judgment upon Plaintiffs' request for relief against the City in the form of punitive damages.

**C. COUNT III: R.S. Mo. § 537.080(1) Wrongful Death v. Officer Kaminski and Officer White in their individual capacities.**

Plaintiffs have alleged a state law claim regarding wrongful death under Missouri law. For the following reasons, Defendant Officers Kaminski and White are entitled to summary judgment because Plaintiffs cannot establish the force used was unlawful, and because the officers are entitled to official immunity.

**1. Missouri law regarding wrongful death.**

"Missouri's wrongful death statute creates a statutory cause of action unrecognized at common law."  *Miller v. Smith*, 921 S.W.3d 39, 44 (Mo. App. W.D. 1996) (citing *Sullivan v. Carlisle*, 851 S.W.3d 510, 516 (Mo. banc 1993).  A plaintiff must establish the following

elements to prevail on a wrongful death claim based on a negligence theory: (1) the defendant

owed duty to the decedent; (2) the defendant breached that duty; (3) the breach was the cause in

fact and the proximate cause of his death; and (4) as a result of the breach, the plaintiff suffered

damage.  *Heffernan v. Reinhold*, 73 S.W.3d 659, 665 (Mo. App. E.D. 2002).

> **2.  Missouri law regarding official immunity.**

"Under Missouri law, public officials acting within the scope of their authority are not

liable in tort for injuries arising from their discretionary acts or omissions."  *Davis v. White*, 794

F.3d 1008, 1013 (8th Cir. 2015) (internal quotes and citation omitted). The purpose of the

official immunity doctrine is to prevent second-guessing by public officials and to allow such

officials to make judgments affecting the public safety and welfare without being burdened by

the fear of personal liability.  *Southers v. City of Farmington*, 263 S.W.3d 603, 610 (Mo. banc

2008).  It is Plaintiffs' burden to plead and prove an exception to the application of official

immunity applies.  *See Stephens v. Dunn*, 453 S.W.3d 241, 251 (Mo.App. S.D. 2014) (citing

*State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 445 (Mo. banc 1986)).  The decision to use

force in the performance of an officer's duties is discretionary, rather than ministerial, for

purposes of applying official immunity.  *Davis v. White*, 794 F.3d 1008, 1013 (8th Cir. 2015).

> **3.  Defendant Officers are entitled to summary judgment as Plaintiffs cannot establish
> the officers breached any duty owed to the Decedent and because they are entitled to
> official immunity as to their determinations with respect to whether to use force
> against Decedent.**

As explained above, Plaintiffs have not established Defendant Officers breached any duty

owed to the Decedent in the process of carrying out their lawful obligations as police officers.

Further, as Defendant Officers have thoroughly briefed the uncontroverted facts of this matter

{01634521.DOCX;1}

above, it is fatal to Plaintiffs' claim that they have neither pleaded nor proved any exception to official immunity.

The decision by a police officer whether to use force is discretionary (*Davis*, 794 F.3d at 1013).  Plaintiffs have not proved bad faith or malice on the part of any officer, and only plead conclusory allegations that the conduct was "malicious" (*Id.)* (See also Doc. No. 26 at ¶ 68). Further, the uncontroverted facts establish why the use of force by the Defendant officers in this matter was reasonable under all the circumstances.

The undisputed evidence was the officers were simply trying to gain control of the irrational and violent Decedent by detaining him and handcuffing him, after the Decedent charged at Officer Kaminski in an aggressive and assaultive manner. Pursuant to the above discussion and facts, there is no genuine dispute of material fact as to those facts, and Plaintiffs cannot establish all elements of a wrongful death claim. Defendant Officers Kaminski and White are entitled to official immunity.

## IV.      CONCLUSION

The City is entitled to summary judgment as the Plaintiffs have not adduced any evidence of any unconstitutional policy, a pattern of transgressions, any custom or use, inadequate investigation, or any inadequate training of the City, Former Chief Jackson, Mayor, or the Council which was the moving force behind any constitutional violation to Decedent.  These Defendants are entitled to summary judgment as Plaintiffs cannot establish a claim of municipal liability, and the law was not clearly established on July 16, 2011, that an aggressive suspect had the right to be free from multiple Tasings (qualified immunity exists for the same reason to Defendant Officers).

{01634521.DOCX;1}

Defendant Officers are also entitled to qualified immunity regarding Plaintiffs' claim for excessive force because under the circumstances confronting officers (an individual acting erratically, naked, in the middle of traffic, banging on cars, non-compliant, aggressive, assaultive, and resisting lawful commands) did not use excessive force.

Defendant Officers are also entitled to qualified immunity regarding Plaintiffs' claim for medical care, because the officers called for emergency medical assistance twice, rendered medical aid on the scene, and did nothing to prevent or delay medical care.

Defendant Officers are entitled to summary judgment regarding Plaintiffs' wrongful death claim because Plaintiffs cannot establish each and every element and Defendants decision whether to use force was protected by qualified immunity (where Plaintiffs have neither pleaded nor proved any exception).

Accordingly, Defendants are entitled to summary judgment on all remaining counts.

WHEREFORE, Defendants respectfully request that this Court enter its Order and Judgment granting Defendants' Motion for Summary Judgment on all counts, for their costs, and for such further relief this Court deems just and proper.

/s/Peter J. Dunne
Peter J. Dunne  #31482
Robert T. Plunkert  #62064
Michael A. Langella #67258
Ida S. Shafaie  #66220
PITZER SNODGRASS, P.C.
Attorneys for Defendant
100 South Fourth Street, Suite 400
St. Louis, Missouri 63102-1821
(314) 421-5545
(314) 421-3144 (Fax)

I hereby certify that a copy of the foregoing was filed electronically with the Clerk of the Court this 29th day of April, 2016, to be served either by operation of the Court's electronic filing system, or by First Class Mail, upon the following:

William T. Dowd
Alex R. Lumaghi
211 North Broadway, Suite 4050
St. Louis, Missouri 63102
Bill@dowdlaw.net

Mark Floyd
8151 Clayton Road, Suite 202
St. Louis, Missouri 63117
mark@thefloydlawfirm.com

Attorneys for Plaintiffs Tina Moore and Estate of Jason Moore

Todd M. Johnson
9237 Ward Parkway, Suite 240
Kansas City, Missouri 64114
tjohnson@vnjlaw.com

Michael D. Cerulo
231 S. Bemiston, Suite 230
St. Louis, Missouri 63105
mcerulo@batyholm.com

Attorneys for Plaintiffs Delores Moore and Renee Rodgers, as Next Friend for A.D.R., a minor

/s/Peter J. Dunne