UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | | |
|---|---|---|---|
| TINA MOORE ET AL, | ) | | |
| | ) | | |
| Plaintiffs, | ) | | |
| | ) | | |
| vs. | ) | Case No.: | 4:14-CV-1443 SNLJ |
| | ) | | 4:14-CV-1447 SNLJ |
| CITY OF FERGUSON ET AL, | ) | | (Consolidated) |
| | ) | | |
| Defendants. | ) | | |

## *DEFENDANTS' STATEMENT OF UNCONTROVERTED MATERIAL FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT*

COME NOW Defendants, Police Officers Brian Kaminski, Officer Michael White, Lieutenant William Ballard, Detective Matthew Bebe, and Former Police Chief Thomas Jackson; and Mayor James Knowles, III, Councilman Mark J. Byrne, Councilwoman Kim Tihen, Councilman Dwayne T. James, Councilmen Tim Larson, David Conway and Keith Hallstrom (the "Defendants"), by and through their counsel, and pursuant to Rule 56 of the Federal Rules of Civil Procedure, propound the following Statement of Uncontroverted Material Facts in Support of their Motion for Summary Judgment:

1. Officer Brian Kaminski was the author of the City of Ferguson Police Report (aside from supplements of other officers). Ex. B Kaminski Dep. 33:4–34:6.; Ex. A, Ferguson Police Report No. 11-18027.

2. Officer Kaminski did not consult with any other officer when preparing the report. Ex. B Kaminski Dep. 33:4–34:6.

3. Prior to his encounter with police, the Decedent had been observed outside in the early morning hours in the street, naked, loudly yelling "God is good," "Glory to God," and "I am Jesus", and running into traffic and beating on cars with his hands. Ex. A Ferguson Police Report No. 11-18027; Ex. C Shurn Dep. 9:9–9:15; 13:5–13:25; 14:1–14:23; Ex. D Schilling Dep. 9:7–10:18.

4. Several 911 calls were made in reference to the Decedent and his actions. Ex. A; Ex. E Rhone Dep. 13:7–13:13; Ex. D Schilling Dep.13:1–14:11.

5. One eye witness, Alan Schilling, observed the Decedent to be agitated and angry. Ex. D Schilling Dep. 29:22–30:9.

6. Mr. Schilling assumed the Decedent was under the influence of drugs. Ex. D Schilling Dep. 32:3–32:20.

7. Officer Kaminski and other officers were dispatched to the call, initially to the area of Airport Road and North Marguerite. Ex. A.

8. Upon arrival, Officer Kaminski searched the area, and was flagged by an African-American female in a vehicle. *Id.*

9. The female advised the Decedent, who she had observed to be naked, was nearby at the intersection of Airport Road and Henquin. *Id.*

10. Officer Kaminski proceeded to the instersection of Airport and Henquin and observed the naked Decedent walk from behind a building and stand near the curb of Airport Road. *Id*.

11. As Officer Kaminski first observed the Decedent, there was traffic on the roadway and it was just becoming daylight. Ex. B Kaminski Dep. 48:2–48:6; 93:7–93:10; Ex. D Schilling Dep. 15:10–16:14; 34:3–34:13; Ex. F Ballard Dep. 47:25–50:6.

12. Officer Kaminski knew other officers had been dispatched but did not know where they would be coming from, how close they were, or when they would arrive. Ex. B Kaminski Dep. 173:25–174:8.

13. Officer Kaminski perceived the Decedent to be a harm to himself, based on his position next to the roadway. Ex. B Kaminski Dep. 104:3–105:5; 108:8–108:14.

14. Upon exiting his patrol vehicle, Officer Kaminski gave his first command to the Decedent to put his hands in the air and walk toward him. Ex. A.

15. Upon hearing Officer Kaminski's first command, the Decedent began to yell and walk towards Officer Kaminski in an aggressive manner. *Id.*

16. Officer Kaminski began to walk backwards after the Decedent had begun to yell and walk towards him in an aggressive manner. *Id*.

