UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

TINA MOORE ET AL,                          )
                                           )
         Plaintiffs,                       )
                                           )
vs.                                        )   Case No.:    4:14-CV-1443 SNLJ
                                           )                4:14-CV-1447 SNLJ
CITY OF FERGUSON ET AL,                    )                (Consolidated)
                                           )
         Defendants.                       )

## PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF UNCONTROVERTED MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

COME NOW Plaintiffs, by and through their counsel, and pursuant to Rule 56 of the

Federal Rules of Civil Procedure, respond to Defendants' Statement of Uncontroverted Material

Facts as follows:

1.       Officer Brian Kaminski was the author of the City of Ferguson Police Report (aside from

         supplements of other officers). Ex. B Kaminski Dep. 33:4–34:6.; Ex. A, Ferguson Police

         Report No. 11-18027.

>        **RESPONSE: Denied. Officer Kaminski prepared the report with the help of his
>        superiors and Officer White.
>        See Kaminski, Brian, (Pages 33:4 to 33:10; 36:22 to 36:24), Ex. 3.
>        Additionally Officer Kaminski prepared a Use of Force Memorandum
>        which was disclosed after the close of discovery, predates the report
>        containing material differences with the subsequent report.
>        See Plaintiffs' Statement of Additional Uncontroverted Material Facts
>        ("Add. Facts") ¶¶ 15-16; 44; 116**

2.       Officer Kaminski did not consult with any other officer when preparing the report. Ex. B

         Kaminski Dep. 33:4–34:6.

>        **RESPONSE: Denied. Officer Kaminski prepared the report with the help of his
>        superiors and Officer White.**

See Kaminski, Brian, (Pages 33:4 to 33:10; 36:22 to 36:24), Ex. 3.
**Additionally Officer Kaminski prepared a Use of Force Memorandum
which was disclosed after the close of discovery, predates the report
containing material differences with the subsequent report.**
See **Plaintiffs' Statement of Additional Uncontroverted Material Facts
("Add. Facts") ¶¶ 15-16; 44; 116**

3.      Prior to his encounter with police, the Decedent had been observed outside in the early morning hours in the street, naked, loudly yelling "God is good," "Glory to God," and "I am Jesus", and running into traffic and beating on cars with his hands. Ex. A Ferguson Police Report No. 11-18027; Ex. C Shurn Dep. 9:9–9:15; 13:5–13:25; 14:1–14:23; Ex. D Schilling Dep. 9:7–10:18.

**RESPONSE:  Admit.**

4.      Several 911 calls were made in reference to the Decedent and his actions. Ex. A; Ex. E Rhone Dep. 13:7–13:13; Ex. D Schilling Dep.13:1–14:11.

**RESPONSE:  Admit.**

5.      One eye witness, Alan Schilling, observed the Decedent to be agitated and angry. Ex. D Schilling Dep. 29:22–30:9.

**RESPONSE: Admit that Alan Schilling's testimony contains this language, but
denied that Alan Schilling's observation is uncontroverted material
fact or that Officer Kaminski was aware of Alan Schilling's
observations as to whether Jason Moore was agitated or angry.
See Add. Facts, ¶¶ 145; 148.**

**6.**     Mr. Schilling assumed the Decedent was under the influence of drugs. Ex. D Schilling Dep. 32:3–32:20.

**RESPONSE: Admit that Alan Schilling's testimony contains this language, but denied that Alan Schilling's assumptions are a proper basis for a statement uncontroverted material fact or that Officer Kaminski was aware of Alan Schilling's assumptions.**
**See Add. Facts, ¶¶ 145; 148.**

7.     Officer Kaminski and other officers were dispatched to the call, initially to the area of Airport Road and North Marguerite. Ex. A.

**RESPONSE: Admit**.

8.     Upon arrival, Officer Kaminski searched the area, and was flagged by an African-American female in a vehicle. *Id.*

**RESPONSE:  Admit**.

9.     The female advised the Decedent, who she had observed to be naked, was nearby at the intersection of Airport Road and Henquin. *Id.*

**RESPONSE: Admit**.

10.     Officer Kaminski proceeded to the intersection of Airport and Henquin and observed the naked Decedent walk from behind a building and stand near the curb of Airport Road. *Id.*

**RESPONSE:  Admit**.

11.     As Officer Kaminski first observed the Decedent, there was traffic on the roadway and it was just becoming daylight. Ex. B Kaminski Dep. 48:2–48:6; 93:7–93:10; Ex. D Schilling Dep. 15:10–16:14; 34:3–34:13; Ex. F Ballard Dep. 47:25–50:6.

**RESPONSE: Denied** that there was traffic on the roadway. Officer Kaminski's testified that the only vehicle he physically remembers being there was Officer White's vehicle. Kaminski, Brian, (Page 149:9 to 149:13), Ex. 3. Officer White testified that traffic was "very light." Otherwise, admit.
See Add. Facts, ¶¶ 101.

12. Officer Kaminski knew other officers had been dispatched but did not know where they would be coming from, how close they were, or when they would arrive. Ex. B Kaminski Dep. 173:25–174:8.

**RESPONSE: Denied.** Officer White had his siren and emergency lights on as he came over the hill overlooking Officer Kaminski's vehicle and he believes Officer Kaminski turned and saw him coming over the hill very near the incident.
<u>See</u> White, Michael, (Pages 43:16 to 44:24; 53:21 to 54:15), Ex. 8.

13. Officer Kaminski perceived the Decedent to be a harm to himself, based on his position next to the roadway. Ex. B Kaminski Dep. 104:3–105:5; 108:8–108:14.

