# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

TINA MOORE, ET AL,

                   Plaintiffs,

v.

CITY OF FERGUSON, ET AL

                   Defendants.

Case No.:    4:14-CV-1443 SNLJ
                 4:14-CV-1447 SNLJ
                   (Consolidated)

## PLAINTIFFS' MOTIONS IN LIMINE

COME NOW Plaintiffs, by and through her undersigned counsel, and hereby move this Court to enter its Order that none of the following described facts or topics or subjects be mentioned, or inquired into, or discussed by defendants, their attorneys or witnesses, in voir dire, opening statements or any state of the trial, and not to mention that these Motions have been filed, to wit:

## Legal Standard

Under Federal Rule of Evidence 402, relevant evidence is admissible unless the United States Constitution, a federal statute, the rules of evidence or other rules prescribed by the Supreme Court provide otherwise.  Irrelevant evidence is not admissible.  Fed.R.Evid. 402.  Rule 401 establishes the familiar two-part test for relevant evidence.  Evidence is relevant if: (a) it has tendency to make a fact more or less probable that it would be without the evidence; and (b) the fact is of consequence in determining the action.

Furthermore, Rule 403 provides that even relevant evidence may be excluded if its probative value is substantially outweighed by a danger of one or more of the following: unfair

prejudice, confusing the issues, misleading the jury, undue delay, wasting time or needlessly presenting cumulative evidence.

### Evidence or References to These Specific Matters Should Be Excluded

**1. <u>There Should Be No Reference to or Mention of Parties/Pleadings/Claims That Have Been "Abandoned."</u>**

Pleadings filed before those on which a case is submitted are considered superseded. *Bank of America, N.A. v. Stevens*, 82 S.W.3d 47 (Mo. App. S.D. 2002). As such, they are merely a "scrap of paper: and should not be considered by the trier of fact." *In re Estate of Campbell*, 795 S.W.2d 257, 261 (Mo. App. E.D. 1990). Accordingly, abandoned pleadings are generally inadmissible in evidence. *Dean Machinery Co. v. Union Bank*, 106 S.W.3d 510 (Mo. App. W.D. 2003); *see also Wall v. Bascombe*, 2011 WL 29745 at *2 (W.D. Mo. Jan. 4, 2011) (granting motion in limine excluding reference to claims which were absent from amended complaint). "The mischief of bringing trial pleadings before the jury is readily apparent: if one pleading is read another could be read in explanation of it and utter confusion would result." *Littell v. Bi-State Transit Dev. Agency*, 423 S.W.2d 34 (Mo. App. 1967).

In *Fahy v. Dresser, Inc.*, 740 S.W.2d 635, 642 (Mo. banc 1987), plaintiffs brought a products liability action against a manufacturer of an asphalt roller than ran over him. At trial, the court precluded the defendant manufacturer from reading into evidence portions from plaintiff's petitions that had been superseded. Those portions defendant wanted to read contained allegations that other parties directly caused plaintiff's injuries because they manufactured and sold a defective replacement engineer for the roller. Defendant argued such allegations were admissions against interest by the plaintiff because they were admissions that some entity other than defendant was liable for his injuries. The Supreme Court held that the trial court correctly excluded evidence of the abandoned pleadings, nothing that the allegations

defendant sought to read into evidence were general allegations amounting to conclusions of law, not statements of fact, and therefore were not admissions against interest. *Id.* at 642; *see also Liberty Hills Dev., Inc. v. Stockdale*, 742 S.W.2d 209 (Mo. App. W.D. 1987) (holding that defendant's reference to dismissed or abandoned pleadings in which the plaintiff sued other parties was improper because they were irrelevant and used for the purposes of prejudicing the jury).

In the present case, moreover, the Court is not dealing with simply abandoned pleadings, but also conceivably abandoned parties as well as claims.  It is well settled that "pleas against one defendant may not be used in evidence by the plaintiff by another defendant." *Littell*, 655 S.W.2d at 809 (holding that plaintiff "had the right to try her case on the issues made against this defendant without regard for the charges previously made against two voluntarily dismissed defendants.")

This evidence is irrelevant to this matter, will confuse the issues in this matter, will mislead the jury and will result in unfair prejudice to the plaintiffs.  Fed.R.Evid. 401, 402, 403.

GRANTED _____

DENIED _____

**2.** **Any evidence, opinion or testimony, in question or declaration form, by counsel, party, or witness, on behalf of the defendants, of the negligence of Jason Moore or any person or entity not a party in the case.**

Under Missouri law, a defendant may introduce evidence that someone else was the **sole** cause of an accident. *Whisenhand v. McCord*, 996 S.W.2d 528, 531 (Mo. App. W.D. 1999). However, it is improper to allow a defendant to argue the comparative fault of non-parties. Oldaker v. Peters, 817 S.W.2d 245 (Mo. Banc 1991). Therefore, the court should preclude any evidence, opinion or testimony, in question or declaration form, by counsel, party, or witness, regarding the negligence of any person or entity not a party in the case.

