**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | | |
|---|---|---|---|
| TINA MOORE, Individually and as Personal Representative of the ESTATE OF JASON MOORE, DELORES MOORE, and RENEE RODGERS, as Next Friend for A.D.R., a Minor, | ) ) ) ) ) ) | | |
| Plaintiffs, | ) ) | | |
| vs. | ) ) ) | Case Nos. | 4:14-CV1443 SNLJ 4:14-CV1447 SNLJ (Consolidated) |
| BRIAN KAMINSKI, et al, | ) ) | | |
| Defendants. | ) | | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION**
**TO DEFENDANTS' RENEWED MOTION FOR JUDGMENT**
**AS A MATTER OF LAW**

**I.   LEGAL STANDARD.**

In reviewing a renewed motion for judgment as a matter of law, "the Court must view all of the facts and reasonable inferences derived from those facts in the light most favorable to Plaintiffs, and then determine whether there is sufficient evidence to support the jury's verdict in Plaintiffs' favor." *Henderson v. Globallab Sols., Inc.*, 310 F.R.D. 400, 402–03 (W.D. Ark. 2015). *See also White v. Pence*, 961 F.2d 776, 779 (8th Cir. 1992) (motion for j.n.o.v. is a legal question, whether there is sufficient evidence to support a jury verdict, and court must analyze evidence in the light most favorable to prevailing party and must not weigh or evaluate evidence or consider questions of credibility).  In performing this analysis, the Court must "assume that the jury resolved all conflicts of evidence in favor of the nonmoving party, assume as true all facts which the prevailing party's evidence tended to prove ... and deny the motion, if in light of the foregoing, reasonable jurors could differ as to the conclusion that could be drawn from the

evidence." *Walsh v. Nat'l Computer Sys., Inc.*, 332 F.3d 1150, 1158 (8th Cir.2003).  "A jury verdict will not be set aside unless there is a complete absence of probative facts to support the verdict." *Henderson,* 310 F.R.D. at 403.

## II.    EXCESSIVE FORCE CLAIM AGAINST DEFENDANT KAMINSKI.

The Fourth Amendment right to be free from unreasonable seizure protects against the use of excessive force in the apprehension or detention of a person. *Ward v. Olson*, 939 F. Supp. 2d 956, 961 (D. Minn. 2013).  To establish a constitutional violation under the Fourth Amendment, the question is whether the amount of force used was objectively reasonable under the particular circumstances. *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009). "The relevant, dispositive inquiry is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. at 499.  The test is an objective one, and an officer's good intentions will not make an objectively unreasonable use of force constitutional. *See Graham v. Connor*, 490 U.S. 386, 397, 109 S. Ct. 1865, 1872 (U.S. 1989).

Defendants continue to make the same arguments on which their prior Motion for Summary Judgment was based,[1] asserting that no evidence exists to support a finding of excessive force, that Defendant Kaminski's version of events is "undisputed", and that Kaminski is entitled to qualified immunity as a matter of law.  While Defendants make repeated claims regarding purportedly "undisputed" evidence, the material facts were in fact highly disputed at trial.  Defendants' motion simply ignores the mountain of contradictory evidence offered at trial.

---

[1] Defendants' Renewed Motion incorporates "the legal citations, statement of uncontroverted legal facts and arguments in their Memorandum and Reply in Support of their Motion for Summary Judgment" in support. Doc. 188 at 4.  Therefore Plaintiffs similarly incorporate their Memorandum in Opposition to Defendants' Motion for Summary Judgment, Statement of Additional Facts and attached exhibits, and Response to Defendants' Statement of Facts in opposition to Defendants' current motion. See Docs. 75, 76, and 77.  Because Defendants raise arguments regarding the sufficiency of the evidence that are also raised in Defendants' Motion for New Trial, Plaintiffs' also incorporate their Memorandum in Opposition to that motion, filed contemporaneously herewith.