17. While walking backward, Office Kaminski gave his second command and advised the Decedent to stop and get on the ground. *Id*.

18. After the second command, the Decedent continued towards Officer Kaminski and began to run aggressively towards the Officer while swinging his arms in a pinwheel motion with fists clenched. Ex. A; Ex. B Kaminski Dep. 151:12–151:15.

19. Officer Kaminski continued to step backwards after observing the Decedent running aggressively while swinging his arms in a pinwheel motion with fists clenched, and Officer Kaminski advised the Decedent again to get on the ground. Ex. A.

20. The Decedent continued to advance aggressively, at which point Officer Kaminski unholstered his Taser and gave his third command to the Decedent to stop or he would be Tased. Ex. A; Ex. B Kaminski Dep. 49:24–50:1.

21. Officer Kaminski deployed his Taser after the Decedent continued to aggressively charge at him. Ex A.

22. The Decedent was approximately eight to ten feet away from Officer Kaminski at the time the Taser was initially deployed. Ex. B Kaminski Dep. 51:22–52:1.

23. The laser pointer on Officer Kaminski's Taser was originally aimed at the right side of the Decedent's body, near the mid hip area. Ex. B Kaminski Dep. 52:6–52:13.

24. Officer Kaminski believed it was possible his Taser aim was affected by flinching when pulling the trigger, or because the Decedent was in motion.  Ex. B Kaminski Dep. 189:22–190:6.

25. Officer Kaminski knew the Taser probes made contact with the Decedent's body but did not see exactly where the darts entered. Ex. B Kaminski Dep. 52:2–53:5; 53:10–53:11; 54:15–54:23.

26. After the initial Taser activation, the Decedent went to the ground. *Report*.

27. Once the first cycle was completed, the Decedent attempted to get back on his feet. Ex. A.

28. The Decedent got up off the ground to the level of his knees. Ex. B Kaminski Dep. 116:34–117:2.

29. Officer Kaminski shouted for the Decedent to get on the ground but the Decedent refused. Ex. A.

30. Fearful for his safety and the safety of the Decedent, Officer Kaminski applied another Taser cycle. *Id.*

31. Officer White also responded to the area of Airport and North Marguerite. *Id.*

{01635804.DOCX;1}

4

32. Once at Airport and Marguerite, Officer White observed clothing in the middle of the intersection and was approached by an individual who stated, "The naked man ran down Margo." *Id*.

33. Officer White received notice Officer Kaminski was with the Decedent at Airport Road and Henquin. *Id*.

34. Officer White responded to the area of the Decedent and Officer Kaminski and observed, what appeared to be, Officer Kaminski attempting to call out on his radio. *Id.*

35. Once he exited the vehicle, Officer White observed the Decedent attempt to get up off the ground. Ex. A; Ex. G White Dep. 51:1–51:4; 53:9–53:13; 54:16–54:19; 58:24–59:6.

36. Officer White heard Officer Kaminski yelling loudly for the Decedent to stay on the ground. Ex. A.

37. Officer White heard the Decedent yelling while Officer Kaminski was giving commands. *Id*.

38. Shortly thereafter, Officer Kaminski noticed Officer White exit his vehicle. *Id.*

39. During this time, the Decedent again attempted to get off the ground, and Officer Kaminski gave additional commands to stay on the ground. *Id.*

40. The Decedent continued to attempt to get off the ground, and a final Taser cycle was applied. *Id.*

41. During the last Taser application, Officer White was able to control the Decedent and place him into handcuffs. *Id*

42. After the Decedent was handcuffed, EMS was called to respond to the location. *Id*.

43. The Decedent continued to attempt to move his arms while he was on the ground. Ex. I, Ferguson Use of Force Report.

44. Shortly thereafter, Officer White attempted to speak with the Decedent but noticed the Decedent appeared to be unresponsive and was not breathing. Ex. A.