**RESPONSE: Denied.** Officer Kaminski's testified that the only vehicle he remembers was Officer White's vehicle. Officer White testified that traffic was "very light." Furthermore, the material presented, Officer Kaminski's perception, does not establish the absence of a genuine dispute. Fed.R.Civ.Pro. 56(c)(1)(B). The test for measuring excessive force is an objective one, not the Defendant's subjective perception. An officer's good intentions will not make an objectively unreasonable use of force constitutional. See <u>Graham v. Connor</u>, 490 U.S. 386, 397, 109 S. Ct. 1865, 1872, 104 L. Ed. 2d 443 (U.S. 1989).

The Plaintiffs further dispute this "fact" because it is the Plaintiffs who are entitled as non-movants to all reasonable inferences. A jury is entitled to make reasonable inferences based on the circumstantial evidence and testimony, and Plaintiffs are entitled to all such inferences on summary judgment. See <u>Montoya v. City of Flandreau</u>, 669 F.3d 867, 871 (8th Cir. 2012)(On summary judgment in excessive force case, the court views the record and draws all reasonable inferences in the light most favorable to plaintiff, while simultaneously viewing the facts from the perspective of "a reasonable officer on the scene"). Because of the death of Jason Moore, Defendant Kaminski is the only witness to the events leading to the first tase of Jason Moore.

**The reasonable inferences to which the Plaintiffs are entitled include that this testimony by the Defendant is patently subjective, speculative and self serving.**

**Plaintiffs' investigation has revealed that, on every material point of Officer Kaminski's testimony where there are other sources of information as to a fact, Officer Kaminski's testimony is inaccurate and contradicted. See Add. Facts ¶¶ 15-16; 20-38; 100-101.**

14.    Upon exiting his patrol vehicle, Officer Kaminski gave his first command to the Decedent to put his hands in the air and walk toward him. Ex. A.

    **RESPONSE: Denied.  Officer Kaminski was approaching Jason Moore when he gave his command to Mr. Moore to come towards him.**
    **Add. Facts ¶ 14.**

15.    Upon hearing Officer Kaminski's first command, the Decedent began to yell and walk towards Officer Kaminski in an aggressive manner. *Id.*

    **RESPONSE: Denied.  Plaintiffs deny that this statement is an undisputed fact. Because of the death of Jason Moore, Defendant Kaminski is the only witness to the events leading to the first tase of Jason Moore. Plaintiffs are entitled reasonable inferences at Summary Judgment, including that Defendant Kaminski's testimony is patently subjective and self serving.  See <u>Montoya v. City of Flandreau</u>, 669 F.3d 867, 871 (8th Cir. 2012).**

    **Plaintiffs' investigation has revealed that, on every material point of Officer Kaminski's testimony where there are other sources of information as to a fact, Officer Kaminski's testimony is inaccurate and contradicted. See Add. Facts ¶¶ 15-16; 20-38; 100-101.**

16.    Officer Kaminski began to walk backwards after the Decedent had begun to yell and walk towards him in an aggressive manner. *Id.*

    **RESPONSE: Denied.  Plaintiffs deny that this statement is an undisputed fact. Because of the death of Jason Moore, Defendant Kaminski is the only witness to the events leading to the first Tase of Jason Moore. Plaintiffs are entitled reasonable inferences at Summary Judgment, including that Defendant Kaminski's testimony is patently subjective and self serving.  See <u>Montoya v. City of Flandreau</u>, 669 F.3d 867, 871 (8th Cir. 2012).**

> **Plaintiffs' investigation has revealed that, on every material point of Officer Kaminski's testimony where there are other sources of information as to a fact, Officer Kaminski's testimony is inaccurate and contradicted. See Add. Facts ¶¶ 15-16; 20-38; 100-101.**

17.     While walking backward, Office Kaminski gave his second command and advised the

Decedent to stop and get on the ground. *Id*.

> **RESPONSE: Denied. Plaintiffs deny that this statement is an undisputed fact. Because of the death of Jason Moore, Defendant Kaminski is the only witness to the events leading to the first Tase of Jason Moore. Plaintiffs are entitled reasonable inferences at Summary Judgment, including that Defendant Kaminski's testimony is patently self serving. See <u>Montoya v. City of Flandreau</u>, 669 F.3d 867, 871 (8th Cir. 2012).**
>
> **Plaintiffs' investigation has revealed that, on every material point of Officer Kaminski's testimony where there are other sources of information as to a fact, Officer Kaminski Testimony is inaccurate and contradicted. See Add. Facts ¶¶ 15-16; 20-38; 100-101.**

18.     After the second command, the Decedent continued towards Officer Kaminski and began

to run aggressively towards the Officer while swinging his arms in a pinwheel motion

with fists clenched. Ex. A; Ex. B Kaminski Dep. 151:12–151:15.

> **RESPONSE: Denied. Officer Kaminski's original Memorandum did not mention any "pinwheel motion." Reference to the "pinwheel motion" was only added in a later report. See Add. Facts, ¶¶ 15-16.**
>
> **Plaintiffs further deny that this statement is an undisputed fact. Because of the death of Jason Moore, Defendant Kaminski is the only witness to the events leading to the first Tase of Jason Moore. Plaintiffs are entitled reasonable inferences at Summary Judgment, including that Defendant Kaminski's testimony is patently subjective and self serving. See <u>Montoya v. City of Flandreau</u>, 669 F.3d 867, 871 (8th Cir. 2012).**
>
> **Plaintiffs' investigation has revealed that, on every material point of Officer Kaminski's testimony where there are other sources of**

**information as to a fact, Officer Kaminski's testimony is inaccurate and contradicted. See Add. Facts ¶¶ 15-16; 20-38; 100-101.**

19.    Officer Kaminski continued to step backwards after observing the Decedent running aggressively while swinging his arms in a pinwheel motion with fists clenched, and Officer Kaminski advised the Decedent again to get on the ground. Ex. A.