The Court should also preclude the comparison of any fault on behalf of the decedent as the defendants failed to specifically allege how the decedent was comparatively at fault for the encounter in their answer and have waived such a defense.  Furthermore, because Section 1983 civil rights claims require more than mere negligence and comparative fault principles do not apply to intentional torts, courts have held comparative fault principles do not apply in Section 1983 civil rights actions.  *See Logan v. City of Pullman Police Dept.*, 2006 WL 994759 at *2 (E.D. Wash. Apr. 14, 2006); *see also Jo Ann Howard & Assoc., P.C. v. Cassity*, 146 F. Supp. 3d 1089, 1104 (E.D. Mo. 2015) (noting that the law in Missouri excludes application of comparative fault to intentional torts).

This evidence is irrelevant to this matter, will confuse the issues in this matter, will mislead the jury and will result in unfair prejudice to the plaintiffs.  Fed.R.Evid. 401, 402, 403.

GRANTED _____

DENIED _____

4

**3. When the plaintiff first consulted with counsel, or when suit was filed, or the reasons why suit has been filed.**

In *Carlyle v. Lai*, 783 S.W.2d 925 (Mo. App. 1990), the verdict for a defendant doctor was

reversed upon the sole ground that defense counsel had asked plaintiff when she retained counsel.   In doing so, the court held "accessing the legal system is normally not to be discouraged and exercising one's right to utilize the legal system within established rules and procedures should normally not be used to attempt to discredit a litigant with the jury.  The right to seek the advice of counsel is so fundamental that, absent a justifiable reason and supporting evidence, counsel risk reversal when attempting to discredit a litigant by cross-examining him about the time and circumstances of having consulted an attorney to discuss and exercise legal rights."  (783 S.W.2d at 929)*; see also Pearson v. Illinois Cent. R.R.*, 2008 WL 878202 at *1 (S.D. Ill. Mar. 28, 2008) (granting motion in limine excluding evidence of when and why plaintiff hired an attorney because evidence was irrelevant and collateral to suit).

This evidence is irrelevant to this matter, will confuse the issues in this matter, will mislead the jury and will result in unfair prejudice to the plaintiffs.  Fed.R.Evid. 401, 402, 403.

GRANTED _____

DENIED _____

**4.  That any offers of settlement or compromise have been solicited or extended by any party/prior settlements or settlement communication.**

"Offers of compromise are to be encouraged in the furtherance of peaceful settlement of cases and are therefore generally inadmissible." *Caffman v. Faulkner*, 591 S.W.2d 23 and 26 (Mo.App. 1980). In the case of *Vinyard v. Herman*, 578 S.W.2d 938 (Mo.App.1979) it was held that both the offeror and the offeree have the right to exclude evidence of offers of compromise. It was held in *Frisella v. Reserve Life Insurance Company at Dallas*, 583 S.W.2d 728, 734 (Mo.App. 1979) that "reference to compromise discussions by either party is fraught with danger and should be eschewed." In order to further the public policy favoring the settlement of disputes, it is well established that settlement offers are not admissible in a subsequent trial. *Harmon v. Hamilton*, 903 S.W.2d 610, 615 (Mo.App.1995). This is because settlement negotiations "should be encouraged and a party making an offer of settlement should not be penalized by revealing the offer to the jury if the negotiations fail to materialize." *Holtmeier v. Dayani*, 862 S.W.2d 391, 403 (Mo.App.1993). *See e.g. State ex. rel. Malan v Huesemann*, 942 S.W.2d 424, 427-8 (Mo.App. W.D.1997).  For the same rationale and again under Fed.R.Evid. 408, any evidence of other settlements with third-parties or communication regarding the same should be excluded.

This evidence is irrelevant to this matter, will confuse the issues in this matter, will mislead the jury and will result in unfair prejudice to the plaintiffs.  Fed.R.Evid. 401, 402, 403, 408; *Weems v. Tyson Foods, Inc.*, 665 F.3d 958, 967 (8th Cir. 2011).

GRANTED _____

DENIED _____

5.   **Arguing that money damages are insufficient or inappropriate.**

Plaintiffs anticipate the defendants will argue or suggest to the jury that they should not enter a judgment for plaintiffs because no amount of money will bring back Jason Moore.  An argument of this type is clearly an attempt to misstate the law.

It is improper for counsel to make an argument against the law as laid down in the Court's instructions or to urge the jury to look with suspicion or disregard the Court's instructions.  Counsel must accept the charge to the jury and is not permitted to argue against it. Such argument could lead the jury to believe that the law as declared by the Court is unjust and that the jurors possess the authority to ignore it, and is not germane to any legitimate function of an argument to the jury.  *Walsh v. Southtown Motors Co.*, 445 S.W.2d 342, 349 (Mo. 1969).  In *Walsh*, counsel made derogatory comments about the law of contributory fault. The court held that "the attack was intemperate and calculated to arouse passions and distract the minds of the jurors from the legal issues before the court." The court held that the remarks were of such a nature to cause the jury to ignore the law as declared by the court which thus frustrates the right of one party to a verdict.

This evidence is irrelevant to this matter, will confuse the issues in this matter, will mislead the jury and will result in unfair prejudice to the plaintiffs.  Fed.R.Evid. 401, 402, 403.