Defendant Kaminski's version of events is simply not undisputed.  A statement taken by EMS From Defendant Kaminski at the scene, likely the first recorded statement we have from Kaminski, contained no reference to Jason Moore "charging" Kaminski.  Instead, Kaminski stated: "Advised by police officer that **patient was running around naked in the parking lot when police officer tased patient**. Patient then went unresponsive." See Plaintiffs' Trial Ex. 55; Tran., Vol. III, p. 43.  The reasonable inference from this evidence is that Moore "charging" Kaminski was a later invention to justify a lethal use of force.  Furthermore, Defendants' claim that Mr. Moore presented an imminent threat to his own safety, due to traffic on a roadway next to the parking lot where Mr. Moore was killed, was significantly undercut by testimony from Officer White that traffic was very, very light that morning. Tran., Vol. 74.

One of the primary pieces of evidence contradicting Kaminski's version of events is the Taser download.  In an attempt to evade this evidence, Defendants now remarkably contend that this evidence should be ignored because it "does not contradict the observed behavior of Decedent between each Tasing."  This is an attempt to side-step the fact that the download paints an entirely different picture of the encounter than the one offered by Kaminski.  Kaminski himself testified that the Taser download was inconsistent with his original position that he only tased Jason Moore three times.  It is also clearly inconsistent with Kaminski's position that he had time between each tasing to give Moore verbal commands and evaluate whether Moore was complying with those commands.  The jury was played Kaminski's deposition testimony at trial where he **openly admitted that his testimony was inconsistent with the Taser download** on these issues. See Exhibit 1, attached hereto, at lines 137:6-11.

Furthermore, while the Taser download contradicts Defendant Kaminski's version of events in its entirety, there is also Officer White's testimony, which completely contradicts

Kaminski's description of the "observed behavior" of Jason Moore. It is no accident that the only discussion of White's testimony in Defendants' Renewed Motion is the assertion that White "confirmed the Decedent attempted to get off the ground after the TASER was deployed by Officer Kaminski." Doc. 188, p. 2. Officer White's testimony regarding Mr. Moore's actions is in fact completely different from Officer Kaminski's.

When Officer White first saw Jason Moore, Moore was on the ground and he was on his back. Tran., Vol. II, p. 77. White testified that Mr. Moore tried to sit up off the ground, like he was trying to do a sit up. Tran., Vol. II, p. 80. White testified that he did not recall Moore ever getting onto his knees. Tran., Vol. II, p. 82. White also testified that Mr. Moore's arms were "flailing" or "kind of shaking" and that his "belief at the time was that he was under the load of the TASER." Tran., Vol. II., p. 81. Kaminski then tased Moore again, still on his back, as White was approaching, with Moore again doing a similar attempted "sit up" with White then able to cuff Moore under load. See Tran., Vol. II, p. 83. While Defendants contend that it is relevant that Kaminski did not initiate another Taser discharge after Moore had been cuffed, White's testimony demonstrates that by this point, after being tased four times for 21 nearly continuous seconds, Jason Moore was no longer moving. See Tran., Vol. II pp. 85-86.

Defendant Kaminski was completely unable to explain the contradictions between his version of events with Officer White's entirely different testimony. See Tran., Vol. II, p. 20.[2] Based on White's testimony and the Taser data download, the jury could conclude that Kaminski

---

[2] Defendants also mention in summary fashion that "the law was not clearly established that a violent, resisting subject like the Decedent had a clearly established right to be free from multiple Tasings." Doc. 190, p. 5. This argument, rejected by this Court at the summary judgment stage, and based on Defendants' mischaracterization of the *DeBoise* case, and is addressed in greater length in Plaintiffs' Memorandum in Opposition to Defendants' Renewed Motion for Judgment as a Matter of Law, and Plaintiffs incorporate their response the same as if set forth herein.

tased an unarmed, naked man, *lying on the ground on his back*, four times for a total of 21 seconds, and all without giving Jason Moore any chance to avoid his fate.[3]

Defendants repeat their reliance on the Eighth Circuit's opinion in *De Boise v. Taser Int'l, Inc.*, 760 F.3d 892 (8th Cir. July 28, 2014), to assert that Kaminski is entitled to qualified immunity.  Namely, Defendants contend that it was purportedly not "clearly established" in the law at the time of Jason Moore's death that repeated use of tasers could constitute excessive and unreasonable force, an argument that this Court has already addressed and rejected.  As in their Motion for Summary Judgment, Defendants summarily contend that *DeBoise* was "virtually identical to the evidence in this case." Defendants rely on superficial resemblances between the cases—namely they both involve subjects having mental episodes, who were naked and who were tased by the Police.  The relevant similarities end there.