45. Officer White turned the Decedent over from his stomach to his back, removed the handcuffs and began to apply chest compressions. *Id.*

46. At this point, Officer White was able to see where the Taser probes had entered Mr. Moore's body. Ex. G White Dep. 56:1–56:14.

47. EMS was further advised that the Decedent had stopped breathing and to expedite their arrival. Report. Ex. B Kaminski Dep. 149:25–150:5.

48. During this time, Defendants Detective Bebe and Lieutenant Ballard arrived on scene. Ex. A.

49. Detective Bebe assisted Officer White with the chest compressions on the Decedent. *Id*.

50. During this time, the Decedent would breathe on his own, then stop breathing. *Id.*

51. The Officers also checked the Decedent's pulse but received negative results. *Id.*

52. The chest compressions continued until EMS arrived and the Decedent was transported to Christian Northwest. *Id.*

53. After the Decedent was transported by EMS, Officer White spoke with a witness named Alan Schilling. *Id.*

54. Mr. Schilling stated he heard the male shouting, "Glory to God," "I'm Jesus." *Id.*

55. Mr. Schilling observed the Decedent on Airport Road disrobe and become fully nude. *Id*.

56. Mr. Schilling stated he called 911. Ex. A, Police Report. *Id.*

57. A computer check of the Decedent revealed he had at least one active warrant. Ex. J, Criminal History.

58. Decedent had an extensive criminal history with charges including, but not limited to, Possession of Controlled Substance, Distribution of Controlled Substance, Driving While Intoxicated, Trespassing, Stealing, Burglary in the Second Degree, and numerous traffic charges. *Id.*

59. The Assistant Medical Examiner, Kamal Sabharwal, M.D., ruled the manner of death of Decedent as natural. Ex. K, 2011-5866, Exam Case, p. 12.

60. Dr. Sabharwal ruled the immediate cause of death to Agitated Delirium secondary to Psychosis. *Id*. at p. 12.

61. Officer Kaminski had probable cause to believe Decedent had committed the crimes of peace disturbance. Ex. L Martinelli Dep. 85:6–85:10; 64:21–65:11.

62. The Decedent's actions, in rushing Office Kaminski with his arms in a pinwheel motion, was assaultive behavior, giving rise to probable cause to arrest Decedent for assault. Ex. L Martinelli Dep. 80:21–81:4; 88:1–88:10.

63. Several of the eyewitnesses considered the Decedent may have been under the influence of drugs, based on his behavior and actions. Ex. C Shurn Dep. 29:3–29:16; Ex. D Schilling Dep. 32:3–32:20.

64. It was reasonable for Officer Kaminski to believe the Decedent was under the influence of drugs. Ex. L, Martinelli Dep. 74:17–74:24; 78:6–78:12.

65. Officer Kaminski believed the actions of the Decedent were consistent with someone under the influence of PCP or methamphetamines or another controlled substance. Ex. B, Kaminski Dep. 90:6–90:15; 131:16–131:18.

66. The initial use of the Taser after the Decedent charged Officer Kaminski was objectively reasonable. Ex. L, Martinelli Dep. 100:5–100:13.

67. Detective Bebe and Lieutenant Ballard were not on the scene for any of the Tasings. Ex. H, Bebe Dep. 28:3–29:2; Ex. F, Ballard Dep. 38:7–38:1.

68. Detective Bebe and Lieutenant Ballard arrived after the Decedent was already handcuffed. *Id*.

69. The Decedent was muscular. Ex. B Kaminski Dep. 131:23–132:1; Ex. G, White Dep. 116:8–116:13.

70. Officer White observed the Decedent being Tased once as he approached the scene in his vehicle. Ex. G, White Dep. 50:3–50:9.

71. As he drew closer to the Decedent, Officer White was unable to see where the Taser probes had entered the Decedent's body and did not see the location until the Decedent had been turned over after handcuffing. Ex. G, White Dep. 55:1–56:9.