    **RESPONSE: Denied. Officer Kaminski's original Memorandum did not mention any "pinwheel motion." Reference to the "pinwheel motion" was only added in a later report. See Add. Facts, ¶¶ 15-16.**

    **Plaintiffs further deny that this statement is an undisputed fact. Because of the death of Jason Moore, Defendant Kaminski is the only witness to the events leading to the first Tase of Jason Moore. Plaintiffs are entitled reasonable inferences at Summary Judgment, including that Defendant Kaminski's testimony is patently subjective and self serving. See <u>Montoya v. City of Flandreau</u>, 669 F.3d 867, 871 (8th Cir. 2012).**

    **Plaintiffs' investigation has revealed that, on every material point of Officer Kaminski's testimony where there are other sources of information as to a fact, Officer Kaminski's testimony is inaccurate and contradicted. See Add. Facts ¶¶ 15-16; 20-38; 100-101.**

20.    The Decedent continued to advance aggressively, at which point Officer Kaminski unholstered his Taser and gave his third command to the Decedent to stop or he would be Tased. Ex. A; Ex. B Kaminski Dep. 49:24–50:1.

    **RESPONSE: Denied. Plaintiffs deny that this statement is an undisputed fact. Because of the death of Jason Moore, Defendant Kaminski is the only witness to the events leading to the first Tase of Jason Moore. Plaintiffs are entitled reasonable inferences at Summary Judgment, including that Defendant Kaminski's testimony is patently subjective and self serving. See <u>Montoya v. City of Flandreau</u>, 669 F.3d 867, 871 (8th Cir. 2012).**

    **Plaintiffs' investigation has revealed that, on every material point of Officer Kaminski's testimony where there are other sources of information as to a fact, Officer Kaminski's testimony is inaccurate and contradicted. See Add. Facts ¶¶ 15-16; 20-38; 100-101.**

21. Officer Kaminski deployed his Taser after the Decedent continued to aggressively charge at him. Ex A.

   **RESPONSE: Admit only that Officer Kaminski deployed his Taser at Jason Moore, otherwise denied. Plaintiffs deny that this statement is an undisputed fact. Because of the death of Jason Moore, Defendant Kaminski is the only witness to the events leading to the first Tase of Jason Moore. Plaintiffs are entitled reasonable inferences at Summary Judgment, including that Defendant Kaminski's testimony is patently subjective and self serving. See <u>Montoya v. City of Flandreau</u>, 669 F.3d 867, 871 (8th Cir. 2012).**

   **Plaintiffs' investigation has revealed that, on every material point of Officer Kaminski's testimony where there are other sources of information as to a fact, Officer Kaminski's testimony is inaccurate and contradicted. See Add. Facts ¶¶ 15-16; 20-38; 100-101.**

22. The Decedent was approximately eight to ten feet away from Officer Kaminski at the time the Taser was initially deployed. Ex. B Kaminski Dep. 51:22–52:1.

   **RESPONSE: Denied. Plaintiffs deny that this statement is an undisputed fact. Because of the death of Jason Moore, Defendant Kaminski is the only witness to the events leading to the first Tase of Jason Moore. Plaintiffs are entitled reasonable inferences at Summary Judgment, including that Defendant Kaminski's testimony is patently self serving. See <u>Montoya v. City of Flandreau</u>, 669 F.3d 867, 871 (8th Cir. 2012).**

   **Plaintiffs' investigation has revealed that, on every material point of Officer Kaminski's testimony where there are other sources of information as to a fact, Officer Kaminski's testimony is inaccurate and contradicted. See Add. Facts ¶¶ 15-16; 20-38; 100-101.**

23. The laser pointer on Officer Kaminski's Taser was originally aimed at the right side of the Decedent's body, near the mid hip area. Ex. B Kaminski Dep. 52:6–52:13.

   **RESPONSE: Denied. Plaintiffs deny that this statement is an undisputed fact. Because of the death of Jason Moore, Defendant Kaminski is the only witness to the events leading to the first Tase of Jason Moore. Plaintiffs are entitled reasonable inferences at Summary Judgment, including that Defendant Kaminski's testimony is patently self**

serving.  See <u>Montoya v. City of Flandreau</u>, 669 F.3d 867, 871 (8th Cir. 2012).

Plaintiffs' investigation has revealed that, on every material point of Officer Kaminski's testimony where there are other sources of information as to a fact, Officer Kaminski's testimony is inaccurate and contradicted.  See Add. Facts ¶¶ 15-16; 20-38; 100-101.

24. Officer Kaminski believed it was possible his Taser aim was affected by flinching when pulling the trigger, or because the Decedent was in motion.  Ex. B Kaminski Dep. 189:22–190:6.

RESPONSE:  Denied.  The Ferguson Police Department's Taser Officer, Officer Brannan, testified that X26 Taser's are accurate to within inches when deployed inside a 5-10 foot range.  Officer Brannan further testified that officers are trained to shoot their firearms for the center of body mass, practicing enough to develop muscle memory in order to consistently hit the center body of body mass.  Brannan, Jon, (Pages 44:8 to 45:10; Pages 14:14 to 15:14), Ex. 7.

Plaintiffs further deny that this statement is an undisputed fact. Because of the death of Jason Moore, Defendant Kaminski is the only witness to the events leading to the first Tase of Jason Moore. Plaintiffs are entitled reasonable inferences at Summary Judgment, including that Defendant Kaminski's testimony is patently self serving.  See <u>Montoya v. City of Flandreau</u>, 669 F.3d 867, 871 (8th Cir. 2012).