GRANTED _____

DENIED _____

**6.   Statements or comments implying Plaintiffs' motivation.**

Plaintiffs anticipate that defense counsel will attempt to argue or imply that plaintiffs have brought this lawsuit out of anger, revenge, or hurt. Any argument, evidence, or implication that Plaintiffs' motivation for bringing the suit is out of anger, hurt, or revenge is an attempt to discredit plaintiff for exercising rights fundamental to or granted by the legal system. Accessing the legal system is not to be discouraged and, exercising one's right to utilize the legal system within established rules and procedures should not be used to attempt to discredit a litigant with a jury. Carlyle v. Lai, 783 S.W.2d 925, 929 (Mo.App. 1990).

This evidence is irrelevant to this matter, will confuse the issues in this matter, will mislead the jury and will result in unfair prejudice to the plaintiffs.  Fed.R.Evid. 401, 402, 403.

GRANTED _____

DENIED _____

**7.   Lottery References.**

Any argument that the plaintiffs' lawsuit is akin to "winning the lottery" or playing the "litigation lottery" or other type of inflammatory and prejudicial arguments designed to unfairly comment on a plaintiff's statutory right to seek compensation for damages.

This evidence is irrelevant to this matter, will confuse the issues in this matter, will mislead the jury and will result in unfair prejudice to the plaintiffs.  Fed.R.Evid. 401, 402, 403.

GRANTED _____

DENIED _____

8. **Statements or argument suggesting a criminal standard.**

Plaintiffs believe that the defense counsel will attempt to argue or imply that a verdict against defendants is similar to a criminal conviction. Specifically, any statement or argument that the jury should find for the defendants so that he/she/they can be "set free" or "setting him free" or that the plaintiffs are trying to "convict" defendants of causing damages. Such argument is for the sole purpose of eliciting sympathy for the defendants and is improper.  This is also why the Eighth Circuit found it necessary in its burden of proof instruction to explicitly instruct the jury that the burden of proof applicable in criminal cases does not apply in civil actions. *See* Eighth Circuit Model Jury Instruction 3.4.

In *Williams v. Bailey*, 759 S.W.2d 394 (Mo.App. 1998), the defense counsel made the following statement in closing argument: "This good man is old. He may not live more than another 10 or 15 years. He may not live past tomorrow night. But, folks, if your verdict says 'We don't care what that man faced out there on that road. We find that he is guilty of the wrongful death of this little child,' does a jury verdict not live with him." Defense counsel also made comments that the plaintiffs were trying to "convict" the defendant. He also argued that a jury verdict against the defendant would make the tragedy of the wrongful death worse. The Court held that the defense argument was for the purpose of eliciting sympathy, and thus insuring the prejudicial effect of the evidence. *Id.* at 397-398.

This evidence is irrelevant to this matter, will confuse the issues in this matter, will mislead the jury and will result in unfair prejudice to the plaintiffs.  Fed.R.Evid. 401, 402, 403.

GRANTED _____

DENIED _____

**9.  Any comment or questioning of witness as to whether another witness is credible.**

Plaintiffs anticipates that defendants will attempt to bolster witness credibility by asking about the credibility of other witnesses. It invades the province of the jury for a witness to vouch for the credibility of another witness. A witness cannot comment on the veracity of another witness.  *State v. Link*, 25 S.W.3d 136, 143 (Mo. Banc 200), cert. denied, 531 U.S. 1040, 121 S.Ct. 634, 148 L.Ed.2d 542 (2000); *see also United States v. Scop*, 846 F.2d 135, 142 (2d Cir. 1988) ("The credibility of witnesses is exclusively for the determination by the jury and witnesses may not opine as to the credibility of the testimony of other witnesses at trial.")

This evidence is irrelevant to this matter, will confuse the issues in this matter, will mislead the jury and will result in unfair prejudice to the plaintiffs.  Fed.R.Evid. 401, 402, 403.

GRANTED _____

DENIED _____

**10.  <u>Any argument or evidence that non-economic damages should be reduced to present value, or evidence or argument as to the return upon any certain amount of money, or similar annuity argument.</u>**

Such argument was specifically held to be improper in the case of expert testimony in *Schiles v. Shaefer*, 710 S.W.2d 254 (Mo.App.  1986), overruled on other grounds.   The admission of expert testimony as to the rate of return on an invested lump sum, or an annuity, was ruled improper in *Adams v. Children's Mercy Hospital*, 848 S.W.2d 535 (Mo.App. 1993). While evidence that relates to specific economic needs of plaintiff and the present value of monies required to meet those needs is relevant, the return on some amount of money unrelated to those needs has never been allowed in Missouri courts.  Arguments concerning the future disposition of any jury award in a negligence action are improper. *Dunn v. St. Louis-San Francisco Railway Co.* (621 S.W.2d 245, 254 (Mo. 1981).

This evidence is irrelevant to this matter, will confuse the issues in this matter, will mislead the jury and will result in unfair prejudice to the plaintiffs.  Fed.R.Evid. 401, 402, 403.