As the Court correctly noted in its Order denying summary judgment, *De Boise* is distinguishable for the simple reason that it was uncontroverted in that case that the subject continued to violently resist the officers. De Boise suffered from schizophrenia, which caused serious psychotic episodes.  The first arriving officer observed De Boise exiting the home naked and claiming to be God.  De Boise suddenly re-entered the house, tearing down the screen door in the process.  *Id.* at 894-895.  Five more police officers arrived on the scene, at which time De Boise's mother informed the officers that she had a firearm in the house and that her son was schizophrenic. *Id.* at 895.   The officers heard loud noises from inside the house, including screaming, glass breaking, and heavy furniture being thrown, after which De Boise exited the house naked and called himself God. *Id.* at 895.

---

[3] Indeed, Kaminski's conduct, whether based on his own description or Officer White's, clearly violated Ferguson's own policies regarding use of force, which required a minimum of active aggression by the subject before each use of the Taser device. See Tran., Vol. III, pp. 137-139.

While pointing a Taser device at him, an officer instructed De Boise to walk out on the grass and lie face down on the ground. De Boise complied. Officer Percich holstered his taser and began to approach De Boise to handcuff him. De Boise immediately jumped to his feet, clenching his fist, and glaring in Officer Percich's direction. After refusing further instructions to lie down, he was tased. *Id.* After being tased twice, De Boise stood up and continued to refuse to comply. *Id*. at 895. He was tased a third time and went down. He then rose to his knees and swung his arms around. *Id.* The officer delivered two more cycles, after which De Boise rose to his feet and walked toward the officers. Another officer fired a taser and delivered another taser blast. De Boise fell to the ground but rose to his feet *yet again*, as if he were getting ready to charge or attempt to run. *Id*. The officer delivered another cycle while two officers attempted to handcuff De Boise. De Boise kicked at the officers, and one took the cartridge out of his taser and shocked De Boise's leg twice, this time in drive stun mode. Finally, the officers were able to wrestle De Boise to the ground and deliver a sedative. De Boise then suffered cardiac arrest and died. *Id.* at 896.[4]

---

[4] Notably, the opinion in *De Boise* held only that "**in 2008**, case law related to the use of tasers was still developing[.]'" *De Boise,* 760 F.3d at 897. [Internal cit. omit.] *De Boise* represents a snapshot in time, a point which Defendants continue to ignore. As set forth in Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment, in the years after 2008 there were significant developments in the case law relating to the use of Tasers. In 2009, a year after the incident at issue in *De Boise*, the Eighth Circuit held that the law was sufficiently clear *as of 2005* to inform a reasonable officer that it was unlawful to Taser a nonviolent, suspected misdemeanant who offered only passive resistance. *Brown v. City of Golden Valley*, 574 F.3d 491, 499 (8th Cir. 2009). Also in 2009, the Eleventh Circuit recognized that repeatedly tasering a mentally ill individual, without offering the subject any opportunity to comply with instructions or submit, was both excessive and a violation of clearly established constitutional rights under the Fourth Amendment. See *Oliver v. Fiorino*, 586 F.3d 898, 907 (11th Cir. 2009) ("though the initial use of force (a single Taser shock) may have been justified, **the repeated tasering of Oliver into and beyond his complete physical capitulation was grossly disproportionate to any threat posed and unreasonable under the circumstances**"). The factually similar cases of *Estate of Mathis ex rel. Babb v. Kingston*, 2009 WL 1033771, at *1 (D. Colo. Apr. 16, 2009), and *Orsak v. Metro. Airports Comm'n Airport Police Dep't*, 675 F. Supp.

6

As Plaintiffs' noted in the summary judgment pleadings, (and cited by the Court in its summary judgment order) this case is similar to *Van Raden v. Larsen*, Case No. CIV. 13-2283 DWF/LIB, 2015 WL 853592, (D. Minn. Feb. 26, 2015), in which the defendants asserted that they were entitled to qualified immunity on the plaintiff's excessive force claim because the officers' use of the taser did not violate clearly established rights because he was "physically and actively resisting being detained" during the encounter with the officers, similarly relying on the 8th Circuit's opinion in *DeBoise. Id.* at *5. The court denied the officers' claim of qualified immunity, holding: "If the jury were to conclude that Van Raden was not kicking at the Officers **or that Van Raden's actions were not sufficiently threatening to make the Officers reasonably fear for their safety**, then the jury could also reasonably conclude that the use of the taser was unreasonable. Therefore, a reasonable juror could conclude that Van Raden's constitutional rights were violated." *Id*. at *7.