72. After the Decedent tried to get back up, he observed the next and last Taser application. Ex. G, White Dep. 59:5–59:21.

73. During this final application, Officer White applied handcuffs to the Decedent while under the power of the Taser. *Id.*

74. There is no evidence that at the time he approached the scene that Officer White discussed with Officer Kaminski what had transpired or what force had or had not been used. Ex. G, White Dep. 53:9–53:20.

75. The officers called for emergency medical assistance the first time immediately after the Taser had been deployed, and again, after they noticed the Decedent was not breathing. Ex. B, Kaminski Dep. 149:15–150:12.

76. The Decedent's handcuffs were removed and he was rolled over onto his back, once the Officers observed the Decedent was not breathing. Ex. G, White Dep. 67:6–67:8.

77. The Officers checked the Decedent's pulse and began chest compressions, which continued until the ambulance arrived. Ex. G, White Dep. 67:6–67:19.

78. Plaintiffs' purported liability expert has no criticism of the officers' resuscitation efforts or of their calling an ambulance. Ex. L, Martinelli Dep. 55:1–55:4.

79. Plaintiffs' purported medical expert has no criticism of the Officers' efforts to render medical care on the scene or call for an ambulance. Ex. N, Cuclich Dep. 34:11–35:7.

80. The City of Ferguson's customs, policies, and usages placed at issued by Plaintiffs are not unconstitutional. Ex. M, Ron Martinelli Report (Plaintiffs' purported liability expert's report, containing no opinions regarding the unconstitutionality of any City of Ferguson custom, policy, or usage); Ex. L, Ron Martinelli Dep. 19:13–21:7.

81. The City of Ferguson, Missouri, sufficiently and adequately investigated prior complaints regarding Officer White.  Officer White. Ex. G, White Dep. 169:14–172:8 (discussing complaints, investigative process, and disciplinary actions taken).

82. There has been no evidence of any other complaints against the Defendant Officers.

83. The Missouri Department of Public Safety is responsible for the training of Missouri sworn police officers through the P.O.S.T. program. Ex. L, Martinelli Dep. 28:18–29:7 (explaining accreditation through P.O.S.T).

84. There is no evidence the Defendant Officers were inadequately trained. Ex. L, Martinelli Dep. 28:18–29:7 (no knowledge of any lapse in the Officers' training).

WHEREFORE, Defendants respectfully request that this Court enter an Order and Judgment granting Defendants' Motion for Summary Judgment on all counts, for costs, and for such further relief this Court deems just and proper.

/s/Peter J. Dunne
Peter J. Dunne   #31482
Robert T. Plunkert   #62064
Michael A. Langella #67258
Ida S. Shafaie  #66220
PITZER SNODGRASS, P.C.
Attorneys for Defendant
100 South Fourth Street, Suite 400
St. Louis, Missouri 63102-1821
(314) 421-5545
(314) 421-3144 (Fax)

I hereby certify that a copy of the foregoing was filed electronically with the Clerk of the Court this 29th day of April, 2016, to be served either by operation of the Court's electronic filing system, or by First Class Mail, upon the following:

William T. Dowd
Alex R. Lumaghi
211 North Broadway, Suite 4050
St. Louis, Missouri 63102
Bill@dowdlaw.net

Mark Floyd
8151 Clayton Road, Suite 202
St. Louis, Missouri 63117
mark@thefloydlawfirm.com

Attorneys for Plaintiffs Tina Moore and Estate of Jason Moore

Todd M. Johnson
9237 Ward Parkway, Suite 240
Kansas City, Missouri 64114
tjohnson@vnjlaw.com

Michael D. Cerulo
231 S. Bemiston, Suite 230
St. Louis, Missouri 63105
mcerulo@batyholm.com

Attorneys for Plaintiffs Delores Moore and Renee Rodgers, as Next Friend for A.D.R., a minor

/s/Peter J. Dunne

{01635804.DOCX;1}