Plaintiffs further state that what the Defendant "believed" was "possible" is not sufficient to support a Motion for Summary judgment.  The test for measuring excessive force is an objective one, not the Defendant's subjective perception and an officer's good intentions will not make an objectively unreasonable use of force constitutional. See <u>Graham v. Connor</u>, 490 U.S. 386, 397, 109 S. Ct. 1865, 1872, 104 L. Ed. 2d 443 (U.S. 1989).

25. Officer Kaminski knew the Taser probes made contact with the Decedent's body but did not see exactly where the darts entered. Ex. B Kaminski Dep. 52:2–53:5; 53:10–53:11; 54:15–54:23.

**RESPONSE: Denied.** Officer Kaminski testified that he deployed his Taser within 10 feet of Jason Moore and proceeded to stand over him discharging the Taser for 21 to 23 seconds. Officer White testified that when he approached the scene, Jason Moore was on his back. See Add. Facts, ¶ 20; 31-33.

Plaintiffs further deny that this statement is an undisputed fact. Because of the death of Jason Moore, Defendant Kaminski is the only witness to the events leading to the first Tase of Jason Moore. Plaintiffs are entitled reasonable inferences at Summary Judgment, including that Defendant Kaminski's testimony is patently self serving. See <u>Montoya v. City of Flandreau</u>, 669 F.3d 867, 871 (8th Cir. 2012).

Plaintiffs' investigation has revealed that, on every material point of Officer Kaminski's testimony where there are other sources of information as to a fact, Officer Kaminski's testimony is inaccurate and contradicted. See Add. Facts ¶¶ 15-16; 20-38; 100-101.

26. After the initial Taser activation, the Decedent went to the ground.

      **RESPONSE: Admitted.**

27. Once the first cycle was completed, the Decedent attempted to get back on his feet. Ex. A.

      **RESPONSE: Denied.** Officer Kaminski testified that Jason Moore placed his hands on the ground and raised himself six (6) inches off the ground but did not raise himself to the point where he was facing Officer Kaminski before Officer Kaminski unloaded a second Taser charge. Officer White testified that when he approached the scene, coming to a stop in his vehicle 20 to 50 feet away, Jason Moore was lying on the ground on his back. Officer White testified that Jason was merely "trying to lean up off the ground" and "sort of do a sit up" immediately prior to being Tased by Officer Kaminski. Officer White testified that Jason Moore did not have his hands behind his back pushing himself up; they were "waving." See Add. Facts, ¶¶ 31-34; 206.

28. The Decedent got up off the ground to the level of his knees. Ex. B Kaminski Dep. 116:34–117:2.

**RESPONSE: Denied. Officer Kaminski testified that Jason Moore placed his hands on the ground and raised himself six (6) inches off the ground but did not raise himself to the point where he was facing Officer Kaminski before Officer Kaminski unloaded a second Taser charge. Officer White testified that when he approached the scene, coming to a stop in his vehicle 20 to 50 feet away, Jason Moore was lying on the ground on his back. Officer White testified that Jason was merely "trying to lean up off the ground" and "sort of do a sit up" immediately prior to being Tased by Officer Kaminski. Officer White testified that Jason Moore did not have his hands behind his back pushing himself up; they were "waving." See Add. Facts, ¶¶ 31-34; 206.**

29.     Officer Kaminski shouted for the Decedent to get on the ground but the Decedent refused. Ex. A.

**RESPONSE: Denied. Officer Kaminski could not have first finished unloading a Taser charge, then given Jason Moore multiple commands to stay on the ground, then given Jason Moore adequate time to comply with the command, then conducted a submission assessment, before finally administering a subsequent Taser application, all within the time signatures recorded on the Taser download sheet such that any movement on the part of Jason Moore could be considered a refusal of a command.**
**See Add. Facts, ¶¶ 20-29.**

30.     Fearful for his safety and the safety of the Decedent, Officer Kaminski applied another Taser cycle. *Id.*

**RESPONSE: Denied. Plaintiffs deny that this statement is an undisputed fact.**
**Officer Kaminski's testimony that a thin, naked man lying face down on the ground with Taser prongs in his body strains reasonable belief:**

**Q   At this time, Jason's only threat to you would have been his body, correct?**
**A   Correct.**
**Q   As he was laying on the ground with the Taser prongs in his body, did you consider him to be a threat to you?**
**A   Yes.**
**Kaminski, Brian, (Page 122:11 to 122:17)**

**Because of the death of Jason Moore, Defendant Kaminski is the only witness to the events leading to the first Tase of Jason Moore.**

**Plaintiffs are entitled reasonable inferences at Summary Judgment, including that Defendant Kaminski's testimony is patently subjective and self serving. See <u>Montoya v. City of Flandreau</u>, 669 F.3d 867, 871 (8th Cir. 2012).**

**Plaintiffs further state that the test for measuring excessive force is an objective one, and Defendant's subjective statements concerning his state of mind will not make an objectively unreasonable use of force constitutional. See <u>Graham v. Connor</u>, 490 U.S. 386, 397, 109 S. Ct. 1865, 1872, 104 L. Ed. 2d 443 (U.S. 1989).**

31.  Officer White also responded to the area of Airport and North Marguerite. *Id.*

**RESPONSE: Admit.**

32.  Once at Airport and Marguerite, Officer White observed clothing in the middle of the intersection and was approached by an individual who stated, "The naked man ran down Margo." *Id.*

**RESPONSE: Admit.**

33.  Officer White received notice Officer Kaminski was with the Decedent at Airport Road and Henquin. *Id.*

**RESPONSE: Admit.**

34.  Officer White responded to the area of the Decedent and Officer Kaminski and observed, what appeared to be, Officer Kaminski attempting to call out on his radio. *Id.*

**RESPONSE: Admit.**

35.     Once he exited the vehicle, Officer White observed the Decedent attempt to get up off the

ground. Ex. A; Ex. G White Dep. 51:1–51:4; 53:9–53:13; 54:16–54:19; 58:24–59:6.