GRANTED _____

DENIED _____

11

**11.  That any judgement rendered in this case is not subject to income taxes.**

"Arguments concerning the future disposition of any jury award in a negligence action are improper." *Dunn v. St. Louis-San Francisco Railway Co.* (621 S.W.2d 245 Mo en banc. 1981). Similarly, it was held in Dempsey vs. Thompson, 251 S.W. 2d 42 (Mo.1952) that it was improper to introduce evidence of any income tax liability which would be owed upon plaintiff's future lost earnings which were claimed as damages. In *Senter vs. Ferguson*, 486 S.W.2d 644 (Mo.App. 1972) the court held that the adoption of M.A.I. precludes any instructions advising the jury that the award was not taxable.  The instance case would be even more confusing to the jury in that part of the award would be taxable, part not taxable, and investment earnings from the award would all be taxable.  As discussed in the *Dunn* case, where would the allowance of such evidence end.  Evidence of the attorney's fees and expenses incurred by plaintiffs in pursuing the instant action claim are just as relevant to the issue of what extent a verdict will compensate them, and is of a much more certain amount that income taxes.  The proverbial Pandora's Box would indeed be opened if the courts allowed such evidence.  These principles were reaffirmed in *Firestone v. Crown Center Redevelopment Corp.*, 693 S.W.2d 99 (Mo. 1985)., and *Denton vs. Hyatt Hotels Corp.*, 693 S.W.2d 83 (Mo. 1985).

This evidence is irrelevant to this matter, will confuse the issues in this matter, will mislead the jury and will result in unfair prejudice to the plaintiffs.  Fed.R.Evid. 401, 402, 403.

GRANTED _____

DENIED _____

**12.  Any suggestion that any judgement rendered in this case might adversely affect the members of the jury, or any other reference appealing to the self-interest of the jury.**

Statements which appeal to the self-interest of the jury "impair gravely the calm and dispassionate consideration of the case by the jury" and are therefore improper.  *See Allstate Ins. Co. v. James*, 845 F.2d 315, 318 (11th Cir. 1988).  In *Jones v Kansas City, Missouri*, 76 S.W.2d 340 (Mo. 1934), defense counsel argued to the jury that "You must be careful about setting the precedent in these cases." After a verdict for defendant the trial court granted plaintiff a new trial on the basis of improper argument. Against the challenge that the granting of the new trial was error, the Superior Court replied:

> [W]e are of the opinion that such conclusion was correct, in view of the background of the remarks, which background had made the jurors – one or more of them taxpayers – tax conscious. The argument was designed, in the light of such consciousness, to operate upon the self-interest of such taxpayers….And, finally, the climax was an inexcusable and seductive appeal to the jury to safeguard the financial interest of the city and necessarily, through indemnity, of the jurors themselves.

Id. at 342. See e.g. *State ex rel. Missouri State Highway Commission v. Hensel Phelps Construction Co.*, 634 S.W.2d 168 (Mo banc. 1982).

An appeal to the self -interest of the jury upon the basis that a verdict might increase insurance premiums also constitutes reversible error.  *Williams v. North River Insurance Co.*, 579 S.W.2d 410 (Mo.App. 1979).

This evidence is irrelevant to this matter, will confuse the issues in this matter, will mislead the jury and will result in unfair prejudice to the plaintiffs.  Fed.R.Evid. 401, 402, 403.

GRANTED _____

DENIED _____

**13.  Any reference to the type or practice which plaintiffs' counsel has, or comments which are disparaging of counsel, or which impugns plaintiffs or plaintiffs' counsel for seeking redress in the courts, either specifically or as a class.**

It appears to have become a popular defense to blame plaintiff's and their counsel for the woes of society, and to cast aspersions upon anyone who accesses the courts. This is not proper. Derogatory remarks directed toward opposing counsel have no proper place in argument. *Cook v. Cox*, 478 S.W.2d 678, 682 (Mo. 1972).

In *Williams v. North River Insurance Co.*, 579 S.W.2d 410 (Mo.App.1979). defense counsel stated that lawyers work on a contingent fee basis, and argued that once a lawyer was hired, "how you do turn it off?" *Id*. at 413. The court ruled that such an argument improperly impugned the motive of the counsel and it was beyond the scope of the evidence. *Id*. at 413. The court also noted that arguments implying that a judgement would have an adverse effect upon the defendant's industry and the people and businesses it served were also prejudicially improper.

In *Yingling v. Hartwig*, 925 S.W.2d 952 (Mo.App. 1996), defense counsel argued to the jury that what had been presented was an effort by two lawyers to develop a lawsuit, that the case was contrived, and was just an opportunity to make some money. *Id*. at 958. The court held that these statements were highly prejudicial and would not be tolerated. *Id*.

The Yingling Court noted that trials should be conducted so as to bring about a verdict based solely on the law and facts, not upon bias or prejudice.  "The latter results in a miscarriage of justice, which is not always cured by the ruling of the court withdrawing them from consideration or even by rebuking counsel." *Id*. at 958.  It is no more fair or proper for defendant to create prejudice against the plaintiffs than it is for plaintiffs to argue that the defendant has insurance. The law condones neither position.

This evidence is irrelevant to this matter, will confuse the issues in this matter, will mislead the jury and will result in unfair prejudice to the plaintiffs.  Fed.R.Evid. 401, 402, 403.

GRANTED _____

DENIED _____


14.     **Jason Moore's prior criminal charges or convictions**

Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.  Fed.R.Evid. 404(b)(1).  If a prior conviction is not offered as improper character evidence, it is admissible if it satisfies an additional four-factor admissibility test.  The evidence must (1) be relevant to a material issue raised at trial, (2) be similar in kind and close in time to the crime charged, (3) be supported by sufficient evidence to support a finding by a jury that the defendant committed the other act, and (4) not have a prejudicial value that substantially outweighs its probative value.  Further, specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime…may not be proved by extrinsic evidence.  Fed.R.Evid. 608(b).