Here, the jury chose not to believe Kaminski's version of events, because his version was both contradicted by the evidence and because Kaminski's testimony was not credible. The jury could ignore Kaminski's claim that Moore "charged" him in the first instance based on his recorded statement to EMS. Further, according to Officer White's more credible testimony, the naked and unarmed Jason Moore was not on his stomach and trying to get up onto his knees. He was lying on his back, at the most attempting to sit up. Based on his trial testimony, in which White repeatedly admitted he thought that Mr. Moore was "under load" during these two attempted "sit ups," the jury could equally interpret Mr. Moore's movements as being caused by the load from the Taser itself. The jury could reasonably conclude that Jason Moore was

---

2d 944, 954 (D. Minn. 2009) were also issued in 2009, prior to the incident at issue in this case and after the event at issue in *De Boise*.

offering at most passive resistance, or indeed no resistance at all while he was being tased three additional times.

Jason Moore's conduct, particularly after the first Taser blast, was not sufficiently threatening to make Defendant Kaminski fear for his safety and did not justify the repeated and nearly continuous deployment of his Taser device.  The jury reviewed all of the evidence and determined that the force used by Kaminski was unreasonable and excessive.  The jury was correct.  Kaminski is not entitled to qualified immunity or to judgment as a matter of law.

### III. MONELL MUNICIPAL LIABILITY CLAIM AGAINST THE CITY OF FERGUSON.

Defendants contend that Plaintiffs failed to provide evidence of a pattern of excessive use of force because Plaintiffs relied on "conclusions and summaries" from the Department of Justice Report and Defendants continue to criticize the admissibility of the Report.  Defendants contend that the jury could not have properly relied on the Department of Justice findings because of Defendant Jackson's testimony that the "DOJ investigation and report were 'rushed' and the alleged conclusions were based on unsubstantiated and unreliable information and interviews."  However, the law is clear that the presence of unsworn third-party statements or interviews, standing alone, does not render Department of Justice Reports such as the one at issue unreliable. *See Daniel v. Cook Cty.*, 833 F.3d 728, 740-742 (7th Cir. 2016).  And Chief Jackson's unilateral and unsupported assertion that the Report was "rushed" does not deprive the report of probative value.  To the contrary, courts have held that Department of Justice Reports pursuant to investigations under the civil rights laws "**deserve considerable weight**." *See Id*. at 742. See also Plaintiffs' Memorandum in Opposition to Defendants' Motions in Limine, Doc. 133, pp. 8-12.

Defendants ignore the substantial evidence demonstrating a pattern of excessive use of force in relation to Taser devices as well as the use of force on vulnerable populations by Ferguson officers.  Plaintiffs presented evidence of multiple similar incidents, involving the use of Tasers on mentally vulnerable individuals, within close temporal proximity of the incident with Mr. Moore.  This includes:

- In August 2010, a lieutenant used an ECW in drive-stun mode against a woman in the Ferguson city jail because she had refused to remove her bracelets. The lieutenant resorted to his ECW even though there were five officers present and the woman posed no physical threat.

- In August 2010, an officer responded to a call about an African-American man walking onto the highway and lying down on the pavement. Seeing that the man was sweating, acting jittery and had dilated pupils, the officer believed he was on drugs. The man was cooperative at first but balked, pushing the officer back when the officer tried to handcuff him for safety reasons. The officer struck the man several times with his ASP baton -- including once in the head, a form of deadly force -- causing significant bleeding. Two other officers then deployed their ECWs against the man a total of five times.

- Jail staff have also reacted to people with mental health conditions by resorting to a greater force than necessary. For example, in July 2011, a correctional officer used an ECW to dry-stun an African-American inmate three times after he tried to hang himself with material torn from a medical dressing and banged his head on the cell wall.

- That same month a correctional officer used an ECW against an African-American inmate with bipolar disorder who broke the overhead glass light fixture and tried to use it to cut his wrists. According to the correctional officer, the glass was safety glass and could not be used to cut the skin.