> **RESPONSE: Denied.   Officer White's testimony does not establish that Jason Moore attempted to stand up.  Officer Kaminski testified that Jason Moore placed his hands on the ground and raised himself six (6) inches off the ground but did not raise himself to the point where he was facing Officer Kaminski before Officer Kaminski unloaded a second Taser charge. Officer White testified that when he approached the scene, coming to a stop in his vehicle 20 to 50 feet away, Jason Moore was lying on the ground on his back.  Officer White testified that Jason was merely "trying to lean up off the ground" and "sort of do a sit up" immediately prior to being Tased by Officer Kaminski. Officer White testified that Jason Moore did not have his hands behind his back pushing himself up; they were "waving." See Add. Facts, ¶¶ 31-34; 206.**

36.     Officer White heard Officer Kaminski yelling loudly for the Decedent to stay on the

ground. Ex. A.

> **RESPONSE: Admit.**

37.     Officer White heard the Decedent yelling while Officer Kaminski was giving commands.

*Id*.

> **RESPONSE: Denied.  Officer White testified that Jason Moore was mumbling such that Officer White could not understand what he was saying. See White, Michael, (Pages 99:18 to 100:5), Ex. 8.**

38.     Shortly thereafter, Officer Kaminski noticed Officer White exit his vehicle. *Id.*

> **RESPONSE: Admit.**

39.     During this time, the Decedent again attempted to get off the ground, and Officer

Kaminski gave additional commands to stay on the ground. *Id.*

**RESPONSE: Denied. Officer Kaminski could not have first finished unloading a Taser charge, then given Jason Moore multiple commands to stay on the ground, then given Jason Moore adequate time to comply with the command, then conducted a submission assessment, before finally administering a subsequent Taser application, all within the time signatures recorded on the Taser download sheet such that any movement on the part of Jason Moore could be considered a refusal of a command.**
**See Add. Facts, ¶¶ 20-29; 130.**

40.     The Decedent continued to attempt to get off the ground, and a final Taser cycle was applied. *Id.*

**RESPONSE: Denied.   Taser data download, which Defendants' own expert admits is a more accurate description of the events, shows four (4) Taser cycles, not three (3).   Each Taser cycle would have incapacitated Jason Moore where he would not have been able to get off the ground. The final three (3) Taser cycles unloaded on Jason Moore were unloaded back-to-back-to-back, such that Jason Moore would not have been able to control his body well enough to attempt to get off the ground.  See Add. Facts, ¶¶ 20-29; 130.**

**Further, Plaintiffs are entitled reasonable inferences on these facts at Summary Judgment, including that Defendant Kaminski's testimony is patently subjective, speculative and self serving.  See <u>Montoya v. City of Flandreau</u>, 669 F.3d 867, 871 (8th Cir. 2012).**

41.     During the last Taser application, Officer White was able to control the Decedent and place him into handcuffs. *Id.*

**RESPONSE: Denied that Officer White or Officer Kaminski were previously unable to "control" Jason Moore, otherwise admit.**

42.     After the Decedent was handcuffed, EMS was called to respond to the location. *Id.*

**RESPONSE: Admit.**

43. The Decedent continued to attempt to move his arms while he was on the ground. Ex. I, Ferguson Use of Force Report.

   **RESPONSE: Denied.   Officer White testified that, after cuffing Jason Moore, Officer White briefly looked up to Officer Kaminski to ask if he was okay, then looked back down to Jason Moore and noticed he was not breathing. White, Michael, (Page 62:1 to 62:17), Ex. 8.   Jason Moore could not have continued to move his arms when he had stopped breathing.**

44. Shortly thereafter, Officer White attempted to speak with the Decedent but noticed the Decedent appeared to be unresponsive and was not breathing. Ex. A.

   **RESPONSE: Admit.**

45. Officer White turned the Decedent over from his stomach to his back, removed the handcuffs and began to apply chest compressions. *Id.*

   **RESPONSE: Admit.**

46. At this point, Officer White was able to see where the Taser probes had entered Mr. Moore's body. Ex. G White Dep. 56:1–56:14.

   **RESPONSE: Denied that Officer White was previously unable to see the Taser probes, otherwise admit.**

47. EMS was further advised that the Decedent had stopped breathing and to expedite their arrival. Report. Ex. B Kaminski Dep. 149:25–150:5.