The defendants have identified as trial exhibits (and produced in discovery as FERG01894-01897; FERG01898 and FERG01899-01931) certain charges and/or convictions of the decedent Jason Moore (in addition to the irrelevant offenses cited in the subject police report that should be excluded as well).  The probative value of the nature of these county and municipal charges and/or violations are substantially outweighed by the danger of unfair prejudice to the plaintiffs.  Moreover, since this matter involves a death, the decedent is not even

present to be able to have his credibility tested at trial, meaning there is not probative value under Rule 609(a).

Admitting or mentioning evidence of the above criminal conduct would be unfairly prejudicial to the plaintiffs.  The jury, in their task of evaluating the reasonableness of defendant Kaminski's conduct, will consider whether the decedent posed an immediate threat to the safety to Kaminski or others while naked, unarmed and on foot, because the reasonableness inquiry in the context of a Fourth Amendment excessive force violation is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them.  *Graham v. Connor*, 486 U.S. 386, 396 (1989).  There will be no evidence adduced that the decedent was intoxicated by way of alcohol or illicit drugs nor that the officers who engaged the decedent knew of the criminal history prior to the alleged use of force.

Defendants assert that this highly prejudicial evidence regarding decedent's prior conviction and an outstanding warrant, should be admitted as going to his "motive" in resisting the officer. See Defendants Motion in Limine No. 7, Doc. 118, p. 4.  Courts have directly rejected this reasoning in the context of civil rights excessive force claims, which are measured purely based on the objective circumstances presented to the Officer. *See Greenfield v. City of N.Y.*, No. 99 CIV. 2330 (AJP), 2000 WL 124992, at *12 (S.D.N.Y. Feb. 3, 2000) ("No showing of bad motivation on Greenfield's part would give Officer Mundo license to arrest him without probable cause, **nor is Greenfield's motive relevant to whether the force Officer Molina used was objectively unreasonable under the circumstances**.")   Furthermore, Defendants' argument is nothing but a pretence for Defendants' desire to get harmful character evidence before the jury.  The decedent was naked, unarmed and making nonsensical, religious statements immediately prior to his death, and clearly having a mental crisis of some type, a fact not denied

by Officer Kaminski in his deposition testimony.  There is no evidence that the decedent attempted to flee Officer Kaminski. There is not a single piece of evidence in this case supporting the claim that the decedent had a "motive" to resist due to a prior conviction or an outstanding warrant.

Defendants also contend this information is relevant to rebut Plaintiffs' testimony regarding their relationship with Jason Moore.  Namely, Defendants seek to suggest that, because decedent had a criminal conviction, this would prevent him from having a relationship with his family members or from them mourning his death.  There is absolutely no evidence in the case to support this contention, and as such the proffered character evidence is completely irrelevant.

Significantly, the officers who engaged the decedent knew nothing of the criminal history, therefore, it is completely irrelevant to the facts and circumstances confronting him.  The risk of unfair prejudice stemming from the charges and/or convictions (whether through St. Louis County or its various municipalities) substantially outweighs any probative value it could offer to any issue in the case, it is irrelevant to any witness' credibility, and Jason Moore cannot even testify to counter these collateral attacks due to his death.  This evidence is irrelevant to this matter, will confuse the issues, will mislead the jury and will result in unfair prejudice to the plaintiffs.  Fed.R.Evid. 401, 402, 403, 404.


GRANTED _____

DENIED _____

15.     **A.D.R.'s prior juvenile criminal history**

For the same reasons as above, the Court should exclude any evidence relating to any prior juvenile criminal history of plaintiff A.D.R., who is being represented by his grandmother Renee Rodgers as next friend.  A.D.R.'s deposition was conducted at a facility operated by the Missouri Division of Youth Services.  Any reference to this, or A.D.R.'s prior juvenile criminal history, is irrelevant to this matter, will confuse the issues in this matter, will mislead the jury and will result in unfair prejudice to the plaintiffs.  Fed.R.Evid. 401, 402, 403, 404.

GRANTED _____

DENIED _____


16.     **Jason Moore's Prior Cardiac and other Unrelated Medical History.**

During the deposition of plaintiffs' medical causation expert, defense counsel identified a number of medical records of the decedent (Exhibits B through E of deposition of Dr. Cuculich; Moore Med 0017, 0020, 0023, 0037 and 0041).  Exhibit B was a January 1, 2001 ambulance report indicating chest pain and unnamed medication.  Exhibit C was a January 2, 2001 ambulance report indicating the decedent had chest pain and was on "heart medicine".  Exhibit D was a January 2, 2001 emergency room record indicating the decedent had a history of heart disease.  Exhibit E was a January 2, 2001 emergency room record indicating the decedent had chest pain with a "heart problem" of an unknown name and cannot remember his heart medication.  There are no opinions that the cause of the decedent's death was caused or contributed to have been caused by a pre-existing or prior heart or cardiac condition.  Defendants' medical causation expert (who is not a cardiologist) did not disclose these records as

the basis of his opinions, did not mention them in his report or in his deposition.  Plaintiffs'
medical causation expert (who is a cardiologist and a cardiac electrophysiologist) has testified
that the entries in these records have nothing to do with the actual cause of Jason Moore's
cardiac arrest and death.