- An August 2011 incident where a TASER was used against a man with diabetes who had seizures and didn't comply with commands and had bitten the EMT's hand.

See Tran., Vol. III, at 82-83; 154-158.

Importantly, given the absence of any discipline handed out to these officers, a number of these incidents violate Ferguson's own policies on their face.  Under Ferguson's policies, the Taser is not permitted to be used in response to conduct which is "passively resistant", i.e., ignoring officers' commands but taking no further action to resist; or even conduct which is

9

"defensively resistant," meaning they are physically resisting but they are not assaultive. See Tran., Vol. III, pp. 137-138. The Taser is only permitted where a subject is engaged in "**active aggression**", **meaning an overt action of assault**, or in the event a subject uses lethal force. Tran., Vol. III, p. 138. These principles apply if an officer uses force more than once, if they pull the trigger more than once, each time they have to figure out whether or not that force can be used. Tran., Vol. III, p. 139. Notably, these policies are entirely consistent with the clearly established 8th Circuit precedent at the time of Mr. Moore's death, recognized by this Court in its order denying summary judgment, that non-violent subjects have a clearly established right be free from the use of Tasers. See Doc. 93, at 9. The facts found by the Department of Justice, such as a subject being tased for refusing to take off her jewelry, clearly violate Ferguson's own policies. Furthermore, Chief Jackson testified that, in at least two of the incidents listed above, a determination was made on the use of force report that the individual was *not* resisting arrest when they were being tased. See Tran., Vol. III, pp. 94-95. Nevertheless, Jackson never disciplined anyone for the excessive use of force or violation of policies. See Tran., Vol. III, p. 158; 161.

Defendants assert that, "most importantly," the evidence relied on by Plaintiffs does not come in the form of "citizen complaints," suggesting that the Department, even if it were aware that officers were using excessive force against vulnerable individuals, had no duty to address that excessive force in the absence of citizen complaints. There is no such "citizen complaint" exception to liability for a pattern of unconstitutional use of force by officers. The question is whether there was a custom of use of excessive force and whether the Department was aware of it. Defendants' argument is itself an example of the customs and culture of the Ferguson Police Department that resulted in the lethal use of force against Jason Moore.

Plaintiffs did not rely solely on these incidents, but also presented evidence of findings regarding Ferguson's customs and practices made by the Department of Justice after their exhaustive investigation. This includes the highly material finding by the Department of Justice that "FPD's pattern of excessive force includes using ECW's [Taser devices] in a manner that is unconstitutional, abusive and unsafe." See Plaintiffs' Trial Exhibit 11D, p. 29. The Department of Justice also found that the incidents it investigated "indicate a pattern of insufficient sensitivity to, and training about, the limitations of those with mental health conditions or intellectual disabilities. Officers view mental illness as narcotic intoxication or, worse, willful defiance. They apply excessive force to such subjects, not accounting for the possibility that the subjects may not understand their commands or be able to comply with them. And they have been insufficiently trained on tactics that would minimize force when dealing with individuals who are in a mental health crisis or who have intellectual disabilities." Tran., Vol. III, at 84.

Defendants rely on *Mettler v. Whitledge*, 165 F.3d 1197 (8th Cir. 1999) to contend that this evidence is insufficient as a matter of law. However, in that case, while there were a number of citizen complaints, the plaintiff "produced **no evidence** regarding the factual background of these previous complaints"; could not show that they bore any factual similarity to the use of force in that case, and failed to present any evidence of insufficient investigation or discipline by the department. *See Id*. at 1205. [Emphasis supplied.] None of these facts are present in this case. Plaintiffs presented evidence of the underlying facts, both through the Department of Justice Report as well as through Ferguson's own use of force reports. The five incidents were highly factually similar. As the Court noted in denying summary judgment, "five instances of excessive force --- involving Tasers --- predating the events of this matter over the course of just one year constitutes more than isolated incidents." Doc. 93, p. 12.