   **RESPONSE: Admit.**

48.    During this time, Defendants Detective Bebe and Lieutenant Ballard arrived on scene. Ex. A.

       **RESPONSE: Admit.**


49.    Detective Bebe assisted Officer White with the chest compressions on the Decedent. *Id*.

       **RESPONSE: Admit.**


50.    During this time, the Decedent would breathe on his own, then stop breathing. *Id.*

       **RESPONSE: Plaintiffs deny that this statement is an undisputed fact. Because of the death of Jason Moore, Defendants Kaminski and White are the only witnesses to the events immediately after the Tasing of Jason Moore. Plaintiffs are entitled reasonable inferences at Summary Judgment, including that Defendant Kaminski's testimony is patently self serving. See <u>Montoya v. City of Flandreau</u>, 669 F.3d 867, 871 (8th Cir. 2012).**

       **Plaintiffs' investigation has revealed that, on every material point of Officer Kaminski's testimony where there are other sources of information as to a fact, Officer Kaminski's testimony is inaccurate and contradicted. See Add. Facts ¶¶ 15-16; 20-38; 100-101.**


51.    The Officers also checked the Decedent's pulse but received negative results. *Id.*

       **RESPONSE: Admit.**


52.    The chest compressions continued until EMS arrived and the Decedent was transported to Christian Northwest. *Id*

       **RESPONSE: Admit.**

53.     After the Decedent was transported by EMS, Officer White spoke with a witness named Alan Schilling. *Id.*

        **RESPONSE: Admit.**


54.     Mr. Schilling stated he heard the male shouting, "Glory to God," "I'm Jesus." *Id.*

        **RESPONSE: Admit.**


55.     Mr. Schilling observed the Decedent on Airport Road disrobe and become fully nude. *Id.*

        **RESPONSE: Admit.**


56.     Mr. Schilling stated he called 911. Ex. A, Police Report. *Id.*

        **RESPONSE: Admit.**


57.     A computer check of the Decedent revealed he had at least one active warrant. Ex. J, Criminal History.

        **RESPONSE: Plaintiffs object to this paragraph and move to strike. This information has nothing to do with this case. Neither Officer Kaminski nor any of the other officers had this information prior to Jason's tasing. Thus, it could have had no effect on them or any "reasonable officer" at the scene. Kaminski testified that he did not check for any warrants before he arrived on the scene. Add. Facts, ¶ 160. Defendants appear to be relying on a criminal arrest record as character evidence, in blatant contravention of F.R.E. 404(b). It is clear that Defendants have disingenuously offered this inadmissible evidence in a barefaced attempt to prejudice the Court against Jason Moore, a beloved father, son and husband who unnecessarily and tragically died. To the extent a response is required and without waiving Plaintiffs' objections, denied.**

58.     Decedent had an extensive criminal history with charges including, but not limited to, Possession of Controlled Substance, Distribution of Controlled Substance, Driving While Intoxicated, Trespassing, Stealing, Burglary in the Second Degree, and numerous traffic charges. *Id.*

> **RESPONSE: Plaintiffs object to this paragraph and move to strike. This information has nothing to do with this case. Neither Officer Kaminski nor any of the other officers had this information prior to Jason's tasing. Thus, it could have had no effect on them or any "reasonable officer" at the scene. Kaminski testified that he did not check for any warrants before he arrived on the scene. Add. Facts, ¶ 160. Defendants appear to be relying on a criminal arrest record as character evidence, in blatant contravention of F.R.E. 404(b). It is clear that Defendants have disingenuously offered this inadmissible evidence in a barefaced attempt to prejudice the Court against Jason Moore, a beloved father, son and husband who unnecessarily and tragically died. To the extent a response is required and without waiving Plaintiffs' objections, denied.**

59.     The Assistant Medical Examiner, Kamal Sabharwal, M.D., ruled the manner of death of Decedent as natural. Ex. K, 2011-5866, Exam Case, p. 12.

> **RESPONSE: Denied that Jason Moore's manner of death was natural. Philip Cuculich, M.D., a board-certified Washington University cardiac electrophysiologist, has testified that the third and fourth applications of the TASER more likely than not caused or contributed to Mr. Moore's death. Otherwise, admit. See Add. Facts, ¶ 132.**

60.     Dr. Sabharwal ruled the immediate cause of death to Agitated Delirium secondary to Psychosis. *Id.* at p. 12.

> **RESPONSE: Denied that Jason Moore's immediate cause of death was agitated delirium secondary to psychosis. Philip Cuculich, M.D., a board-certified Washington University cardiac electrophysiologist, has testified that the third and fourth applications of the TASER more likely than not caused or contributed to Mr. Moore's death. Otherwise, admit. See Add. Facts, ¶ 132.**

61. Officer Kaminski had probable cause to believe Decedent had committed the crimes of peace disturbance. Ex. L Martinelli Dep. 85:6–85:10; 64:21–65:11.

**RESPONSE: Plaintiffs object to Paragraph 61 as it presents legal conclusions related to probable cause and peace disturbance that are inappropriate as statements of uncontroverted material fact. Otherwise, admitted that Martinelli's deposition contains such testimony.**

62. The Decedent's actions, in rushing Office Kaminski with his arms in a pinwheel motion, was assaultive behavior, giving rise to probable cause to arrest Decedent for assault. Ex. L Martinelli Dep. 80:21–81:4; 88:1–88:10.

**RESPONSE: Denied in part, Officer Kaminski's original Memorandum did not mention any "pinwheel motion." Reference to the "pinwheel motion" was only added in a later report. See Add. Facts, ¶¶ 15-16. Plaintiffs further object because Paragraph 62 presents legal conclusions related to probable cause and assaultive behavior that are inappropriate as statements of uncontroverted material fact. Otherwise, admitted that Martinelli's deposition contains such testimony.**

63. Several of the eyewitnesses considered the Decedent may have been under the influence of drugs, based on his behavior and actions. Ex. C Shurn Dep. 29:3–29:16; Ex. D Schilling Dep. 32:3–32:20.

**RESPONSE: Denied that Jason Moore was under the influence of drugs. Denied that the only explanation for Jason Moore's behavior was drug intoxication. Otherwise, admit. See Add. Facts, ¶ 1.**

64. It was reasonable for Officer Kaminski to believe the Decedent was under the influence of drugs. Ex. L, Martinelli Dep. 74:17–74:24; 78:6–78:12.