Any reference to these records which were presumably created ten years before the death
of Jason Moore and any prior medical heart or cardiac history is without foundation, irrelevant to
this matter, will confuse the issues in this matter, will mislead the jury and will result in unfair
prejudice to the plaintiffs.  Fed.R.Evid. 401, 402, 403.

GRANTED _____

DENIED _____

### 17.    Lt. Ballard's Remarks to the St. Louis County Medical Examiner.

The defendants may seek to introduce all or part of the Office of the Medical Examiner's
report into the death of Jason Moore.  Included in this report are remarks from Lt. Ballard with
the Ferguson Police Department indicating the decedent "has a lengthy history of drugs and is on
Probation/Parole for 'Dangerous Drugs'".  Neither the Office of the Medical Examiner or other
competent witnesses have relied on this misleading and prejudicial comment made after Jason
Moore's death to link the death to the encounter with law enforcement.  The comments and
notations are irrelevant to this matter, will confuse the issues in this matter, will mislead the jury
and will result in unfair prejudice to the plaintiffs.  Fed.R.Evid. 401, 402, 403.

GRANTED _____

DENIED _____

18.   **Undue commentary on the decedent's body art/tattoos.**

Depicted on the various autopsy photos are various body art and tattoos on the decedent's body.  While plaintiffs acknowledge these tattoos cannot be completely ignored by the trier of fact, any evidence of the tattoos or, at a minimum, undue commentary or inquiry into the tattoos is an impermissible and collateral attack on the decedent's character.  This type of commentary or inquiry is irrelevant to this matter, will confuse the issues in this matter, will mislead the jury and will result in unfair prejudice to the plaintiffs.  Fed.R.Evid. 401, 402, 403.

GRANTED _____

DENIED _____


19.   **Cumulative medical witnesses.**

Fed.R.Evid. 702(a) enables litigants to present testimony of qualified experts if their "scientific, technical or otherwise specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue."  Relevant evidence may be excluded by the court "if its probative value is substantially outweighed by a danger of..needlessly presenting cumulative evidence."  Fed.R.Evid. 403.  District courts have wide discretion in managing the quantities of evidence admitted and are permitted to limit the number of witnesses who testify at trial.  *Bowman v. Corrs. Corp. of America*, 350 F.3d 537, 547 (6th Cir. 2003).  Under Fed.R.Evid. 403, a district court is free to exclude any expert testimony which is determined to be cumulative or redundant.  *Id.*  Rulings on whether expert testimony is cumulative or redundant are encouraged before trial, as decision made during trial can disrupt a party's strategy.  *Id.*

In their pretrial witness list, defendants have identified their retained expert witness on causation, Dr. Michael Graham, but have also identified Dr. Kamal Sabharwal and Dr.

Christopher Long from the St. Louis County Medical Examiner's Office.  In the event Dr. Graham is able to give opinions as to general causation or specific causation, permitting defendants to offer anticipated redundant testimony from Drs. Sabharwal or Long should be excluded.

GRANTED _____

DENIED _____


20.     **Mr. Ijames' legal conclusions and other inadmissible testimony.**

Rule 704(a) permits an expert to testify to an ultimate issue in a case.  Applying these concepts to Section 1983 cases governed by the Fourth Amendment reasonableness standard, the Eighth Circuit, despite Rule 704, has limited the ability of experts to offer opinions on the ultimate issue.  An expert's opinion concerning the reasonableness of the officer's conduct in light of Fourth Amendment standards is a legal conclusion on the ultimate issue of law, not a fact-based opinion that will assist the jury.  *See Schmidt v. City of Bella Villa*, 557 F.3d 564, 570 (8th Cir. 2009) (finding opinions regarding the overall reasonableness of evidence collection and strip search procedures to be "impermissible legal conclusions" not "fact-based opinions."

The Eighth Circuit has likewise concluded that the ultimate question in excessive force cases is one of law:  Once the predicate facts are established, the reasonableness of the official's conduct under the circumstances is a question of law.  *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007).  Therefore, an expert's opinion of an officer's conduct under the Fourth Amendment would be an impermissible legal conclusion, not a fact-based opinion.  Nevertheless, courts have found that a police procedure expert's testimony may be proper on issues other than the

"reasonableness" of an officer's conduct under the Fourth Amendment. *Wilson v. City of Des Moines*, 293 F.3d 447, 453-54 (8th Cir. 2002).

If Mr. Ijames, the defendants' expert witness on police practices, is permitted to testify, he should not be entitled to testify that (1) defendant Kaminski's decision to interact with the decedent Jason Moore immediately upon locating him, and the verbal manner in which he interacted, was *reasonable and appropriate*; (Opinion 1 on p. 2 of his report; p. 5 of his report) (2) defendant Kaminski's decision to use TASER force against the decedent Jason Moore was *reasonable and justified*; (Opinion 2 on p. (3) the manner of TASER force used against the decedent Jason Moore by defendant Kaminski was *reasonable and not excessive*; (4) the use of force by any involved officers of defendant Ferguson against the decedent Jason Moore *did not constitute an unlawful assault and battery*; (5) that *probable cause existed* for defendant Kaminski to arrest the decedent Jason Moore for assault on a police officer or that the decedent was committing an *assault* or engaging in assaultive conduct (pp. 6, 8, 10, 11 of his report); (6) the *preponderance of information* supports Officer Kaminski's reasonable belief that the decedent Jason Moore was in *immediate danger* based on his behavior and proximity to the adjacent roadway; (7) that police officers, including the defendants, were faced with *tense, uncertain and rapidly evolving situations (a phrase directly from Graham v. Connor)* (pp. 5, 11 of his report) and/or describing the event as "dynamic" (p. 11); (8) the *totality of [the circumstances] would cause a reasonable and prudent police officer* to believe the decedent Jason Moore was attempting to cause Kaminski physical injury and place him in apprehension of injury (p. 6 of his report); and (9) police officers in Missouri are *justified* in the use of such physical force as he *reasonably* believes is immediately necessary to effect an arrest and use physical force to the extent he *reasonably* believes necessary to defend himself from what he