11

Municipal liability for a custom of unconstitutional conduct will lie where it can be "shown that the act was taken 'pursuant to' the custom, i.e., that the municipal custom was 'the moving force of the constitutional violation.'" *Shannon v. Koehler*, 673 F. Supp. 2d 758, 802 (N.D. Iowa 2009).  Because a defendant is not going to admit that they were motivated by a custom and practice of unconstitutional conduct, Plaintiffs must prove that Ferguson's deliberate indifference was the moving force in the death of Mr. Moore through circumstantial evidence. Plaintiffs presented substantial evidence of a pattern of use of excessive force on mentally vulnerable subjects, particularly with regard to the use of Tasers.  Where the evidence presented is of highly similar incidents, as it is here, it carries even greater probative value. As the Court noted in its Order denying summary judgment on the issue of whether City of Ferguson's deliberate indifference to or tacit authorization of officers' use of excessive force was the "moving force" behind Jason Moore's injury, "where it becomes clear that an employee or group of employees needs close and continuing supervision and the municipality fails to provide such supervision, **the inevitable result is a continuation of the misconduct**." Doc. 93, p. 14, citing *Ware v. Jackson County, Mo.*, 150 F.3d 873, 885 (8th Cir. 1998).

And indeed, Plaintiffs presented substantial evidence of Defendant Ferguson's abject failure to perform meaningful investigation and discipline relating to the use of excessive force. The evidence at trial demonstrated a pattern of Ferguson never obtaining Taser download data which could contradict officers' explanation for their use of force, in a blatant example of turning a "blind eye" to the conduct of its officers. Tran., Vol. III, p. 194.  Despite the Department of Justice's findings and investigation of use of force incidents occurring on Chief Jackson's watch, Jackson admitted to never disciplining officers in relation to their use of force.

Defendant Kaminski was one of the people at Ferguson directly responsible for training the Department's officers in their use of Taser devices.  This was a relatively small department: The Ferguson Police Department has only 54 sworn officers, including 28 patrol officers. Tran., Vol. III, p. 81-82.  Yet despite the repeated violations of Ferguson's Taser policies as shown above, which barred their use on "passively resisting" subjects, Kaminski did not know of any Ferguson officer who had been disciplined relating to the use of force. See Exhibit 1, ll. 158:22-25.  From these facts, the jury could reasonably infer that Kaminski was aware of the custom of excessive use of Tasers, particularly on vulnerable individuals, and that officers were not being investigated or disciplined.  A reasonable juror could find that Kaminski perceived Moore's state of mental crisis through exactly the lens described by the Department of Justice, as "willful defiance," and decided to excessively Taser Moore punitively because he was aware that no meaningful review or discipline would result.  The jury could also reasonably find that, had Ferguson enforced its own policies and addressed the ongoing abuse of Tasers by its officers in violation of its own policies, Jason Moore would not have been killed.

There was sufficient evidence to support the jury's verdict on the *Monell* claim, and Defendants' Renewed Motion for Judgment as a Matter of Law should be denied.

WHEREFORE, Plaintiffs respectfully request that the Court enter its Order denying Defendants' Renewed Motion for Judgment as a Matter of Law.

Respectfully submitted,

DOWD & DOWD, P.C.

By:  /s/ William T. Dowd
WILLIAM T. DOWD (#39648MO)
ALEX R. LUMAGHI (#56569MO)
Attorneys for Plaintiff
211 North Broadway, Suite 4050
St. Louis, Missouri   63102
314/621-2500
Fax, 314/621-2503
bill@dowdlaw.net

and

/s/ Mark L. Floyd
MARK L. FLOYD (# 43643MO)
THE FLOYD LAW FIRM, P.C.
Attorneys for Plaintiff
8151 Clayton Rd., Suite 202
St. Louis, Missouri   63117
314/863-4114
Fax, 314/863-4150
mark@thefloydlawfirm.com
*Attorneys for Plaintiffs Tina Moore and Estate of Jason Moore*

/s/Todd M. Johnson
TODD M. JOHNSON (48824MO)
VOTAVA, NANCE & JOHNSON, LLC
9237 Ward Parkway, Suite 240
Kansas City, MO 64114
816/895-8800
Fax, 816/895-8801
tjohnson@vnjlaw.com
*Attorneys For Plaintiffs*
*Delores Moore And Renee Rodgers,*
*As Next Friend Of A.D.R, A Minor*

**CERTIFICATE OF SERVICE**

   The undersigned hereby certifies that a copy of the above pleading was served via the Court's electronic filing system this 6th day of January, 2016 to all counsel of record.

  /s/ William T. Dowd