**RESPONSE: Denied in part, Officer Kaminski testified that, based on his training and experience, Jason Moore may have instead been "emotionally disturbed". See Kaminski, Brian, (Page 86:1 to 86:6), Ex. 3. Plaintiffs**

**further object to Paragraph 64 as it contains a legal conclusion related to reasonableness that is inappropriate as a statement of uncontroverted material fact. Otherwise, admitted that Martinelli's deposition contains such testimony.**

65.     Officer Kaminski believed the actions of the Decedent were consistent with someone under the influence of PCP or methamphetamines or another controlled substance. Ex. B, Kaminski Dep. 90:6–90:15; 131:16–131:18.

**RESPONSE: Denied. Officer Kaminski testified that, based on his training and experience, Jason Moore may have instead been "emotionally disturbed". See Kaminski, Brian, (Page 86:1 to 86:6), Ex. 3.**

66.     The initial use of the Taser after the Decedent charged Officer Kaminski was objectively reasonable. Ex. L, Martinelli Dep. 100:5–100:13.

**RESPONSE: Plaintiffs object to Paragraph 66 as it contains a legal conclusion related to reasonableness that is inappropriate as a statement of uncontroverted material fact. Otherwise, admitted that Martinelli's deposition contains such testimony.**

67.     Detective Bebe and Lieutenant Ballard were not on the scene for any of the Tasings. Ex. H, Bebe Dep. 28:3–29:2; Ex. F, Ballard Dep. 38:7–38:1.

**RESPONSE: Admit.**

68.     Detective Bebe and Lieutenant Ballard arrived after the Decedent was already handcuffed. *Id.*

**RESPONSE: Admit.**

69. The Decedent was muscular. Ex. B Kaminski Dep. 131:23–132:1; Ex. G, White Dep. 116:8–116:13.

> **RESPONSE: Denied. Officer Kaminski described Jason Moore as a thin man. Jason Moore was less than 6 feet tall and weighed only 135 pounds. See Add. Facts, ¶ 9.**

70. Officer White observed the Decedent being Tased once as he approached the scene in his vehicle. Ex. G, White Dep. 50:3–50:9.

> **RESPONSE: Admitted.**

71. As he drew closer to the Decedent, Officer White was unable to see where the Taser probes had entered the Decedent's body and did not see the location until the Decedent had been turned over after handcuffing. Ex. G, White Dep. 55:1–56:9.

> **RESPONSE: Denied. Officer White testified that when he approached the scene, Jason Moore was lying on the ground on his back.   See Add. Facts, ¶¶ 31-34.**

72. After the Decedent tried to get back up, he observed the next and last Taser application. Ex. G, White Dep. 59:5–59:21.

> **RESPONSE: Denied. Officer White's testimony does not establish that Jason Moore attempted to stand up. Officer White testified that when he approached the scene, Jason Moore was lying on the ground on his back.  Officer White testified that Jason was merely "trying to lean up off the ground" and "sort of do a sit up" immediately prior to being Tased by Officer Kaminski. Officer White testified that Jason Moore did not have his hands behind his back pushing himself up; they were "waving."   See Add. Facts, ¶¶ 31-34.**

73. During this final application, Officer White applied handcuffs to the Decedent while under the power of the Taser. *Id.*

**RESPONSE: Admit.**

74. There is no evidence that at the time he approached the scene that Officer White discussed with Officer Kaminski what had transpired or what force had or had not been used. Ex. G, White Dep. 53:9–53:20.

    **RESPONSE: Admit.**

75. The officers called for emergency medical assistance the first time immediately after the Taser had been deployed, and again, after they noticed the Decedent was not breathing. Ex. B, Kaminski Dep. 149:15–150:12.

    **RESPONSE: Admit.**

76. The Decedent's handcuffs were removed and he was rolled over onto his back, once the Officers observed the Decedent was not breathing. Ex. G, White Dep. 67:6–67:8.

    **RESPONSE: Admit.**

77. The Officers checked the Decedent's pulse and began chest compressions, which continued until the ambulance arrived. Ex. G, White Dep. 67:6–67:19.

    **RESPONSE: Admit.**

78. Plaintiffs' purported liability expert has no criticism of the officers' resuscitation efforts or of their calling an ambulance. Ex. L, Martinelli Dep. 55:1–55:4.

**RESPONSE: Deny that Plaintiffs' liability expert is "purported." Otherwise, admit.**

79. Plaintiffs' purported medical expert has no criticism of the Officers' efforts to render medical care on the scene or call for an ambulance. Ex. N, Cuclich Dep. 34:11–35:7.

**RESPONSE: Deny that Plaintiffs' medical expert is "purported." Otherwise, admit.**

80. The City of Ferguson's customs, policies, and usages placed at issued by Plaintiffs are not unconstitutional. Ex. M, Ron Martinelli Report (Plaintiffs' purported liability expert's report, containing no opinions regarding the unconstitutionality of any City of Ferguson custom, policy, or usage); Ex. L, Ron Martinelli Dep. 19:13–21:7.