*reasonably* believes to be the use or *imminent* use of unlawful force by another person (citing

565.082, 563.046 and 536.031 RSMo) (pp. 6-7 of his report).  *See Estes v. Moore*, 993 F.2d 161,

163 (8th Cir. 1993) (holding trial court properly excluded expert opinion testimony as to whether

probable cause for the arrest existed).  Further, Mr. Ijames should not be allowed to define what

constitutes reasonable or excessive force at trial, as he may not instruct the jury on the law.  *See*

*United States v. Wells*, 63 F.3d 745, 753 (8th Cir. 1995) *rev'd on other grounds* 519 U.S. 482

(1997); *Shannon v. Koehler*, 2011 U.S. Dist. LEXIS 157049 (N.D. Iowa Sept. 16, 2011) (citing

cases).

Mr. Ijames should not be permitted to testify that defendant Kaminski or other Ferguson

officers' conduct was in accordance with Ferguson's standard operating procedures or agency

policy (pp. 7, 8), permitting an inference to be drawn that the conduct is constitutional since it is

in line with such procedures.  Violations of internal policies are irrelevant to whether a

constitutional violation occurred.  *Blair v. Anderson*, 2011 U.S. Dist. LEXIS 22165 (D. Neb.

Mar. 4, 2011).

Finally, Mr. Ijames is not permitted to opine on defendant Kaminski or other officers'

states of mind or attempt to bolster or discredit the credibility of the officers or other witnesses.

While a witness may testify as to his own state of mind, he is not competent to testify as to the

state of mind of others.  *Scherrer v. City of Bella Villa*, 2009 U.S. Dist. LEXIS 18129 at *3 (E.D.

Mo. Mar. 10, 2009).  Mr. Ijames' report is rife with comments about defendant Kaminski's state

of mind, including (1) that defendant Kaminski's decision to immediately interact with the

decedent Jason Moore was geared toward protecting Mr. Moore (p. 5), (2) that the circumstances

of Jason Moore advancing aggressively on a uniformed police officer, swinging his fists in a

pinwheel motion and ignoring orders to stop and get on the ground or you will be TASED would

cause a reasonable and prudent police officer to believe this was an attempt to cause him physical injury and place him in apprehension of being seriously injured (p. 6), (3) that defendant Kaminski's attempts at physical and verbal de-escalation were ineffective and ultimately resulted in Kaminski deploying the TASER in self-defense to stop Mr. Moore's advance and take him into custody (pp. 6-7) (4) that the chest contact point in this case *was not intentional,* but the *accidental and unintended* consequence of a *reasonable and appropriate* use of the TASER (p. 9) (5) that is appears clear that Kaminski believed he pressed and then immediately released the trigger, resulting in a single five second cycle (pp. 10-11) (6) that it "is important to note that errors such (as Kaminski "forgetting" how many times he pulled the TASER trigger) and how he held it are *not reflective of dishonesty* (p. 11) (7) that Kaminski *had a lack of conscious or intentional thought* when he was deploying the TASER (p. 11) (8) that Jason Moore was ignoring Kaminski's commands after being Tased (p. 11) (9) that *it was expected* that Jason Moore would continue his assaultive behavior if he refused to follow commands and stand back up (p. 11) and (10) that it *was more difficult and potentially dangerous* for Kaminski to place Moore in handcuffs after using the TASER (p. 11).  *See Sanders v. Studdard*, 2014 U.S. Dist. LEXIS 98817 at *18-19 (W.D. Mo. Feb. 12, 2014) (police practices expert cannot opine to the police officer's credibility and state of mind).

GRANTED _____

DENIED _____

### 21.     Dr. Graham speculating the decedent "probably" had enlarged heart muscle.

In his report and in his deposition, defendants' retained medical causation expert Michael Graham offered evidence that the decedent "probably" had a hypertrophic heart and that this

hypertrophy (linked with psychosis) was what led to Jason Moore's death.  Dr. Graham was even

so cavalier as to admit that he did not have even have microscopic slides of Moore's heart tissue

and would like to review them in order to assess the appearance of his heart muscle.  The

pathologist who performed the autopsy and reviewed the slides did not make a finding of

hypertrophic heart.  This type of testimony is misleading to the jury and will result in unfair

prejudice to the plaintiffs.

Further, Dr. Graham, as a contract employee of the St. Louis County Medical Examiners'

Office, has had access to these slides since the time he was retained by defense counsel.  He has

not produced any supplemental opinions on the issue.  Any testimony from Dr. Graham that the

decedent probably had a hypertrophic heart and that this enlarged heart muscle contributed to his

death should be excluded.