**RESPONSE: Admit that Plaintiffs' liability expert did not render opinions as to the constitutionality of the City of Ferguson's customs, policies, and usages, otherwise denied. Denied that the City of Ferguson's customs, policies and usages placed at issue by Plaintiffs do not violate the United States Constitution. On March 4, 2015, the United States Department of Justice released a report detailing its findings arising from an investigation of the Ferguson Police Department (henceforth the "Department of Justice Report"). The Department of Justice Report reflects the Department of Justice's findings regarding certain policies, patterns and practices of the Ferguson Police Department. The Department of Justice Report found that, among numerous other violations of citizens' rights:**

> **The Ferguson Police Department "Engages in a Pattern of Excessive Force in Violation of the Fourth Amendment";**
>
> **Ferguson Police Department's "Use of Electronic Control Weapons Is Unreasonable.";**
>
> **The Department of Justice found that a "dimension of FPD's pattern of unreasonable force is FPD's overreliance on force when interacting with more vulnerable populations, such as people with mental health conditions or intellectual disabilities and juvenile students."**
> **<u>See</u> Department of Justice Report, Ex. 13.**

81. The City of Ferguson, Missouri, sufficiently and adequately investigated prior complaints regarding Officer White.  Officer White. Ex. G, White Dep. 169:14–172:8 (discussing complaints, investigative process, and disciplinary actions taken).

> **RESPONSE: Denied.   Ferguson's Police Chief Jackson had the final authority on officer complaints and misconduct and cannot recall ever disciplining an officer after reviewing a use of force form.  Add. Facts 178.**

82. There has been no evidence of any other complaints against the Defendant Officers.

> **RESPONSE: Denied.  Officer White was sued in Davis v. White, USDC EDMo 4:10-CV-1429 NAB for use of excessive force against a prisoner of the FPD.**

83. The Missouri Department of Public Safety is responsible for the training of Missouri sworn police officers through the P.O.S.T. program. Ex. L, Martinelli Dep. 28:18–29:7 (explaining accreditation through P.O.S.T).

> **RESPONSE:  Denied.  The witness does not testify that P.O.S.T. is responsible for training as the citation implies.  Chief Jackson as Ferguson Police Chief was ultimately responsible for training and educating its officers on use of force with a Taser.  Add. Facts, ¶193.**

84. There is no evidence the Defendant Officers were inadequately trained. Ex. L, Martinelli Dep. 28:18–29:7 (no knowledge of any lapse in the Officers' training).

> **RESPONSE: Denied.  The United States Department of Justice made the following factual findings of a legally authorized investigation, admissible as evidence pursuant to Federal Rule of Evidence 803(8):**
> **The Ferguson Police Department "Engages in a Pattern of Excessive Force in Violation of the Fourth Amendment."**
>
> **"Many [Ferguson Police Department] officers are quick to escalate encounters with subjects they perceive to be disobeying their orders and resisting arrest."**
>
> **Many Ferguson Police Department Officers "have come to rely on ECWs, specifically Tasers, where less force - or no force at all - would do."**

The Ferguson Police Department's use of "force is routinely unreasonable and sometimes clearly punitive."

The Ferguson Police Department's "Use of Electronic Control Weapons Is Unreasonable"

The Ferguson Police Department's "pattern of excessive force includes using ECW's in a manner that is unconstitutional, abusive, and unsafe."

Ferguson Police Department "officers seem to regard ECWs as an all-purpose tool bearing no risk."

Ferguson Police Department "officers' swift, at times automatic, resort to using ECWs against individuals who typically have committed low-level crimes and who pose no immediate threat violates the Constitution."

The "[o]verwhelming majority of force - almost 90% - is used against African Americans" by the Ferguson Police Department.

Ferguson Police Department "Officers Have a Pattern of Resorting to Force Too Quickly When Interacting with Vulnerable Populations."

The Ferguson Police Department has "a tendency to use unnecessary force against vulnerable groups such as people with mental health conditions or cognitive disabilities."

A "dimension of FPD's pattern of unreasonable force is FPD's overreliance on force when interacting with more vulnerable populations, such as people with mental health conditions or intellectual disabilities and juvenile students."

Ferguson Police Department "officers do not adequately consider the mental health or cognitive disability of those they suspect of wrongdoing when deciding whether to use force."

The Ferguson Police Department has demonstrated "a pattern of insufficient sensitivity to, and training about, the limitations of those with mental health conditions or intellectual disabilities."

The Department of Justice found that the Ferguson Police "Officers view mental illness as narcotic intoxication, or worse, willful defiance. They apply excessive force to such subjects, not accounting for the possibility that the subjects may not understand their commands or be able to comply with them."
<u>See</u> Add. Facts ¶¶ 56-57; 59-60; 157-165.

Respectfully submitted,

DOWD & DOWD, P.C.

By:     /s/ William T. Dowd
     WILLIAM T. DOWD (#39648MO)
     ALEX R. LUMAGHI (#56569MO)
     Attorneys for Plaintiff
     211 North Broadway, Suite 4050
     St. Louis, Missouri   63102
     314/621-2500
     Fax, 314/621-2503
     bill@dowdlaw.net
     alex@dowdlaw.net

     MARK L. FLOYD (# 43643MO)
     THE FLOYD LAW FIRM, P.C.
     Attorneys for Plaintiff
     8151 Clayton Rd., Suite 202
     St. Louis, Missouri   63117
     314/863-4114
     Fax, 314/863-4150
     mark@thefloydlawfirm.com

     *Attorneys for Plaintiffs Tina Moore and*
     *Estate of Jason Moore*

     TODD M. JOHNSON  (48824MO)
     BATY, HOLM, NUMRICH & OTTO P.C.
     4600 Madison Avenue, Suite 210
     Kansas City, MO 64112-3012
     tjohnson@batyholm.com
     Telephone:     816-531-7200
     Telecopy:      816-531-7201

     *Attorneys For Plaintiffs*
     *Delores Moore And Renee Rodgers,*
     *As Next Friend Of A.D.R, A Minor*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the above pleading was served via the Court's electronic filing system this 1st day of June, 2016 to all counsel of record.

    /s/ William T. Dowd