GRANTED _____

DENIED _____

### 22.    Hearsay testimony from witness Fatima Shurn.

Witness Fatima Shum testified that her daughters left their residence and walked near

where the encounter occurred between defendant Kaminski and the decedent.  When Shurn's

daughters arrived at the scene, Shurn testified unknown persons also at the scene told Shurn's

daughters that the decedent was Tased, got back up and then she believed the decedent was

Tased again.  This testimony is hearsay and not in exception to hearsay and should be excluded

at trial.

GRANTED _____

DENIED _____

23.     **Social Security death benefits.**

ADR's grandmother and next friend, Renee Rodgers, testified at her deposition that ADR receives monthly death benefits of $150 related to his father's death.  This type of collateral source evidence is irrelevant to this matter, will confuse the issues in this matter, will mislead the jury and will result in unfair prejudice to the plaintiffs.  Fed.R.Evid. 401, 402, 403.

GRANTED _____

DENIED _____

24.     **Post-incident communication between Chief Jackson and the decedent's family members.**

Defendant Jackson testified, at some point after the encounter between defendant Kaminski and the decedent, the decedent's wife and mother met with them in the lobby of the Ferguson Police Department station.  During this meeting, defendant Jackson testified these two family members hurled quite a few insults at him and called Jackson a racist and an atheist.  Any reference to this meeting or these purported comments are irrelevant to this matter, will confuse the issues in this matter, will mislead the jury and will result in unfair prejudice to the plaintiffs. Fed.R.Evid. 401, 402, 403.

GRANTED _____

DENIED _____

**25.    Evidence that the decedent had taken bath salts or a drug that was not reflected on the post-incident drug screen.**

At various points in this litigation, the topic of drugs (and specifically bath salts) has arisen.  This issue of bath salts appeared in the deposition (not the report) of the defendants' retained expert witness, Michael Graham.  Graham testified that he has seen some cases of agitated delirium in individuals related to the ingestion of bath salts.  Graham attempted to bolster this opinion by stating that routine toxicology screenings do not pick up bath salts and so he could not rule out that Mr. Moore died from agitated delirum secondary to ingesting drugs or bath salts.  Despite offering these unsubstantiated opinions, Dr. Graham admitted "I'm not saying that he is under the influence of something."  (p. 125:11-126:10) In other words, Dr. Graham cannot offer an opinion within a reasonable degree of medical certainty that it caused or contributed to cause Moore's death.  Any evidence that the decedent Jason Moore had ingested bath salts are some other drug at or around the time of the incident is speculative and irrelevant to this matter, will confuse the issues in this matter, will mislead the jury and will result in unfair prejudice to the plaintiffs.  Fed.R.Evid. 401, 402, 403.

GRANTED _____

DENIED _____

27

**26.     Post-incident romantic relationships of Tina Moore.**

Although the plaintiffs are unaware of any such relationship after the loss of her spouse, any reference to romantic relationships of Tina Moore are irrelevant to this matter, will confuse the issues in this matter, will mislead the jury and will result in unfair prejudice to the plaintiffs. Fed.R.Evid. 401, 402, 403.

GRANTED _____

DENIED _____


**27.     Statements of the plaintiffs not produced in discovery.**

One of the purposes of the discovery rules in this Court is to eliminate the element of surprise at trial.  When evidence has not been disclosed in response to appropriate discovery, the Court is vested with broad discretion as to its course of action, including rejection of the evidence or the imposition of other appropriate sanctions.

After being served with a valid discovery request and responding to that request during discovery, defendants should not now be permitted to offer any statements of the plaintiffs that were not produced in discovery, including photographs, videotapes, statements, records or other documents due to the prejudice that would ensue to plaintiffs.

GRANTED _____

DENIED _____

28

Respectfully submitted,

DOWD & DOWD, P.C.


BY:     /s/ William T. Dowd_____
        WILLIAM T. DOWD (#39648MO)
        ALEX R. LUMAGHI (#56569MO)
        KEVIN LANE (#66027MO)
        211 North Broadway, Suite 40650
        St. Louis, Missouri 63102
        314/621-2500
        Fax, 314/621-2503
        bill@dowdlaw.net


        and
        /s/Mark L. Floyd_____
        MARK L FLOYD
        THE FLOYD LAW FIRM, P.C.
        8151 Clayton Rd., Suite 202
        St. Louis, Missouri 63117
        314/863-4114
        Fax, 314/863-4150
        mark@thefloydlawfirm.com
        *Attorneys for Plaintiffs Tina Moore and*
        *Estate of Jason Moore*


        /s/Todd M. Johnson_____
        TODD M. JOHNSON (48824MO)
        Votava Nantz & Johnson, LLC
        9237 Ward Parkway, Suite 240
        Kansas City, MO 64114
        816/895-8800
        Fax, 816/895/8801
        tjohnson@vnjlaw.com
        *Attorney for Plaintiffs*
        *Delores Moore and Renee Rogers,*
        *As Next Friend of A.D.R., a Minor*

29

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a copy of the above pleading was served via the Court's electronic filing system this 21st day of October, 2016 to all counsel of record.

/s/William T. Dowd_____